1    Jeffrey L. Bornstein (State Bar No. 99358)
     Luke G. Anderson (State Bar No. 210699)
2    KIRKPATRICK & LOCKHART
     PRESTON GATES ELLIS LLP
3    55 Second Street, 17th Floor
     San Francisco, CA 94105
4    Telephone: (415) 882-8200
     Facsimile: (415) 882-8220
5

6    Barry M. Hartman, *Admitted Pro Hac Vice* (DC Bar No. 291617)
     Christopher R. Tate, *Pro Hac Vice pending*  (PA Bar No. 205510)
7    KIRKPATRICK & LOCKHART
     PRESTON GATES ELLIS LLP
8    1601 K Street, N.W.
     Washington, D.C. 20006
     Telephone: (202) 778-9000
9    Facsimile: (202) 778-9100

10    Attorneys for Defendant
      JOHN J. COTA
11

                UNITED STATES DISTRICT COURT
12
           NORTHERN DISTRICT OF CALIFORNIA
13
                 SAN FRANCISCO DIVISION
14

| 15 | UNITED STATES OF AMERICA, | Case No.  CR 08-0160 SI |
|---|---|---|
| 16 | Plaintiff, | **DEFENDANT JOHN J. COTA'S NOTICE OF MOTION AND MOTION TO DISMISS CLEAN WATER ACT COUNT;** |
| 17 | v. | **MEMORANDUM OF POINTS AND** |
| 18 | JOHN J. COTA, | **AUTHORITIES IN SUPPORT THEREOF** |
| 19 | Defendant. | Date: July 18, 2008 |
| 20 | | Time: 11:00 AM |
| 21 | | Judge: Honorable Susan Illston |
| 22 | | Speedy Trial Act: Excludable Time Through Disposition, 18 U.S.C. § 3161(h)(1)(F) |

23

24    **TO UNITED STATES ATTORNEY JOSEPH P. RUSSONIELLO:**

25      **PLEASE TAKE NOTICE** that at 11:00 a.m. on July 18, 2008, or as soon thereafter as

26    counsel may be heard in the above entitled Court, Defendant JOHN J. COTA ("Captain Cota") will

27    and hereby does move this Court for an order dismissing Count Three (for violation of 33 U.S.C. §

28    1319(c)(1)) of the Superseding Indictment in this matter pursuant to Rule 12(b) of the Federal Rules

---

DEFENDANT JOHN J. COTA'S NOTICE OF MOTION AND MOTION TO DISMISS COUNT
THREE—CR 08-0160 SI

1  of Criminal Procedure. Specifically, Captain Cota requests that the Court dismiss Count Three on

2  the grounds that it violates the Due Process Clause of the Fifth Amendment to the United States

3  Constitution. Therefore, Count Three should be dismissed without leave to amend.

4      This motion is based on this Notice of Motion and Motion, the attached Memorandum of

5  Points and Authorities in support thereof, the complete files and records in this matter, and upon

6  such other matters as may be presented to the Court at the time of the hearing.

7                                          Respectfully Submitted,

8  DATED June 13, 2008.

9

10                                 KIRKPATRICK & LOCKHART
                                   PRESTON GATES ELLIS LLP

11

12                                 By  /s/ Jeffrey L. Bornstein_____

13                                 Jeffrey L. Bornstein, Esq.
                                   Barry M. Hartman, Esq.
14                                 Luke G. Anderson, Esq.
                                   Christopher R. Tate, Esq. (*pro hac vice* pending)
15
                                   Attorneys for Defendant
16                                 JOHN J. COTA

17

18

19

20

21

22

23

24

25

26

27

28

---

DEFENDANT JOHN J. COTA'S NOTICE OF MOTION AND MOTION TO DISMISS COUNT
THREE—CR 08-0160 SI

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................ 2

II. BACKGROUND FACTS RELEVANT TO COUNT THREE ................................. 5

III. ARGUMENT ............................................................................................................ 6

    A.    There Are Clear Constitutional Limits On Eliminating The *Mens Rea* Requirement For Criminal Prosecution ........................................................ 6

        1.    *Mens Rea* Is A Historical And Well-Established Hallmark For Criminal Liability .......................................................................... 6

        2.    Relaxation Or Elimination Of The *Mens Rea* Requirement For Criminal Liability Occurs Only In Rare Instances Under The Judicially-Created "Public Welfare" Doctrine ............................... 7

        3.    Constitutional Limitations On The Public Welfare Doctrine Require That Three Criteria Be Met Before *Mens Rea* May Be Eliminated In Enforcing A Criminal Statute ......................................................... 8

    B.    Count Three Violates Due Process Because It Fails To Meet The Criteria Under The Public Welfare Exception To The Requirement For Proof Of Criminal Intent ................................................................................................ 9

    C.    The Superseding Indictment Violates The Due Process Clause Because It Seeks To Impose Penalties Far Too Severe To Eliminate The Criminal Intent Requirement ..................................................................................................... 14

    D.    Congress Did Not Clearly And Unmistakably Intend To Criminalize Ordinary Negligence Under The Clean Water Act ...................................................... 16

        1.    The *Hanousek* Court's Interpretation Of 33 U.S.C. § 1319(c)(1)(A) Is Invalid ................................................................................................ 17

        2.    An Appropriate Interpretation Of 33 U.S.C. § 1319(c)(1)(A) Would Construe The Use Of "Negligently" To Set The Standard Of Intent As Gross Negligence ........................................................................... 19

    E.    Even If An Ordinary Negligence Standard Applies, That Term Should Be Construed To Include All Defenses Available To Captain Cota In A Negligence Case At Admiralty ....................................................................... 21

III. CONCLUSION ....................................................................................................... 22

i.

1

## TABLE OF AUTHORITIES

2

**Page**

3

**Federal Cases**

4

*Balint v. United States*,
  258 U.S. 250 (1922)..............................................................................................8

5

*Beck v. Prupis*,
  529 U.S. 494 (2000)............................................................................................18

6

*Burns v. United States*,
  501 U.S. 129 (1991)............................................................................................15

7

*Crosby v. Foreign Trade Council*,
  530 U.S. 363 (2000)............................................................................................15

8

*Dennis v. United States*,
  341 US. 494 (1951)...............................................................................................5

9

*Exxon Co. USA v. Sofec., Inc. (The Exxon Houston)*, 517 U.S. 830.............................

10

*Guy v. Donald*,
  203 U.S. 399 (1906)............................................................................................20

11

*Hanousek v. United States*, 528 U.S. 1102 (Thomas, J.)..................................................5

12

*Holdridge v. United States*,
  282 F.2d 302 (8th Cir. 1960)......................................................................8, 13, 14

13

*Ladner v. United States*, 358 U.S. 169 (1958)...............................................................18

*Liparota v. United States*,
  471 U.S. 419 (1985)........................................................................................8, 10

14

*Morrissette v. United States*,
  342 U.S. 246 (1952)....................................................................................passim

15

16

*Staples v. United States*,
  511 U.S. 600 (1994)........................................................................................8, 10

17

*United States v. Atlantic States Cast Iron Pipe Co.*,
  2007 WL 2282514 at *13 (D.N.J. 2007) .................................................................17

18

*United States v. Balint*,
  258 U.S. 250 (1922)................................................................................6, 13, 14, 15

19

*United States v. Behrman*,
  258 U.S. 280 (1922)............................................................................................8

20

*United States v. Dixon*,
  347 U.S. 381 (1954)............................................................................................19

21

22

*United States v. Dotterweich*,
  320 U.S. 277 (1943)..............................................................................6, 8, 10, 11

23

*United States v. Exxon Corp.*,
  No. A90-015 CR (D. Ak., filed April 16, 1991)............................................................1

24

*United States v. Freed*,
  401 U.S. 601, 609, rhng denied, 403 U.S. 912 (1971). ..............................................10

25

*United States v. Hanousek*,
  176 F.3d 1116 (9th Cir. 1999), cert denied, 528 U.S. 1102 (2000)......................passim

26

*United States v. Hill*, No. 05-CR-10111 (D. Mass Sept 16, 2005) ....................................11

27

*United States v. Hillman*,
  461 F.2d 1081 (9th Cir. 1972)...............................................................................9

28

DEFENDANT JOHN J. COTA'S NOTICE OF MOTION AND MOTION TO DISMISS COUNT
THREE—CR 08-0160 SI

*United States v. Int'l Minerals & Chemical Corp.,*
   402 U.S. 558 (1971)................................................................................................ passim

*United States v. Reliable Transfer,*
   421 U.S. 397 (1975)...................................................................................................... 20

*United States v. Santos*
   ___U.S. ___ , 2008 WL 2229212 (2008)...................................................................... 21

*United States v. Weisenfield Warehouse Co.,*
   376 U.S. 86 (1964)......................................................................................................... 8

*United States v. Weitzenhoff,*
   35 F.3d 1275 (9th Cir. 1994), <u>cert denied, Mariani v. United States</u>, 513 U.S. 1228 (1995),.......... 9

*United States v. Wulff,*
   758 F.2d 1121 (6th Cir. 1985) ................................................................................. 13, 14

**State Cases**
*American Airlines, Inc. v. North American Airlines, Inc.,*
   351 U.S. 79 (1956)....................................................................................................... 19

*People v. Snowburger,*
   113 Mich. 86, 71 N. W. 497 (1897).............................................................................. 13

*Safeco Ins. Co. of America v. Burr,*
   ___ U.S. ____, 127 S.Ct. 2201, (2007) ........................................................ 3, 15, 16, 17

*Societa per Azione de Navigazione Italia v. City of Los Angeles,*
   183 Cal. Rptr. 51 (1983), <u>cert denied,</u> 459 U.S. 990 (1982)......................................... 20

**Sections**
Section 1319(a)(1)(A)....................................................................................................... 12

Section 1319(c)(1) ...................................................................................................... 4, 12

Section 1319(c)(1)(A)................................................................................................... 3, 12

**Other Law Motions**
American Law Institute,
   *Model Penal Code* § 2.02(2)(d) (1985) ...................................................................... 18

Charles J. Babbitt *et al.*, *Discretion and the Criminalization of Environmental Law*,
   15 Duke Env. Law & Pol'y Forum 1 (2004)................................................................ 14

Francis B. Sayre, *Public Welfare Offenses*, 33 Colum. L. Rev. 55 (1933).......................... 7

Oliver Wendell Holmes, The Common Law 3 ....................................................................... 6

Richard J. Lazarus, *Meeting the Demands of Integration in the Evolution of Environmental Law: Reforming Environmental Criminal Law,*
   83 Geo. L.J. 2407, 2472-84 (1995).............................................................................. 14

Sayre, *Public Welfare Offenses,*
   33 Colum. L. Rev. at 56 ............................................................................................... 14

**Non CA Cases**
*Commonwealth v. Farren,*
   91 Mass. 489 (1864) ................................................................................................... 13

*Commonwealth v. Raymond,*
   97 Mass. 567 (1867) ................................................................................................... 13

*Dahlia Maritime Co. v. M/S Nordic Challenger,*
   1994 AMC 2208, (E.D. La. 1994) .............................................................................. 21

*The Putney Bridge,*
   219 F. 1014 (D. Md. 1915) .......................................................................................... 20

DEFENDANT JOHN J. COTA'S NOTICE OF MOTION AND MOTION TO DISMISS COUNT
THREE—CR 08-0160 SI

**Statutes**

15 U.S.C. § 1681n(a) ........................................................................................................... 16

33 U.S.C. § 1319(c)(1)(A) ........................................................................................... passim

33 U.S.C. § 1321(b)(7)(D) ................................................................................................. 16

46 U.S.C. §2302 ................................................................................................................ 19

**Other Federal Authorities**

2 Schoenbaum, Admiralty and Maritime Law 81 (4th Ed. 2004) ...................................... 20

2-33 Va. Model Jury Inst. No. 33.610 ............................................................................... 18

CALJIC § 3.36 .................................................................................................................... 18

Modern Federal Jury Instructions § 41.02, Inst. 41-27 ..................................................... 18

**Criminal Code Section**

Pa. SSJI (Crim) § 15.2504 ................................................................................................. 18

DEFENDANT JOHN J. COTA'S NOTICE OF MOTION AND MOTION TO DISMISS COUNT
THREE—CR 08-0160 SI

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION.**

3        Count Three of the Superseding Indictment must be dismissed because it violates the Due

4    Process Clause of the United States Constitution.  The Superseding Indictment seeks to convict

5    Captain Cota of a serious crime, with penalties including prison in a federal penitentiary for up to

6
     one year, as well as a fine of up to $100,000, with the potential for an even greater fine.[1]  The
7
8    government seeks this conviction without alleging any criminal intent.

9        The government does not allege that the leaking of fuel oil from the container vessel M/V

10   COSCO BUSAN ("COSCO BUSAN") was the result of any knowing, willful, intentional, or even

11   grossly negligent conduct on the part of Captain Cota.  It alleges no criminal intent at all.  Nor does it

12   allege that Captain Cota was involved in an inherently dangerous activity.  Instead, the government

13
     wants to jail Captain Cota because of his conduct as a pilot of a container vessel.  It alleges that he
14
15   made negligent mistakes in the way he piloted the vessel, which in turn allegedly resulted in the

16   vessel contacting the bridge, which in turn resulted in a gash in the hull, which in turn resulted in the

17   leaking of fuel oil.  The Due Process Clause prohibits the imposition of criminal liability under these

18   circumstances.

19        In *United States v. Hanousek*, 176 F.3d 1116 (9th Cir. 1999), cert denied, 528 U.S. 1102

20   (2000), the Ninth Circuit held that 33 U.S.C. § 1319(c)(1) may impose criminal liability based on

21   ordinary negligence as opposed to criminal negligence, without violating the Due Process Clause, in

22
     the case of a supervisor who knew he was using heavy excavating equipment very near to a major oil
23
24   pipeline that was ruptured by the equipment.  We respectfully submit that *Hanousek* does not

25

26

27   [1] *See* 18 U.S.C. § 3571(d).  Under the Alternative Fines Act, the government may seek an amount
     equal to twice the pecuniary loss caused by the alleged crime.  *Id.* The government considers
28   damages to resources to be such a loss.  *See United States v. Exxon Corp.*, No. A90-015 CR (D. Ak.,
     filed April 16, 1991) (Gov't Sentencing Memo at 16).

                                                    2.

DEFENDANT JOHN J. COTA'S NOTICE OF MOTION AND MOTION TO DISMISS COUNT
THREE—CR 08-0160 SI

1  foreclose the relief we seek because *Hanousek* is distinguishable and, in any, Count Three violates

2  the Due Process Clause, for at least four reasons. [2]

3       The Due Process Clause only permits the imposition of criminal liability without *mens rea* –

4  criminal intent – where there is clear evidence that (a) Congress has enacted a "public welfare"

5  statute directed at the specific object of the business or transaction that is the basis for the criminal

6  charge; (b) the scope and extent of the sanctions imposed in the absence of criminal intent is not

7  unreasonably severe; and (c) Congress has expressly indicated that no criminal intent is necessary.

8

9  None of these criteria are met in this case.

10      First, the public welfare doctrine's rationale for eliminating the criminal intent requirement

11  does not exist in this case.  Controlling precedent holds that Congress may lower the level of intent

12  necessary for conviction of an offense where defendant is dealing with "deleterious devices or

13  products or obnoxious waste materials," and the dangerous and regulated nature of these items

14  places defendant on notice that the law may carefully scrutinize his actions.   By contrast, Count

15

16  Three alleges a criminal violation of the Clean Water Act based on conduct that relates solely to the

17  operation of a vessel, not the handling of an obnoxious waste material (in this case, presumably oil).

18  There are no reported cases finding a container ship (or any boat for that matter) to be either a

19  deleterious device or an obnoxious waste material.  The Supreme Court has warned that under these

20

21  circumstances, imposing criminal sanctions without requiring some degree of *mens rea* could result

22  in "substantial due process questions." *United States v. Int'l Min. & Chem. Corp.*, 402 U.S. 558,

23  564-65 (1971).  While we believe that the *Hanousek* court applied the public welfare doctrine in a

24

25  [2] Whether the Clean Water Act is a public welfare statute based on the rationale that oil is an
    inherently dangerous or noxious pollutant or waste material has been seriously questioned.
26  *Hanousek v. United States*, 528 U.S. 1102, 1103 (Thomas, J.) (dissent from denial of certiorari);
    *Staples*, 511 U.S. at 600.  We respectfully assert that it is not, and that the rationale relied on by the
27  *Hanousek* court to reach that result is subject to serious question. While we have illustrated that
    *Hanousek* is factually distinguishable from the case at bar, we recognize that *Hanousek* may be
28  considered controlling precedent for this court if such distinctions are rejected, and reserve our
    challenge to that precedent on appeal, if necessary.

3.

DEFENDANT JOHN J. COTA'S NOTICE OF MOTION AND MOTION TO DISMISS COUNT
THREE—CR 08-0160 SI

1   manner inconsistent with precedent, we recognize that this court is bound by that decision.

2   Regardless, *Hanousek* is distinguishable from the case at bar, because in *Hanousek*, the defendant at

3   least knew he was operating equipment designed to dig into the ground, and knew he was doing so

4   next to a major oil pipeline. He was not prosecuted for leaks from the excavation equipment itself

5   that may have flowed into waters of the United States as a collateral result of his conduct. Indeed,

6   the defendant in *Hanousek* was acutely aware of the location and dangers presented by the pipeline.

7   The government has not and cannot make the same claim regarding Captain Cota and the fuel tanks

8   on the COSCO BUSAN.

9          Second, the punishment here far exceeds the *de minimis* kinds of sanctions that might

10  otherwise justify the elimination of traditional criminal scienter without offending the Due Process

11  Clause. Captain Cota faces up to a year in jail, and fines of up to $100,000, and potentially

12  unlimited amounts in additional fines, under the Alternative Fines Act.[3]  Again this is distinguishable

13  from *Hanousek*, where the court discussed neither of these consequences.  This level of punishment

14  far exceeds the minimal, regulatory sentences courts have imposed as a result of violations of public

15  welfare statutes.

16         Third, while the *Hanousek* court concluded that Congress clearly and unambiguously

17  intended that the term "negligently" in Section 1319(c)(1)(A) means ordinary negligence,

18  *Hanousek*, 176 F.3d at 1120, the statutory construction analysis used to support this conclusion has

19  been directly rejected by subsequent Supreme Court precedent as a means of determining

20  congressional intent, in another case arising in this Circuit. *Safeco Ins. Co. v. Burr*, ___ U.S. ___,

21  127 S.Ct. 2201, (2007) (reversing 140 Fed. Appx. 746 (9th Cir. 2005).  Given this change in the law,

22  the premise that this term is clear no longer exists, and this court must determine anew how the term

23  "negligently" should be interpreted.  A large body of evidence suggests that "negligently," when

---

[3] 18 U.S.C. § 3571(d).

4.

1  used in this criminal statute, was meant to refer to "criminal" or "gross negligence." These

2  considerations, and the rule of lenity, preclude the inference that ordinary negligence (tantamount to

3  no *mens rea* whatsoever) is constitutionally sufficient for conviction, and render Count Three

4  defective.

5

6      Fourth, even assuming *arguendo* that ordinary negligence does not offend the Constitution

7  and is the appropriate standard under the statute, it must be defined consistent with ordinary

8  negligence in maritime casualty cases, as well as negligence cases generally.  A long-standing body

9  of precedent provides Captain Cota with various defenses to a charge of negligence in a case at

10 admiralty; to deny Captain Cota the protection of these defenses would essentially assign strict

11 liability to the discharge of pollutants under Section 1319(c)(1).  Removing the standard of intent

12 entirely would contravene the express language of the statute (which by its terms requires some form

13 of "negligence"), and would violate Captain Cota's due process rights.

14

15 **II.    BACKGROUND FACTS RELEVANT TO COUNT THREE.**

16      Count Three of the Superseding Indictment arises from the accident involving the COSCO

17 BUSAN, a container ship that was used to transport nonhazardous cargo, as she departed the Port of

18 Oakland for the Pacific Ocean and Busan, Korea.  The ship scraped the fendering system around one

19 of the towers of the San Francisco Bay Bridge.  Count Three alleges that Captain Cota was negligent

20 in:

21

22      (a) failing to pilot a collision free course; (b) failing to adequately
       review with the Captain and crew of the [COSCO BUSAN] prior to
23      departure the official navigational charts of the proposed course, the
       location of the San Francisco Bay aids to navigation, and the operation
24      of the vessel's navigational equipment; (c) departing port in heavy fog
       and then failing to proceed at a safe speed during the voyage despite
25      limited visibility; (d) failing to use the vessel's radar while making the
       final approach to the Bay Bridge; (e) failing to use positional fixes
26      during the voyage; and (f) failing to verify the vessel's position vis-à-
       vis other established and recognized aids to navigation throughout the
27      voyage.

28

5.

DEFENDANT JOHN J. COTA'S NOTICE OF MOTION AND MOTION TO DISMISS COUNT
THREE—CR 08-0160 SI

1    Superseding Indictment, page 6, ¶ 18.  According to the government, the operation of the vessel

2    resulted in the accident, causing a puncture to the side of the vessel where a fuel tank was located.

3    One of the collateral consequences was that fuel oil (called "bunker oil") used to power the vessel,

4    just as gasoline powers a car, leaked into the Bay.  The government has not alleged that any of

5    Captain Cota's conduct, even if proven, would constitute intentional, knowing, willful or even

6    grossly negligent conduct.  The government does not allege that Captain Cota handled the bunker oil

7    that was leaked after the accident, or that he had any more connection to the vessel's fuel tank than

8    does the driver of an automobile has to his or her gas tank, or that the pilot of a plane has to a jet

9    engine on a passenger aircraft.[4]  Nor does the Superseding Indictment allege that Captain Cota was

10   in the business of handling oil, transporting oil, or that he was handling anything other than standard

11   industrial equipment - a vessel - to engage in ordinary commercial activities - assisting her in

12   traversing the Bay.

13

14

15   **III.  ARGUMENT.**

16       **A.    There Are Clear Constitutional Limits On Eliminating The *Mens Rea*
             Requirement For Criminal Prosecution.**

17

18           **1.    *Mens Rea* Is A Historical And Well-Established Hallmark For Criminal
                  Liability.**

19           At common law, criminal sanctions required the government to prove that defendant had a

20   "vicious will."  *See* Blackstone, 4 Commentaries on the Law of England at 21.  The concept of *mens*

21   *rea* has continued in American law as more than a "provincial or transient notion," but rather "took

22   deep and early root in American soil."  *Morrissette v. United States*, 342 U.S. 246, 250-52 (1952).

23   Indeed, the Court has declared it the "rule of rather than the exception to the principles of Anglo-

24   American criminal jurisprudence."  *Dennis v. United States*, 341 US. 494, 500 (1951); *see also*

25   *Morrissette*, 342 U.S. at 251 ("[a] relation between some mental element and punishment for a

26

27

28   ---
     [4] The Superseding Indictment does not allege that Captain Cota knew or had any reason to know
     anything about the fuel or fuel tanks aboard the vessel.

6.

DEFENDANT JOHN J. COTA'S NOTICE OF MOTION AND MOTION TO DISMISS COUNT
THREE—CR 08-0160 SI

1  harmful act is almost as instinctive as the child's familiar exculpatory 'But I didn't mean to'").  Put

2  another way, requiring *mens rea* for criminal liability limits the application of criminal sanctions to

3  those who have malevolent culpability, with the intended result of creating a disincentive to "evil"

4  behavior.  In this way, the criminal law traditionally delineates between undesirable outcomes

5
6  committed in an "immoral" manner, and those outcomes resulting from carelessness, mistake, or

7  breach of agreement.  *See, e.g.,* Oliver Wendell Holmes, The Common Law 3 ("even a dog

8  distinguishes between being stumbled over and being kicked").

9           2.     **Relaxation Or Elimination Of The *Mens Rea* Requirement For Criminal
                   Liability Occurs Only In Rare Instances Under The Judicially-Created
10                 "Public Welfare" Doctrine.**

11       Over the last century, a limited exception developed to the requirement that criminal

12  sanctions be imposed only if *mens rea* could be proved.  Legislatures began to develop and attach
13
14  criminal penalties to "regulatory measures in the exercise of what is called the police power where

15  the emphasis of the statute is evidently upon achievement of some social betterment, rather than the

16  punishment of the crimes as in cases of *mala in se*."  *United States v. Balint,* 258 U.S. 250, 252

17  (1922).  Courts recognized that certain laws were fundamentally different from traditional criminal

18  laws; whereas conventional criminal law kept societal order through the punishment of immoral

19  behavior, these new laws sanctioned behavior that threatened the "public safety."  *United States v.*
20
21  *Freed,* 401 U.S. 601, 609, rhng denied, 403 U.S. 912 (1971).  Under the rubric of the "public welfare

22  doctrine," these new laws sought to augment civil and administrative enforcement with criminal

23  liability, "whereby penalties serve as effective means of regulation."  *United States v. Dotterweich,*

24  320 U.S. 277, 280-81 (1943).

25       Courts have applied the "public welfare doctrine" and its exception to the requirement of

26  *mens rea* with great care and caution, because criminalizing behavior in the absence of mental

27  culpability raises substantial questions of fairness, and could potentially jeopardize the integrity of

28

7.

1   the criminal justice system. *See, e.g., United States v. Int'l Minerals & Chemical Corp.*, 402 U.S.

2   558, 564-65 (1971) (the criminal regulation of certain products could raise "substantial due process

3   questions if Congress did not require…'mens rea' as to each ingredient of the offense") (citations

4   omitted); *Morrissette*, 342 U.S. at 254 n.14 (noting concern that "'[t]o inflict substantial punishment

5   upon one who is morally entirely innocent, who caused injury through reasonable mistake or pure

6   accident, would so outrage the feelings of the community as to nullify its own enforcement'")

7

8   (*quoting* Francis B. Sayre, *Public Welfare Offenses*, 33 Colum. L. Rev. 55, 56 (1933)).

9       The Supreme Court has recognized that "[t]he purpose and obvious effect of doing away with

10  the requirement of a guilty intent is to ease the prosecution's path to conviction, to strip the

11  defendant of such benefit as he derived at common law from innocence of evil purpose, and to

12  circumscribe the freedom heretofore allowed juries." *See Morrissette*, 342 U.S. at 263; *see also*

13

14  *Staples*, 511 U.S. at 615. The Court recognizes, however, that the Due Process Clause does not

15  permit Congress to simply pass a law that eliminates this requirement for the convenience of the

16  prosecutor. Therefore, a reviewing court must skeptically consider any invocation of the public

17  welfare doctrine as a justification to eliminate the imposition of a *mens rea* requirement for

18  conviction.

19
           **3.    Constitutional Limitations On The Public Welfare Doctrine Require That**
20              **Three Criteria Be Met Before *Mens Rea* May Be Eliminated In Enforcing**
                **A Criminal Statute.**
21

22      Courts have construed these constitutional limitations to permit the elimination of the intent

23  requirement in a criminal statute if three key protections exist: (a) constructive notice (the conduct

24  being regulated is so traditionally and obviously inherently dangerous or deleterious that any

25  reasonably person engaged in handling such devices would know to be careful, thus making it fair to

26  eliminate the "knowledge" requirement); (b) minor penalties (the punishment even in the absence of

27  requiring proof of an evil mind) is not so severe as to offend due process; and (c) clear

28

DEFENDANT JOHN J. COTA'S NOTICE OF MOTION AND MOTION TO DISMISS COUNT
THREE—CR 08-0160 SI

1   Congressional intent to eliminate the knowledge requirement (reflecting Congress' affirmative

2   decision weighing the aforementioned factors).  Unless the charge satisfies all three criteria,

3   eliminating culpability as an element to an offense could violate the Due Process Clause.  *See*

4   *Staples v. United States*, 511 U.S. 600 (1994); *United States v. Int'l Minerals & Chemical Corp.*, 402

5   U.S. 558, 564-65 (1971); *Morrissette*, 342 U.S. at 254; *Liparota v. United States*, 471 U.S. 419, 433

6   (1985), *Holdridge v. United States*, 282 F.2d 302 (8th Cir. 1960).  As explained below, Count Three

7   fails to meet each of these criteria.

8

9   **B.    Count Three Violates Due Process Because It Fails To Meet The Criteria Under
         The Public Welfare Exception To The Requirement For Proof Of Criminal
10        Intent.**

11          Count Three violates Captain Cota's Due Process rights, because it is fundamentally unfair to

12  prosecute a defendant based on a violation of a public welfare statute without proving any criminal

13  intent, where the defendant was not alleged to be actually and directly dealing with the dangerous

14  device or substance that is the focus of the statute.  Captain Cota was not handling oil any more than

15  a person driving a car handles gasoline that might leak if he is in an accident, or a pilot of passenger

16  airliner handles jet fuel that leaks if the plane crashes.

17

18          In virtually every reported case permitting criminal prosecution without evidence of intent,

19  the person prosecuted was in the business of handling the deleterious device – it is a central and

20  intrinsic part of the activity and the conduct that constituted the crime, rather than a collateral or

21  incidental aspect of the business.  *See Balint v. United States*, 258 U.S. 250 (1922) (act of Congress

22  regulating narcotics applied to person in the business of dealing in narcotics); *United States v.*

23  *Behrman*, 258 U.S. 280 (1922) (same); *United States v. Dotterweich*, 320 U.S. 277 (1943) (act of

24  Congress regulating food, drugs, and cosmetics applied to pharmaceutical repackaging company and

25  its officers); *United States v. Weisenfield Warehouse Co.*, 376 U.S. 86 (1964) (act of Congress

26  regulating food, drugs, and cosmetics applied to company engaged in the business of warehousing

27

28

9.

1    food); *United States v. Freed*, 401 U.S. 601 (1971) (act of Congress regulating unregistered firearms

2    such as hand grenades applied to persons engaged in possessing and conspiring to possess hand

3    grenades); *United States v. Int'l Minerals & Chemicals Corp.*, 402 U.S. 558 (1971) (act of Congress

4    regulating shipping of hazardous material applied to corporation in the business of shipping

5    hazardous substances).

6

7    The Circuits have also taken this approach. *See, e.g., United States v. Weitzenhoff*, 35 F.3d

8    1275 (9th Cir. 1994), cert denied, Mariani v. United States, 513 U.S. 1228 (1995)(Clean Water Act

9    prohibition on unlawful discharge of pollutants applied to operators of wastewater treatment plant in

10    the business of discharging pollutants into waters of the United States); *United States v. Hillman*,

11    461 F.2d 1081 (9th Cir. 1972) (act of Congress regulating the sale of narcotics applied to a person

12    selling cocaine).[5]  Indeed, even in cases where the Supreme Court limited the application of the

13    public welfare doctrine, the government had charged defendants who were in the business that was

14    directly related to the statute in question. *See, e.g., Morrissette v. United States*, 342 U.S. 246 (1952)

15

16    (rejecting liability under statute criminalizing unlawful taking of government property, where

17

18    [5]  *See also United States v. White Fuel Corp.*, 498 F.2d 619 (1st Cir. 1974) (Refuse Act, dealing with
     the discharge of refuse matter, applied to company in the business of storing oil in an oil tank farm);

19    *United States v. Bradley*, 455 F.2d 1181 (1st Cir. 1972) (Narcotics Act applied to persons selling
     narcotics); *United States v. Hopkins*, 53 F.3d 533 (2d Cir. 1995) (Clean Water Act provision
     prohibiting falsification of wastewater monitoring applied to company that handled and discharged

20    wastewater as an essential part of its business); *United States v. Green Drugs*, 905 F.2d 694 (3d Cir.
     1990) (act of Congress creating recordkeeping requirements regarding the sale of habit-forming

21    drugs applied to a pharmacy in the business of selling drugs); *United States v. Wilson*, 133 F.3d 251
     (4th Cir. 1997) (Clean Water Act prohibition on discharging pollutants applied to land developer in

22    the business of moving soil and dredged material into and out of waters of the United States); *United
     States v. Nguyen*, 916 F.2d 1016 (Endangered Species Act prohibition on import of endangered

23    animals applied to a person in the business of possessing an endangered species); *United States v.
     Elshenawy*, 801 F.2d 856 (6th Cir. 1986) (act of Congress prohibiting possession of "contraband

24    cigarettes" applied to person in the business of selling cigarettes); *United States v. H.B. Gregory Co.*,
     502 F.2d 700 (7th Cir. 1974) (act of Congress regulating food, drugs, and cosmetics applied to

25    bakery supply company); *United States v. Collins*, 949 F.2d 1029 (8th Cir. 1991) (act of Congress
     regulating storage of explosives applied to industrial construction company that used explosives as

26    an essential part of its business); *United States v. Agnew*, 931 F.2d 1397 (10th Cir. 1991) (Federal
     Meat Inspection Act applied to a seller of meat); *United States v. Hayes Int'l Corp.*, 786 F.2d 1499

27    (11th Cir. 1986) (RCRA prohibition on unlawful transportation of hazardous waste applied to
     company engaged in transport of hazardous waste as an essential part of its business); *United States*

28

10.

1  defendant was in the business of selling scrap such as that obtained from government proving

2  range); *Liparota*, 471 U.S. at 426 (1985) (rejecting liability under statute criminalizing unlawful

3  purchase of food stamps, where defendant was a purchaser of food stamps).

4       The touchstone principle permitting the Court to conclude that due process is not offended

5  where the criminal intent standard is lowered is the axiom of constructive notice. Persons in the

6  business of discharging wastewater, transporting waste, filling wetlands, and buying and selling

7  drugs are presumed to understand that the presence of those items in their day-to-day pursuits

8  requires a degree of care. The Court in *Int'l Minerals & Chemical Corp.* acknowledged this fact by

9  stating that "pencils, dental floss, [and] paper clips," even if regulated, are not the sort of items that

10 create sufficient notice to allow for a suspension of *mens rea* that does not offend fundamental

11 notions of fairness. *Int'l Minerals & Chemical Corp.*, 402 U.S. at 564. Indeed, the maxim "standing

12 in *responsible relation* to a public danger" implies that the public welfare doctrine is concerned only

13 with those whose activities are directly related to the public danger itself. *Dotterweich*, 320 U.S. at

14 281. The Supreme Court has specifically stated that it is not enough that a potentially dangerous

15 item is subject to regulation, even pervasive regulation; rather, the nature of that item must place its

16 user on notice that strict regulation is likely extant:

17

18

19

20

21

22

23

24

> Automobiles, for example, might also be termed "dangerous" devices and are highly regulated at both the state and federal levels. Congress might see fit to criminalize the violation of certain regulations concerning automobiles, and thus might make it a crime to operate a vehicle without a properly functioning emission control system. But we probably would hesitate to conclude on the basis of silence that Congress intended a prison term to apply to a car owner whose vehicle's emissions levels, wholly unbeknownst to him, began to exceed legal limits between regular inspection dates.

25 *Staples*, 511 U.S. at 614.

26

27

28 *v. Holland*, 810 F.2d 1215 (D.C. Cir. 1987) (act of Congress prohibiting drug trafficking near school zone applied to person in the business of selling narcotics).

11.

DEFENDANT JOHN J. COTA'S NOTICE OF MOTION AND MOTION TO DISMISS COUNT THREE—CR 08-0160 SI

1    This Circuit's most recent ruling regarding the public welfare doctrine as it applies to the

2  Clean Water Act is distinguishable and involved a more narrow application of the public welfare

3  doctrine than the government proposes in Count Three. In *Hanousek*, the Ninth Circuit held that the

4
   public welfare doctrine should apply because defendant "[did] not dispute that he was aware that a
5
   high-pressure petroleum products pipeline owned by Pacific & Arctic's sister company ran close to
6
7  the surface next to the railroad tracks at 6-mile, and [did] not argue that he was unaware of the

8  dangers a break or puncture of the pipeline by a piece of heavy machinery would pose." *Hanousek*,

9  176 F.3d at 1122. Thus, arguably the defendant in *Hanousek* "stood in responsible relation to a

10  public danger" because he was responsible for the operation of the backhoe, a piece of equipment

11
    designed to dig into things and break them apart, and because he was on notice of the nearby oil
12
    pipeline, and, consequently, he was on notice that use of the backhoe in its intended way could put a
13
14  hole in a nearby pipeline. *Hanousek*, 176 F.3d at 1122; *Dotterweich*, 320 U.S. at 281. The Ninth

15  Circuit did not conclude that the defendant would have been liable had the backhoe flipped and

16  ruptured its gas tank, the contents of which leaked into a waterway. Nor does the logic in *Hanousek*

17  dictate such a result.[6]

18    Count Three does not allege (nor can it) that Captain Cota was in the business of handling oil

19  because his vessel had a fuel tank. There is no allegation that the COSCO BUSAN is a deleterious

20
    or dangerous device, or that she was even an oil tanker. Count Three is based on allegedly negligent
21
22  conduct unrelated to the fuel tank, that had consequences for that tank, the contents of which are

23  addressed in a public welfare statute that arguably authorizes prison for ordinary negligence relating

24  to the fuel tank. No court has held that a pilot responsible for assisting in escorting a non-tanker

25

26  [6] Similarly, the Court in *Dotterweich* imposed liability on a pharmaceutical manager for his failure
    to affix the proper branding to its product. The defendant in that case was in the business of
27  manufacturing drugs and dealing with drugs was his day-to-day activity. However, that is far
    different than prosecuting Dotterweich for a crime, and putting him in jail, if oil in the furnace of the
28  building owned by his landlord leaks as a collateral consequence of an accident in the building.

12.

container vessel stands in a responsible relation with the fuel tank on that vessel such that he can be criminally prosecuted if an accident occurs and the fuel tank leaks, without proving any criminal intent. *Cf. United States v. Hill*, No. 05-CR-10111 (D. Mass. Filed Sept. 16, 2005) (Gov't Sentencing Memorandum at 4-6) (Mate of tug towing fuel barge sentenced for violation of Section 1319(c)(1); government argued that defendant's actions "amounted to more than simple negligence" and that "gross negligence caused the spill"). In fact, we are unaware of any case in which Section 1319(c)(1)(A) has been held to be a constitutionally permissible basis for charging anyone with negligently discharging a pollutant where the factual basis of the charge involves a leak from the fuel tank of a non tanker vessel that was a collateral consequence of other actions unrelated to the fuel tank or the contents of the fuel tank.

Imposing liability in this case would "expose countless numbers…to heightened criminal liability for using ordinary devices to engage in normal industrial operations." *Hanousek v. United States*, 528 U.S. 1102, 1103 (Thomas, J.) (dissent from denial of certiorari).[7] Eliminating the intent requirement based on a defendant's use of an "ordinary device[] to engage in normal industrial operations," *id.*, violates fundamental fairness enshrined in the Due Process Clause. Concluding that the Superseding Indictment is permissible under the Due Process Clause would immediately convert every driver of every car into a criminal if he or she negligently causes an accident, which results in their gas tank leaking into a nearby creek. Because Count Three does not and cannot allege any facts that place Captain Cota in the kind of responsible relationship with the fuel tanks that has been held to be a constitutionally permissible basis for asserting criminal liability under Section 1319(a)(1)(A) without proof of intent, it must be dismissed as unconstitutional under the Due Process Clause of the Fifth Amendment.

[7] The Ninth Circuit has, in the past, found the reasoning of a dissent from a denial of certiorari to be persuasive. *See, e.g., Campbell v. Wood*, 18 F.3d 662, 682 (9th Cir. 1994) (*citing Glass v. Louisiana*, 471 U.S. 1080 (Brennan, J.) (dissent from denial of certiorari)).

13.

**C.    The Superseding Indictment Violates The Due Process Clause Because It Seeks To Impose Penalties Far Too Severe To Eliminate The Criminal Intent Requirement.**

Courts have upheld the elimination of the scienter requirement in public welfare statutes only when they impose criminal sanctions that are relatively minor.  Then-Circuit Judge Blackmun, in *Holdridge v. United States*, 282 F.2d 302 (8th Cir. 1960), held that imposition of criminal liability without *mens rea* would not violate the Due Process Clause where, *inter alia*, "the penalty is relatively small, [and] where conviction does not gravely besmirch [defendant's reputation]...." Again, this limitation arises from the type of offenses typically codified in public welfare statutes: regulatory offenses meant to create an added incentive for careful action on the part of those dealing in inherently dangerous substances that pose a public threat. *See Morrissette*, 342 U.S. at 262; *Balint*, 258 U.S. at 254 [8]  Indeed, the first criminal statutes that relaxed the standard of intent did so for crimes with penalties far smaller than those at issue in this case. *See, e.g., Holdridge*, 282 F.2d at 304 n.1 (upholding application of statute without scienter element where penalties were up to $500 in fines and six months in jail); *Commonwealth v. Raymond*, 97 Mass. 567 (1867) (fine of up to $200 or six months in jail, or both); *Commonwealth v. Farren*, 91 Mass. 489 (1864) (fine); *People v. Snowburger*, 113 Mich. 86, 71 N. W. 497 (1897) (fine of up to $500 or incarceration in county jail). By contrast, penalties that pose substantial hardship to a defendant, or sanctions that would ruin a defendant's reputation in the community are more appropriate where defendant's conduct is at odds with social mores, and does not simply run afoul of a regulatory offense.

Severe penalties and reputational damage are inappropriate in cases where there is no "evil" intent whatsoever. *See United States v. Wulff*, 758 F.2d 1121 (6th Cir. 1985) (upholding dismissal of indictment charging violation of felony provision of Migratory Bird Treaty Act, a strict liability offense, based on the gravity of the penalties – two years in prison and $25,000 fine,  and the

---

[8] *See n.2 supra*

14.

potential damage to defendant's reputation).  More severe levels of penalties for a crime where the intent element has been abolished have "aroused the concern of responsible and disinterested students of penology." *Morrissette*, 342 U.S. 254 n.14; *see also* Sayre, *Public Welfare Offenses*, 33 Colum. L. Rev. at 56; Richard J. Lazarus, *Meeting the Demands of Integration in the Evolution of Environmental Law: Reforming Environmental Criminal Law*, 83 Geo. L.J. 2407, 2472-84 (1995); Charles J. Babbitt *et al.*, *Discretion and the Criminalization of Environmental Law*, 15 Duke Env. Law & Pol'y Forum 1 (2004).

The prospect of penalties and damage to character in this case is far higher than in *Holdridge*, and is, in some ways, even more severe than the statute struck down in *Wulff*.  One year in prison is twice as long as the six months deemed not severe in *Holdridge*; $100,000 in fines is more than ten times the fine considered too severe in *Wulff*, and the potential for even greater fines under the Alternative Fines Act creates prospects that are profoundly serious.[9]

Further, as in *Wulff*, Captain Cota faces severe reputational risk in the case of a conviction. Indeed, even being indicted effectively ended Captain Cota's career as a pilot.  A conviction would surely foreclose any possibility of continuing his 26-year career as a pilot.  Further, this prosecution has received massive media attention.  Collectively, these massive sanctions are not consistent with the purposes of the public welfare doctrine, because they act more as a punishment than for the purpose of "achievement of some social betterment." *Balint,* 258 U.S. at 252.  Based on the above, imposition of such a severe sanction without a showing of criminal intent would violate Captain Cota's rights under the Due Process Clause of the Fifth Amendment to the United States Constitution.

[9] 18 U.S.C. §3751(d). Indeed in one case involving a similar charge against the owner of an oil tanker, a *$25 million fine* was imposed based on the Alternative Fines Act.

15.

**D.**    <u>Congress Did Not Clearly And Unmistakably Intend To Criminalize Ordinary Negligence Under The Clean Water Act.</u>

Even if Captain Cota were found to be in the business of dealing in an inherently dangerous substance or device, and even if the regulation of that substance poses relatively mild criminal penalties, a court may not suspend or relax the scienter requirement absent clear and unmistakable congressional intent. *See, e.g., Balint*, 252 U.S. at 253 ("[t]he question before us, therefore, is one of the construction of the statute and of inference of the intent of Congress"); *Morrissette*, 342 U.S. at 262 ("Congressional silence as to mental elements in an Act merely adopting into federal statutory law a concept of crime already so well defined in common law and statutory interpretation by the states may warrant quite contrary inferences than the same silence in creating an offense new to general law, for whose definition the courts have no guidance except the Act."); *see also Crosby v. Foreign Trade Council*, 530 U.S. 363, 387-88 (2000) (finding an inference of congressional intent from silence "unwarranted" because the silence was ambiguous); *Burns v. United States*, 501 U.S. 129, 136 (1991) ("An inference drawn from congressional silence certainly cannot be credited when it is contrary to all other textual and contextual evidence of congressional intent.").

We recognize that this Circuit has construed 33 U.S.C. § 1319(c)(1)(A) to permit criminal liability to be imposed without any criminal intent, and instead based on the presence of ordinary negligence. *Hanousek*, 176 F.3d at 1120. However, we respectfully submit that this decision should not control this Court's interpretation of 33 U.S.C. § 1319(c)(1)(A) for two reasons. First, the *Hanousek* court's ruling is based entirely on a construction that is premised on comparing the use of particular words in a criminal statute with those used in a civil statute under the statutory construction principle calling for reading similar statutes *in pari material.* In a case from this Circuit, the Supreme Court has expressly declared it wrong to use such an analysis for determining Congressional intent. *Safeco Ins. Co.*, 127 S.Ct. at 2210. Therefore, the Ninth Circuit's basis for concluding that Congress clearly and unambiguously intended that an ordinary negligence standard

16.

1    be used is no longer valid, leaving this Court with the obligation to determine anew how to interpret

2    the use of the word "negligently" in the statute. Because Congress did not clearly or unambiguously

3    state its intent to eliminate the requirement for criminal intent, Count Three which attempts to do so,

4    violates the Due Process Clause.

5

6             1.       **The *Hanousek* Court's Interpretation Of 33 U.S.C. § 1319(c)(1)(A) Is Invalid.**

7        In *Hanousek*, defendant argued that "negligently," as used in 33 U.S.C. § 1319(c)(1)(A),

8

9    should be interpreted to mean criminal or gross negligence. The Ninth Circuit disagreed. First, the

10   court found that "negligently" ordinarily means the failure to exercise reasonable care.[10] *Hanousek*,

11   176 F.3d at 1120. The court also noted that 33 U.S.C. § 1321(b)(7)(D) provided for increased civil

12   penalties where the discharge of oil resulted from gross negligence. *Id.* at 1121. The court reasoned

13   that Congress had included the word "gross" in the civil penalties provision, and excluded it in the

14   criminal enforcement provision. Therefore, applying the doctrine of *in pari materia*, as a principle

15   of statutory interpretation, the court concluded that Congress knew how to require gross negligence

16   and because it did not do so in the criminal provision, it was its clear intent that ordinary negligence

17   standard apply. *Id.* The Ninth Circuit relied entirely on the use of a term in a civil statute to

18

19   construe a corresponding phrase in a criminal statute. *Id.*

20        In *Safeco Ins. Co.,* plaintiff (a consumer) sued defendant (an insurance company) under the

21

22   Fair Credit Reporting Act ("FCRA"), which entitled plaintiff to notice when adverse action was

23   taken by defendant on the basis of plaintiff's credit report. Under the FCRA, a defendant is liable

24   where she "willfully fails" to provide this notice. 15 U.S.C. § 1681n(a). The issue was whether the

25   term "willfully" meant "recklessness" or was limited to "knowing" conduct. The insurance

26

27   [10] Because the *Hanousek* court concluded based on application of statutory construction rules, that Congress expressly intended an "ordinary negligence" standard, it did not have to address the

28   overwhelmingly common use of gross negligence for statutes creating criminal negligence fines. *See infra* at 21-22.

DEFENDANT JOHN J. COTA'S NOTICE OF MOTION AND MOTION TO DISMISS COUNT
THREE—CR 08-0160 SI

1    company argued, *inter alia*, that "willfully" in the civil statutes should be interpreted consistent with

2    its use in a parallel criminal statute.

3    The Supreme Court rejected that argument, reasoning that in the criminal law, "willfully"

4    creates an extra element of proof for the government, whereas in civil statutes, "the term typically

5    presents neither the textual nor the substantive reasons for pegging the threshold of liability at

6

7    knowledge of wrongdoing." *Id.* at 2208 n.9. In essence, the Supreme Court held that a court may

8    not use the doctrine of *in pari materia* to justify inferring something about Congress' intent in a

9    criminal statute based upon their word choice in a civil statute, because civil and criminal statutes

10    operate under a vastly different set of rules and conventions. *Id.* Based on this reasoning the Court

11    held that "the vocabulary of the criminal side of FCRA is consequently beside the point in

12    construing the civil side." *Safeco Ins. Co.*, 127 S.Ct. at 2210.

13

14    Thus, the *Hanousek* court's rationale - relying on the "intent" terms of a civil statute to

15    inform it as to Congress' clear and unambiguous intent with respect to the intent standard in a

16    parallel criminal statute - cannot be reconciled with *Safeco Ins. Co.*[11] At least one district court has

17    agreed. *United States v. Atlantic States Cast Iron Pipe Co.*, 2007 WL 2282514 at *13 n.17 (D.N.J.

18    2007) ("We believe there is good reason to scrutinize carefully that aspect of *Hanousek*, rather than

19    accepting it as controlling"). If this court agrees that the Supreme Court has ruled that the analytical

20

21    framework used by the *Hanousek* court to conclude that Congress unambiguously intended that an

22    ordinary negligence standard apply, then it is appropriate for it to consider the interpretation of the

23    negligence provision anew.

24    In criminal law, it is a "fundamental principle that no citizen should be held accountable for a

25    violation of a statute whose commands are uncertain, or subjected to punishment that is not clearly

26

27    [11] We assume arguendo that the "gross negligence" civil provision that the Ninth Circuit used to
compare the "negligence" criminal provision are parallel provisions that are properly subject to

28    applicaton of the *in pari materia* doctrine because the Ninth circuit held as much, and reserve our

18.

prescribed." *United States v. Santos*, ___U.S. ___ , 2008 WL 2229212 (2008). ("Under a long line of our decisions, the tie must go to the defendant. The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them."). Serious questions persist as to the exact meaning of "negligently" in 33 U.S.C. § 1319(c)(1)(A); these serious questions may not be resolved in favor of liability according to the Due Process Clause of the Fifth Amendment. *See, e.g. Ladner v. United States*, 358 U.S. 169 (1958) (a conviction is inappropriate where liability would be "based on no more than a guess as to what Congress intended.").

> **2.     An Appropriate Interpretation Of 33 U.S.C. § 1319(c)(1)(A) Would Construe The Use Of "Negligently" To Set The Standard Of Intent As Gross Negligence.**

The Supreme Court has noted that a common law term in statutes has generally been construed based on its "common law meaning" *in the context of the most applicable source of common law.*   In this case, the statute at issue is a criminal enforcement provision. See e.g. *Beck v. Prupis*, 529 U.S. 494, 501 (2000) (explaining that a civil cause of action even under RICO statute should be construed by civil law principle).

Therefore, the "obvious source in the common law" to construe the statute is the criminal law. Examining, then, the general law of crimes, it is well settled that criminal negligence does not generally mean ordinary negligence. Most often, crimes that replace traditional *mens rea* with a "criminal negligence" standard are construed to require some level of actual mental culpability – at least gross or wanton negligence. *See, e.g.,* American Law Institute, *Model Penal Code* § 2.02(2)(d) (1985) ("[criminal negligence] involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation"); Modern Federal Jury Instructions § 41.02, Inst. 41-27 ("[g]ross negligence means conduct amounting to wanton or reckless disregard for human life"); CALJIC § 3.36 ("criminal negligence means conduct which is more than ordinary negligence"); 2-

rights to appeal that issue. At least one other court has questioned that premise. *United States v.*

DEFENDANT JOHN J. COTA'S NOTICE OF MOTION AND MOTION TO DISMISS COUNT
THREE—CR 08-0160 SI

1    33 Va. Model Jury Inst. No. 33.610 ("In order for criminal liability to result from negligence, it must

2    necessarily be reckless or wanton and of such a character as to show disregard of the safety of

3    others…"); Pa. SSJI (Crim) § 15.2504 n.1 ("Criminal negligence is not the same entity as that in the

4    civil system").[12]  The rationale behind this distinction is apparent: the criminal law, from its very

5    inception, has focused on meting out punishment for conduct motivated by a deviance from social

6    mores; mistakes are not sins. *See supra* Part III.A.1.

7

8        The Court may consider other laws that are appropriately relevant. *See, e.g., American

9    Airlines, Inc. v. North American Airlines, Inc.,* 351 U.S. 79, 82 (1956) (construing Section 411 of the

10   Civil Aeronautics Act in light of the Federal Trade Commission Act, because they shared a common

11   purpose, even though the language was similar but not identical); *United States v. Dixon,* 347 U.S.

12   381, 384-85 (1954) (finding the construction of analogous statutes is "most persuasive" for purposes

13   of statutory interpretation).  Here the Court may look to 46 U.S.C. §2302, which imposes criminal

14   liability on any person who operates a vessel with gross negligence.

15

16       Given (a) the ambiguity inherent in the term "negligently," (b) the requirement that criminal

17   statutes should not be interpreted to eliminate the *mens rea* requirement absent clear congressional

18   intent, (c) the lack of any clear congressional directive here, (d) the overwhelming evidence that in

19   most cases involving criminal negligence a gross negligence standard is applied, the proper standard

20   of intent applicable to Count III is gross negligence.

21

22

23

24

25   _____

26   *Atlantic States Cast Iron Pipe Co.,* 2007 WL 2282514 at *13 n.17 (D.N.J. 2007).
     [12] Plainly, these instructions differ substantially from an instruction based on ordinary negligence.
     *Cf. Atl. States Cast Iron Pipe Co,* 2007 WL 2282514 at *13 (jury instruction for ordinary negligence
27   under the CLEAN WATER ACT: "[a] person negligently violates the Clean Water Act by failing to
     exercise the degree of care that someone of ordinary prudence would have exercised in the same
28   circumstances, and, in so doing, discharges any pollutant into United States waters without or in
     violation of a water permit.").

                                    20.

DEFENDANT JOHN J. COTA'S NOTICE OF MOTION AND MOTION TO DISMISS COUNT
THREE—CR 08-0160 SI

E.    **Even If An Ordinary Negligence Standard Applies, That Term Should Be Construed To Include All Defenses Available To Captain Cota In A Negligence Case At Admiralty.**

Even assuming arguendo that the Due Process Clause permits imposition of criminal liability for violations of 33 U.S.C. § 1319(c)(1)(A), the parameters of an "ordinary negligence" case must be informed by the defenses available in a negligence context. If this Court were to construe the statute as permitting imposition of criminal liability based on ordinary negligence as generally defined, and not permit the use of defenses typically available to defeat such a *prima facie* case, the Court would essentially transform 33 U.S.C. § 1319(c)(1)(A) into a strict liability statute. Such a construction not only contravenes the express language of the statute, it would run afoul of even the broadest construction of the public welfare doctrine. Consequently, to the extent Count Three is read to assign liability based on ordinary negligence, it must also afford Captain Cota the defenses available to him in a negligence case at admiralty, or Count Three will violate his right to due process.

As stated above, the use of ordinary negligence to assign fault in a criminal action is quite rare. Indeed, the very definition of ordinary negligence used by the *Hanousek* court is borrowed from the civil law. *See Hanousek*, 176 F.3d at 1120 (*quoting Black's Law Dictionary* 1032 (6th ed. 1990)). As a consequence, the precise elemental definition of ordinary negligence is best borrowed from an analogous source. Given that this entire case centers on a marine accident, the most logical place from which to construe the meaning of ordinary negligence is in the context of admiralty law.

There exists a large and long-standing body of precedent of admiralty law that provides specific defenses in a maritime negligence case. For example, if there is negligence on the part of two or more parties in an admiralty case, those parties shall share liability based on the comparative degree of their fault. *United States v. Reliable Transfer*, 421 U.S. 397 (1975); *see also Exxon Co. USA v. Sofec., Inc. (The Exxon Houston)*, 517 U.S. 830 (sole fault is placed on the party whose unexpected actions intervened to cause marine casualty). Further, a pilot is the servant of the vessel,

21.

1  serves at the supervision of the master of the ship, and may be removed by the master if his

2  performance puts the vessel at risk. *Guy v. Donald*, 203 U.S. 399 (1906); *Societa per Azione de*

3  *Navigazione Italia v. City of Los Angeles*, 183 Cal. Rptr. 51 (1983), cert denied, 459 U.S. 990

4  (1982); 2 Schoenbaum, Admiralty and Maritime Law 81 (4th Ed. 2004) ("the pilot is subject to the

5

6  ultimate supervision and control of the master."). Further, fault is not determined simply by the fact

7  an accident occurred. *See The Putney Bridge*, 219 F. 1014 (D. Md. 1915) ("Whether [the navigator]

8  neglected something [that he] should have done must be determined, not by the result, but by the

9  situation as it presented itself to him at the time."); *Dahlia Maritime Co. v. M/S Nordic Challenger*,

10  1994 AMC 2208, 2218 (E.D. La. 1994). Even general California law calls for certain defenses to an

11  action sounding in ordinary negligence, such as comparative fault. *See, e.g., Li v. Yellow Cab Co.*,

12  532 P.2d 1226 (1975) (adopting a pure comparative fault scheme for California).

13

14       If Count Three is read to create criminal liability based on the civil negligence standard, the

15  entire civil negligence standard, including defenses, should be adopted. Any other such a

16  construction would violate Captain Cota's rights under the Due Process Clause of the Fifth

17  Amendment to the United States Constitution.

18  **III.    CONCLUSION.**

19       For the foregoing reasons, Count Three of the Superseding Indictment violates Captain

20  Cota's due process rights, and should be dismissed with prejudice.

21

22  Dated: June 13, 2008.                    KIRKPATRICK & LOCKHART
                                            PRESTON GATES ELLIS LLP
23

24                                          By ___/s/ Jeffrey L. Bornstein. _
25                                          Jeffrey L. Bornstein, Esq.
                                            Barry M. Hartman, Esq., *Admitted Pro Hac Vice*
26                                          Luke G. Anderson, Esq.
                                            Christopher R. Tate, Esq., *Pro Hac Vice pending*
27
                                            Attorneys for Defendant
28                                          JOHN J. COTA

                                  22.

DEFENDANT JOHN J. COTA'S NOTICE OF MOTION AND MOTION TO DISMISS COUNT
THREE—CR 08-0160 SI