1  Jeffrey L. Bornstein (State Bar No. 99358)
   Luke G. Anderson (State Bar No. 210699)
2  K&L Gates LLP
   55 Second Street, 17th Floor
3  San Francisco, CA 94105
   Telephone: (415) 882-8200
4  Facsimile: (415) 882-8220

5  Barry M. Hartman, *Admitted Pro Hac Vice* (DC Bar No. 291617)
   Christopher R. Tate, *Admitted Pro Hac Vice* (PA Bar No. 205510)
6  K&L Gates LLP
   1601 K Street, N.W.
7  Washington, D.C. 20006
   Telephone: (202) 778-9000
8  Facsimile: (202) 778-9100

9  Attorneys for Defendant
   JOHN J. COTA

10

11                        UNITED STATES DISTRICT COURT

12                      NORTHERN DISTRICT OF CALIFORNIA

13                          SAN FRANCISCO DIVISION

14  UNITED STATES OF AMERICA,              | Case No. CR 08-0160 SI

15                            Plaintiff,   | **DEFENDANT JOHN J. COTA'S REPLY
                                           | TO OPPOSITION TO MOTION TO
16       v.                                | DISMISS FALSE STATEMENT
                                           | CHARGES**
17  JOHN J. COTA,

18                            Defendant.

19

20       Defendant John J. Cota ("Captain Cota"), by and through his undersigned counsel,

21  hereby files this reply to the United States' Opposition ("Opposition") to Captain Cota's Motion

22  to Dismiss False Statement Charges ("Motion").

23  I.    __INTRODUCTION.__

24       The issue before the Court is whether it is proper for the government to charge Captain

25  Cota with making false statements to a <u>federal</u> agency based on Captain Cota's interaction with a

26  doctor who was authorized by the State to perform a medical examination in connection with his

27  State Pilot's license. Captain Cota submits that it is not for the reasons set forth below.

28

                                          1.

As a threshold matter, the government's position is largely based on facts not stated in nor reasonably inferred from the Indictment, and such arguments must for this reason alone be rejected. Moreover, many of the government's factual assertions are not supported by any evidence in the Opposition itself nor by any materials provided to the defense in this matter, and are furthermore assertions which Captain Cota strongly contests as wrong, misleading or irrelevant.

## II.    DISMISSAL IS PROPER BECAUSE THE MEDICAL EXAMINATIONS AT ISSUE ARE A STATE, AND NOT A FEDERAL, MATTER.

### A.    Dr. Calza Was A State-Approved Medical Examiner.

The government's false statement claims boil down to a basic issue: are the conversations between Captain Cota and Dr. Calza during the 2006 and 2007 medical examinations a matter of federal jurisdiction? In its Opposition, the government attempts to characterize these conversations as examinations that are "jointly" state and federal. For example, the government states, without any support, that Dr. Calza "was a physician *authorized by the Coast Guard* and San Francisco Pilots Commission to administer annual merchant mariner physicals" and that "the only purpose of the examination was to satisfy the regulatory requirements *of the United States Coast Guard* and the State Board of Pilot Commissioners." Opposition at 4 (emphasis added).

The facts, however, demonstrate otherwise. Dr. Calza is a local San Francisco Bay area physician who was on the State Board's list of approved medical examiners. The Coast Guard even recognizes as much in its own investigative report regarding the COSCO BUSAN accident, describing Dr. Calza as a general physician who "conducts physicals for the San Francisco Bay Bar Pilots." *See* Motion (Docket #52), Exhibit A. There is no evidence or even an allegation that the Coast Guard maintains an authorized list of physicians or physicians' assistants, much less that Dr. Calza was on it. As such, Dr. Calza cannot fairly be described after the fact as a "federal" doctor.

DEFENDANT JOHN J. COTA'S REPLY TO OPPOSITION TO MOTION TO
DISMISS FALSE STATEMENT CHARGES - CR 08-0160 SI

**B.**     **The Coast Guard Recognizes The State Board's Jurisdiction Over This Matter.**

In an effort to characterize the meetings between Captain Cota and Dr. Calza as a federal matter, the government points out that (i) Section 46 of the Code of Federal Regulations requires that pilots undergo annual medical examinations, and (ii) the law regarding false statements does not require that the federal government actually review and rely upon the false statements. Opposition at 8-11. The issue here, however, is not whether the Coast Guard has promulgated general, national regulations regarding pilot licensing. Rather, the issue is whether the Coast Guard has interpreted its regulatory authority to be limited, and to exclude pilotage jurisdiction of the San Francisco Bay. As noted in the Motion, pursuant to its formal Memorandum of Agreement (the "MOA") with the State of California, the Coast Guard acknowledged that the San Francisco Bay is effectively under the "pilotage jurisdiction" of the State Board.[1] Motion, Exhibit D, page 147. Nothing in the government's Opposition counters this plain but important fact.

The government argues that federal Coast Guard regulations requiring annual medical examinations as an example of its assertion of jurisdiction over this matter. The Coast Guard expressly recognized in the MOA, however, that the federal rules govern in the *absence* of state regulations. *See* Motion, Exhibit D, page 147. Thus, where the state has enacted specific legislation governing pilots, the state rules apply. In the MOA, the Coast Guard (i) specifically singled out San Francisco Bay as a territory already subject to detailed and comprehensive State legislation, and (ii) expressly recognized that San Francisco Bay falls under the "pilotage jurisdiction" of the State Board.

Thus, it is indisputable that for years the government has said it does not and will not exercise jurisdiction over San Francisco pilot medical examinations, but now, after an accident and perhaps even political pressure placed on the prosecutors, the government is seeking to reverse its position and threaten a five year jail term based on apparent miscommunications

---

[1] While the government points out that the version of the MOA attached to Motion appears to be a draft, it does not contest that the MOA contains the cited language.

**DEFENDANT JOHN J. COTA'S REPLY TO OPPOSITION TO MOTION TO DISMISS FALSE STATEMENT CHARGES - CR 08-0160 SI**

between a pilot and a state doctor.  An agency may not change its view regarding what conduct it considers to be covered by it rules, and then charge a violation of that revised standard, thereby causing undue prejudice to a litigant who may have relied on the agency's prior policy or interpretation.  *Ruangswang v. INS*, 591 F.2d 39, 43 (9th Cir.1978) (rejecting the government's attempt, in the course of litigation, to interpret its own regulation in a manner that was "plainly erroneous or inconsistent with the regulation").  Nor may it change its longstanding policies and practices for the convenience of its litigating position.  *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 213 (1988) ("[d]eference to what appears to be nothing more than an agency's convenient litigating position would be entirely inappropriate").  Rather, the government is bound by its own contemporaneous and longstanding interpretation of the jurisdictional limits of its own statute.  *Red Lion Broad. Co., Inc.  v. FCC*, 395 U.S. 367, 381 (1969)("the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong"); *See also United States v. Jackson*, 2007 U.S.Dist. LEXIS 29171, 7-8 (D. Idaho 2007) (finding that "[t]he doctrine of quasi-estoppel prevents a party form asserting a right, to the detriment of another party, which is inconsistent with a position previously taken").  The federal government knowingly entered into the MOA and should not now be allowed to ignore it purely in an attempt to meet the requirements of Section 1001.  Accordingly, since Dr. Calza is a State Board approved physician, the examinations are a State matter and not a federal one.[2]

III.  **EVEN IF THE MEDICAL EXAMINATIONS WERE DEEMED A FEDERAL MATTER, THE EXAMINATION PROCESS WAS SO AMBIGUOUS AND FATALLY FLAWED THAT IT VIOLATES DUE PROCESS TO USE THEM AS THE BASIS FOR A FALSE STATEMENT CLAIM.**

Even assuming, *arguendo*, that the communications between Captain Cota and Dr. Calza in 2006 and 2007 can be characterized as matters of federal jurisdiction, dismissal is still proper

---

[2]  Even the government appears to concede that the medical examinations in question are not material events given what it calls the lifetime tenure of San Francisco Bar Pilots:  "The position of Pilot in San Francisco Bay is a life tenure appointment**. The only way to obtain the position is for a current Pilot to die or retire**."  *See* Opposition to Motion to Dismiss Clean Water Act Count at 12 (Docket # 63) (emphasis added).

4.

1  since the examination process was so ambiguous and fatally flawed that it violates due process to

2  use them as the basis for a false statement claim.  *United States v. Manapat*, 928 F.2d 1097, 1101

3  (11th Cir. 1991)(affirming dismissal of felony false statement claims on the ground that the

4  medical form which allegedly gave rise to the false statements was ambiguous).

5        First, the Opposition completely ignores the fact that <u>the federal government itself</u>

6  admitted that the federal medical examination program was fundamentally flawed.  Among other

7  things, the federal government found that (i) the Coast Guard does not provide guidance on the

8  acceptable methods of meeting the [federal] requirements, (ii) the Coast Guard does not have any

9  formal mechanism for being informed about a mariner who has a disqualifying physical

10  condition, and (iii) the form at issue -- Form 719K -- does not apply to the exact event the

11  government here tries to apply it to: namely, annual pilot medical evaluations.[3]  Motion, <u>Exhibits</u>

12  <u>E and F</u>.  This is not a situation in which a lone federal official has questioned in passing the

13  adequacy of a given form or process.  Rather, a formal Federal Advisory Committee has been

14  established to address the problems associated with the use of this form.[4]  Simply put, the

15  government should not be permitted to charge Captain Cota with failing to meet federal medical

16  examination requirements when, as conceded by the federal government itself, no one knows

17  what this form requires, nor how to complete it.  Nor should Captain Cota be even exposed to jail

18  time of up to five years based on an examination program lacking any "formal mechanism" for

19  working effectively.[5]

20

21  [3] This comports with 46 C.F.R. § 10.205(d) which does not require that examining physicians
22  use Form 719K, merely "a Coast Guard physical examination form, <u>or its equivalent</u>" (emphasis
    added).

23  [4] *See* Motion, <u>Exhibit Q</u> (MERPAC Task Statements 46 and 61), stating, among other things,
    that the Coast Guard's "regulatory cites are generally vague, often causing confusion among the
24  RECs and mariners," that the "source documents for medical guidelines are generally vague,"
    and that "[n]either STCW nor the regulations in 46 CFR contain any standards, with the
25  exception of visual acuity and color vision, for determining whether a mariner is physically
    qualified."

26
    [5] This also undermines the government's argument that the alleged false statements were
27  material.  While it is plainly important for medical examinations to be accurately performed, the
    test for determining materiality is whether an alleged false statement "had the intrinsic capability
28  of influencing or affecting" federal decision-making in a significant way.  *See United States v.*
    *Facchini*, 874 F.2d 638, 641 (9th Cir. 1989).  The federal government's own frank assessment of

5.

1    The government may argue that the Coast Guard corrected these deficiencies by requiring

2    pilots to submit their most recent medical examination results as of April 11, 2007 to the Coast

3    Guard.  Without acknowledging that this change in regulation fixed the problems, there can be

4    no dispute that it had no affect on the 2006 examination (since the 2007 examination was

5    Captain Cota's most recent physical examination).  Any attempt to retroactively apply this

6    change in regulation to cover the 2006 examination would plainly violate the *Ex Post Facto*

7    Clause, as set forth in greater length in the Motion.  Motion at 15-16.

8    The government, however, claims that there are no *ex post facto* implications in the new

9    regulation because up until the new regulation became effective in April 2007, federal law

10   already required a pilot to obtain an annual physical.  Opposition at 10.  In this case, the physical

11   examination performed by Dr. Calza for the State Board satisfied the federal requirement as

12   well.[6]  What the government fails to address, however, is that only as of April 2007 did the

13   government advise anyone that it would play an active role in overseeing these mariner physical

14   exams.  That is a qualitative difference that does raise *ex post facto* questions.  The real issue

15   here is that the government disagrees with Dr. Calza's conclusion that Captain Cota was "fit for

16   duty" based on the examinations he performed in 2006 and 2007.  That type of after-the-fact

17   second guessing before there is notice to an affected person of the federal governmental intent

18   and authority is what the *Ex Post Facto* Clause protects against.

19

20   ────────────────────────────────

21   the ineffectiveness of the medical examination program precludes any finding that Captain
     Cota's brief conversations with Dr. Calza were intrinsically capable of significantly affecting
     government action.  The government's materiality argument is further weakened by the fact that

22   as a result of the 2006 and 2007 examinations, Dr. Calza learned that Captain Cota had sleep
     apnea, for which he was prescribed Provigil, and that he was prescribed pain medications and

23   other medications that were anti-depressant / anti-anxiety in classification.  Despite the
     government's claim that Dr. Calza "had concerns" about this information, the only action he

24   allegedly took was to advise Captain Cota not to take these medications within 24 hours of
     working.  Opposition at 13.  Such a warning, even assuming it was given, does not constitute a

25   "significant" impact on federal decision-making, as required by law, especially where Dr. Calza
     made no record of having provided such warning on Form 719K or in any other medical records

26   he maintained or any he provided to Captain Cota.

27   [6] Once every five years, a pilot needs to renew his federal license and, at that time provide proof
     of his annual physicals.  46 C.F.R. § 10.202(b).  Captain Cota last renewed his federal license in

28   2005 and did not have to renew it again until 2010.

**DEFENDANT JOHN J. COTA'S REPLY TO OPPOSITION TO MOTION TO
DISMISS FALSE STATEMENT CHARGES - CR 08-0160 SI**

1    Second, the Opposition does not address the fact that the federal government has

2    convened a federal committee (MERPAC) to review the federal examination program and,

3    specifically, to revise the very form used during Captain Cota's examinations, Form 719K.  In its

4    Opposition, the government focuses much of its effort on reciting general law regarding whether

5    criminal statutes provide sufficient notice of the offense.  The issue here is much more specific:

6    were the questions and/or inquiry which gave rise to Captain Cota's alleged false statements,

7    including those on Form 719K, ambiguous?  This issue is particularly important since the

8    government seeks to imprison Captain Cota based on the manner in which Form 719K was

9    completed by Dr. Calza.  At the very least, as set forth in the Motion, the government is required

10   to establish that the inquiries giving rise to the alleged false statements are clear and free from

11   ambiguity.  *United States v. Manapat*, 928 F.2d 1097, 1101 (11th Cir. 1991)(discussed in Motion

12   at 18-20).

13       The ongoing debate over and revisions to Form 719K focus on the specific sections at

14   issue here and demonstrate that these inquiries were ambiguous and ineffective.  For example, in

15   its most recent revisions to Form 719K, attached hereto as <u>Exhibit S</u>, MERPAC finally clarifies

16   the time period covered by the request for information, requiring applicants to list medications

17   prescribed or taken "within 30 days prior to the date the applicant" signs the form.[7]  MERPAC

18   specifically removed the word "current" before "medication" (*See* section titled "Applicant

19   Information," page 1), noting in its comments that such language should be reviewed "in light of

20   COSCO BUSAN case, i.e. what does 'current' medications mean?"  This is compelling evidence

21   of the form's ambiguity on a key provision.  The revised form also squarely acknowledges the

22   duty of the <u>examining physician</u> to obtain complete information: "[v]erification of

23   medications…includes questioning the applicant about any medications or other substances

24

-----

25   [7] In the Opposition, and without support, the government claims that Dr. Calza's "questions"
     applied to the entire previous year, which, ironically, covers a different and much longer time
26   period than that set forth in the revised Form 719K.  Opposition at 16, fn 14.  This again shows
     the inherent ambiguity of the examination process, which is obviously dependent on the kinds of
27   questions asked, the mariner's ability to understand them and respond adequately, and the
     doctor's decision about what to report.
28

7.

reported, reviewing relevant medical conditions to determine if the applicant has omitted any medications or other substances, and affirmatively reporting any omitted current medications or other substances where required."  See Exhibit S hereto (page 2).  This revision demonstrates that (i) the requirements of this section of the form were not clearly understood nor easily met by applicants, and (ii) the process of gathering sufficient medical information is interactive, with the physician being primarily responsible for clarifying any ambiguities and probing into the information provided.

This latter revision is particularly important: Dr. Calza's examinations of Captain Cota in both 2006 and 2007 were brief, cursory, focused largely on motor/vision tests and far from "interactive."  In fact, despite the government's claim that Dr. Calza "had concerns" about the information he obtained from Captain Cota during the examinations, Dr. Calza did not articulate or record these concerns in any medical record he maintained nor did he provide anything to Captain Cota identifying his concerns.  The evidence will demonstrate that Dr. Calza failed to ask follow up questions, did not conduct any further evaluation or testing, did not review any of Captain Cota's medical records, did not consult with Captain Cota's prescribing physicians and did not do any research or obtain any second opinions.  Captain Cota should not be held criminally liable for Dr. Calza's failure to properly conduct the examinations or to record his alleged concerns.

In its Opposition, the government claims that in 2007 Captain Cota "continued to conceal all of the medications he was taking and significantly minimized certain highly relevant and newly disclosed medications."  Opposition at 6.  Apart from the failure of the Indictment to even hint at such "continuation," Captain Cota in fact disclosed his sleep apnea and his prescription for Provigil, his prescriptions for a variety of pain mediations, including one drug the government labeled as a "serious pain medication" (Opposition at 5), as well as other drugs he had been prescribed.  These disclosures were qualitatively different from the prescriptions recorded by Dr. Calza in 2006 and yet there is no record of Dr. Calza doing or saying anything in response.  Further, while the government repeatedly tries to infer that Captain Cota had a motive

DEFENDANT JOHN J. COTA'S REPLY TO OPPOSITION TO MOTION TO
DISMISS FALSE STATEMENT CHARGES - CR 08-0160 SI

1  to lie, conceal or minimize his responses because he was in danger of losing his high paying job,

2  the truth is that if he was medically disabled he would have been able to retire with a disability

3  retirement pension that would have resulted in a much more significant, tax free income than he

4  is likely to obtain otherwise.[8]

5         Finally, neither Dr. Calza nor Form 719K provided Captain Cota with any notice that his

6  discussions with Dr. Calza were subject to the sanctions of Section 1001.  The federal

7  government obviously considers this a significant omission, as the revisions to Form 719K now

8  contain an express warning where none existed before.

9  **IV.    CONCLUSION.**

10        The simple fact is that the medical examinations at issue were conducted pursuant to the

11  State Board's licensing authority and not the Coast Guard's.  Further, even assuming arguendo

12  that the Coast Guard is determined to exercise regulatory oversight and authority over these

13  examinations, there are fundamental problems with the existing federal process and in particular,

14  with the questions on Form 719K and the manner in which the form is completed by the

15  examining physician.  This has resulted in a formal, on-going government sponsored effort to

16  address and correct these ambiguities and deficiencies in order to provide fair notice regarding

17  the examination requirements, including the penalties for non-compliance.

18        Thus, even the government must acknowledge that the problems inherent in the current

19  examination process raise serious due process concerns and, one assumes, that is why it is

20  working diligently to address and correct those issues.  It is fundamentally unfair to prosecute

21  //

22  //

23  //

24  //

25  //

26  //

27

28  [8] The government repeatedly exaggerates the salary Captain Cota earned and the financial
consequences if he lost his job due to medical reasons in any event.

9.

**DEFENDANT JOHN J. COTA'S REPLY TO OPPOSITION TO MOTION TO
DISMISS FALSE STATEMENT CHARGES - CR 08-0160 SI**

1  Captain Cota under these circumstances.  The false statement charges should therefore be

2  dismissed.

3                                              Respectfully submitted,

4

5                                              K& L GATES LLP

6

7  Dated:   July 11, 2008               By:    /s/ Jeffrey L. Bornstein

8                                              Jeffrey L. Bornstein, Esq.
                                               Luke G. Anderson, Esq.
8                                              Barry M. Hartman, Esq., *Admitted Pro Hac Vice*

9                                              Christopher R. Tate, Esq., *Admitted Pro Hac Vice*

10                                             Attorneys for Defendant
                                               JOHN J. COTA

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                          10.

**PROOF OF SERVICE**

I am employed in the County of San Francisco, State of California by a member of the Bar of this Court, at whose direction this service was made. I am over the age of 18 and not a party to the within action. My business address is 55 Second Street, Suite 1700, San Francisco, CA 94105. On July 11, 2008, I served the document(s) described as:

DEFENDANT JOHN J. COTA'S REPLY TO OPPOSITION TO MOTION TO DISMISS
FALSE STATEMENT CHARGES

on the parties to this action named on the attached service list by the method described below.

(BY PERSONAL SERVICE) I caused a true and correct copy of said document(s) to be served by hand to the addressee(s) listed above, with the name and address of the person served shown on the envelope.

(BY OVERNIGHT DELIVERY) I enclosed a true and correct copy of said document(s) in an envelope/package provided by an overnight delivery carrier addressed to the addressee(s) listed above, sealed it, and placed it for collection and overnight delivery following the ordinary business practices of Kirkpatrick & Lockhart Preston Gates Ellis LLP. I am readily familiar with the firm's practice of collecting and processing correspondence for overnight delivery. On the same day that correspondence is placed for collection and overnight delivery, it is collected by an overnight delivery carrier. Delivery fees are pre-paid or provided for in accordance with the ordinary business practices of Kirkpatrick & Lockhart Preston Gates Ellis LLP.

**X**   (BY ELECTRONIC TRANSMISSION) I transmitted a true and correct copy of said document(s) by electronic mail to the offices of the addressee(s). I did not receive, within a reasonable time after the transmission, any message or other indication that the transmission was unsuccessful.

(BY FACSIMILE) I transmitted a true and correct copy of said document(s) by facsimile to the offices of the addressee(s). Upon completion of the facsimile transmission, a transmission report was issued showing the transmission was complete and without error.

(BY U.S. MAIL) I enclosed a true and correct copy of said document(s) in an envelope addressed to the addressee(s) listed above and placed it for collection and mailing following the ordinary business practices of Kirkpatrick & Lockhart Preston Gates Ellis LLP. I am readily familiar with the firm's practice of collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the U.S. Postal Service with postage fully prepaid at San Francisco, California.

Executed on July 11, 2008 at San Francisco, California.

I declare under penalty of perjury that the foregoing is true and correct.

_____/s/ Mae A. Chu_____
Mae A. Chu

11.

DEFENDANT JOHN J. COTA'S REPLY TO OPPOSITION TO MOTION TO
DISMISS FALSE STATEMENT CHARGES - CR 08-0160 SI

1

**SERVICE LIST**

2

| **Stacey Geis, Esq.** | **Richard Udell, Esq.** |

**Stacey Geis, Esq.**                           **Richard Udell, Esq.**

3
**Jonathan Schmidt, Esq.**                      Senior Trial Attorney
Assistant United States Attorneys               Environmental Crimes Section

4
U.S. Attorney's Office                          P.O. Box 23985
450 Golden Gate, 11th Floor                     L'Enfant Plaza Station

5
San Francisco, CA 94102                         Washington D.C. 20004

6
Fax: (415) 436-7234                             Fax: (202) 514-8865

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12.

**DEFENDANT JOHN J. COTA'S REPLY TO OPPOSITION TO MOTION TO
DISMISS FALSE STATEMENT CHARGES - CR 08-0160 SI**

**EXHIBIT S**

| Dept. of Homeland Security United States Coast Guard CG-719K (Draft) | **Coast Guard Maritime Credential Medical Evaluation Report** | OMB-0000-0000 Page 1 |
|---|---|---|

- Detailed guidance on the medical and physical evaluation guidelines for merchant mariner credentials is contained in Navigational and Vessel Inspection Circular (NVIC) XX-08.
- Additional information is also available at the National Maritime Center (NMC) Homeport website at: http://homeport.uscg.mil/mmcmedical
- Additional information can also be obtained from NMC at: [insert NMC address and phone number].

| **Who must submit this form?** |
|---|
| ► Applicants seeking an original, renewal or raise-in-grade credential are required to complete this form or its equivalent, containing the same information, and submit it to the U.S. Coast Guard. |
| ► Guidance for who is required to submit this form is contained in Enclosure (1) of NVIC XX-08. |

| **Applicant Information** |
|---|
| ► Applicants are required to provide the applicant information in section I, and to report all applicable, medications, known physical impairments and medical conditions in sections IIa and IIb at the time this form is signed by the applicant. |
| ► Applicants are required to sign and date the certification in section VIII of this form attesting, subject to criminal prosecution under 18 USC § 1001, that all information reported is true and correct to the best of their knowledge and that they have not knowingly omitted or falsified any material information relevant to this form. |
| ► Applicants must also complete the release in section X of this form. |

| **Instructions for Providing Proof of Identity** |
|---|
| ► **Applicants** shall present acceptable proof of identity to the medical practitioner conducting examinations. |
| ► **Medical practitioners** must verify the identity of applicants before conducting examinations. |
| ► Proof of identity shall consist of one current form of valid government issued photo identification. |
| The following credentials are acceptable proof of identity: (check NVIC XX-08 for complete list) Unexpired official identification issued by a federal, State, or local government or by a territory or possession of the United States, such as a TWIC, passport, U.S. driver's license, U.S. military ID card or MMD/MMC. |

| **General Instructions for Medical Practitioner** |
|---|
| 1. The Coast Guard requires a physical examination and certification be completed to ensure that mariners: |
| • Are of sound health. |
| • Have no physical limitations that would hinder or prevent performance of duties (see below). |
| • Are free from any medical conditions that pose a risk of sudden incapacitation, which would affect operating, or working on vessels. |
| 2. All examinations, tests and demonstrations must be performed, witnessed or reviewed by a physician (MD or DO) or nurse practitioner or a certified physician assistant licensed by a State in the U.S., a U.S. possession, or a U.S. territory. The verifying medical practitioner must complete sections III, IV, V, VI, VII & IX of this form. |
| 3. Detailed guidelines on potentially disqualifying medical conditions are contained in NVIC XX-08. Medical practitioners should be familiar with the guidelines contained within this document. NVIC XX-08 may be obtained from http://www.uscg.mil/hq/g-m/index/ or by calling the nearest USCG Regional Examination Center, or the National Maritime Center (http://homeport.uscg.mil/mmcmedical) at 1-888-IASKNMC (1-888-427-5662). |

**Comment [dad1]:** MERPAC Medical WG recommends that we continue to use the CG-719K/E as is, only modified to account for the changes to encl (2) that MERPAC recommends, i.e. the 719K/E should be consistent w/ the new encl (2). The K/E should also have a BMI block on it.

**Comment [dad2]:** MERPAC Medical WG agrees to work on this version of the 719K. The group will edit this version for content and format and take it up before the next meeting.

**Deleted:** current

**Comment [DAD3]:** MERPAC & TSAC both want to review this language in light of COSCO BUSAN case, i.e. what does "current" medications mean?

**Comment [dad4]:** WG recommends adding a brief discussion about the NMC centralized process here, e.g. the doctor is a data collector who simply reports the info to the Coast Guard, or the doctor makes a recommendation as to fitness for duty, etc.

**Comment [dad5]:** District of Colombia?

| Dept. of Homeland Security United States Coast Guard CG-719K (Draft) | **Coast Guard Maritime Credential Medical Evaluation Report** | OMB-0000-0000 Page 2 |
|---|---|---|

4. Verification of medications in section II(a) of this form includes questioning the applicant about any medications or other substances reported, reviewing relevant medical conditions to determine if the applicant has omitted any medications or other substances, and affirmatively reporting any omitted current medications or other substances where required.

**Formatted:** Highlight

**Deleted:** current

---

**General Instructions for Medical Practitioner Continued**

5. All applicants who require a general medical examination must be physically examined by the verifying medical practitioner.

6. The verifying medical practitioner is not required to perform or witness every examination, test or demonstration. These may be referred to other qualified practitioners; however, they must be reviewed to the satisfaction of the verifying medical practitioner. The last page of this form contains a certification that the general medical examination, vision and hearing tests, as well as the physical demonstration of competence as appropriate, have been performed, witnessed or reviewed to the satisfaction of the verifying medical practitioner. Applicants who are required to complete a general medical examination are also required to complete vision tests, and they may be required to complete hearing tests and/or demonstrations of physical competence as appropriate. The verifying medical practitioner must sign and date the certification where indicated. This signature attests, subject to criminal prosecution under 18 USC § 1001, that all information reported by the verifying medical practitioner is true and correct to the best of his/her knowledge and that the verifying medical practitioner has not knowingly omitted or falsified any material information relevant to this form.

7. If the verifying medical practitioner is unable to determine the applicant's physical ability, the applicant should be referred to another healthcare provider who can properly evaluate and test physical abilities.

**Deleted:** Medical examinations based solely on patient history review, and/or documentary review, are unacceptable.

---

**Privacy Act Statement**

As required by Title 5 United States Code (U.S.C) 552a(e)(3), the following information is provided when supplying personal information to the United States Coast Guard.

1. Authority for solicitation of the information: 46 U.S.C. 2104(a), 7101(c)-(e), 7306(a)(4), 7313(c)(3), 7317(a), 8703(b), 9102(a)(5).

2. Principal purposes for which information is used:
   a. To determine if an applicant is physically capable of performing their duties.
   b. To ensure that a duly licensed Physician (MD or DO) / Physician Assistant / Nurse Practitioner conducts the applicant's physical examination/certification and to verify the information as needed.

3. The routine uses which may be made of this information:
   a. This form becomes a part of the applicant's file as documentary evidence that regulatory physical requirements have been satisfied and that the applicant is physically competent to hold a credential.
   b. The information becomes part of the total credential file and is subject to review by Federal agency casualty investigators.
   c. This information may be used by the United States Coast Guard and an Administrative Law Judge in determining causation of marine casualties and appropriate suspension and revocation action.

4. Disclosure of this information is voluntary, but failure to provide this information will result in non-issuance of a credential.

An agency may not conduct or sponsor, and a person is not required to respond to a collection of information unless it displays a valid OMB control number. The United States Coast Guard estimates that the average burden for completing this form is XX minutes. You may submit any comments concerning the accuracy of this burden estimate or any suggestions for reducing the burden to the Commandant (G-CIM) United States Coast Guard. 2100 2nd Street SW. Washington, DC 20593-0001

**Deleted:** shipboard

**... [1]**

**Section I - Application Information**

| Dept. of Homeland Security<br>United States Coast Guard<br>CG-719K (Draft) | **Coast Guard Maritime Credential Medical Evaluation Report** | OMB-0000-0000<br><br>Page 3 |
|---|---|---|

| Last Name: | First Name: | Middle Name: | Suffix: |
|---|---|---|---|
| Age: | Date of Birth (MM/DD/YYYY): | Social Security Number: | |

**Comment [DAD6]:** What about an e-mail address for the applicant?

**Comment [DAD7]:** Can we legally ask for SSN on this form?

**Deleted:** applicant and reviewed by

### Section II(a) - Medications (must be completed by verifying medical practitioner)

Credential applicants who are required to complete a general medical exam are required to disclose **all** prescription medications prescribed and/or taken, and all non-prescription (over-the-counter) medications taken, including dietary supplements and vitamins taken, within 30 days prior to the date that the applicant signs the CG-719K or approved equivalent form, to the verifying medical practitioner who signs the CG-719K or approved equivalent form.

The verifying medical practitioner who signs the CG-719K or approved equivalent form must report all medications (prescription and non-prescription) and dietary supplements and vitamins with reasonable risk of potential side effects that might impact their ability to safely carry out their duties to the Coast Guard on the CG-719K or approved equivalent form.

Include dosages of every substance reported on this form, as well as the condition for which each substance is taken.

Additional sheets may be added by the applicant and/or qualified medical practitioner if needed to complete this section (include applicant name and DOB on each additional sheet).

If none, check "NONE."

☐ NONE

**Comment [DAD8]:** This language needs to be further, and carefully, reviewed by MERPAC & TSAC for a final recommendation, especially in light of the COSCO BUSAN pilot's current dealings w/ the US attorney.

According to Mr. McGovern, the pilot apparently failed to disclose two prescription medications, and the US attorney is seeking 10 years imprisonment (5 years for each ommission) for this offense.

We also need CG legal to look at the definition of "current" in this context - what does that mean?

**Deleted:** Applicants are required to report **all** active, daily or as-needed prescription medications, and all current non-prescription (over-the-counter) medications, including dietary supplements and vitamins, at the time the applicant signs this form.

**Formatted:** Highlight

**Formatted:** Highlight

**Formatted:** Highlight

**Deleted:** . The information reported by the applicant must be verified by the verifying medical practitioner, or by any other qualified medical practitioner to the satisfaction of the verifying medical practitioner. This includes assisting the applicant in reporting dosages and the condition(s) for which he/she takes each substance.

**Deleted:** Applicant must list all current medications (prescription and non-prescription) including dosage and the condition(s) for which the medication(s) are taken.

**Formatted:** Highlight

### Section II(b) - Certification of Medical Conditions (must be completed by applicant and reviewed by verifying medical practitioner)

Applicants must report their relevant medical conditions to the best of their knowledge, and the verifying medical practitioner must verify the medical conditions, using the table below. Check "yes" if the applicant has had a previous diagnosis or treatment of the condition by a healthcare provider, or if the applicant is currently under treatment or observation for the condition, or if the condition is present regardless of treatment.

If the verifying medical practitioner, or any other health care provider to the satisfaction of the verifying medical practitioner, discovers a condition not reported by the applicant, he/she must check "yes" in the appropriate block and explain in the remarks.

The verifying medical practitioner must address all reported relevant conditions in detail in Section VII. This detailed explanation should include, at a minimum, identification of the condition, approximate date of diagnosis, any limitations, whether the condition is controlled, the prognosis and any additional information as appropriate, referring to the evaluation data listed in enclosure (3) of NVIC XX-08 for each condition.

Additional sheets may be added by the applicant and/or verifying medical practitioner if needed to complete this section of the form.

**To the best of the applicant's knowledge, does the applicant have, or have ever suffered from, any of the following?**

| Dept. of Homeland Security United States Coast Guard CG-719K (Draft) | Coast Guard Maritime Credential Medical Evaluation Report | OMB-0000-0000 Page 4 |
|---|---|---|

If YES, the applicant must **PROVIDE THE TEST RESULTS AND/OR RECORDS AS INDICATED**, referring to the evaluation data listed in enclosure (3) of NVIC XX-08 for each condition. <u>Documentation of evaluation data specified in this table for all applicable medical conditions potentially requiring further review should be submitted with each application, unless otherwise specified by the NMC. Mariners, including first class pilots and those individuals "serving as" pilots (as well as Great Lakes pilots) who are required to submit annual physical examinations to the Coast Guard, may be issued a letter by the NMC specifying the extent of the evaluation data, if any, that should be submitted to the Coast Guard for any medical conditions that have been previously reported to, and evaluated by, the NMC.</u>

|  | YES | NO |  |
|---|---|---|---|
| 1. | ☐ | ☐ | Ear surgery, |
| 2. | ☐ | ☐ | Hearing loss, hearing aid |
| 3. | ☐ | ☐ | Impaired speech or stuttering |
| 4. | ☐ | ☐ | Deformities of face |
| 5. | ☐ | ☐ | Open tracheostomy |
| 6. | ☐ | ☐ | Poor vision |
| 7. | ☐ | ☐ | History of eye disease or injury |
| 8. | ☐ | ☐ | History of eye surgery |
| 9. | ☐ | ☐ | Abnormal color vision |
| 10. | ☐ | ☐ | Glaucoma |
| 11. | ☐ | ☐ | Asthma |
| 12. | ☐ | ☐ | Emphysema or COPD |
| 13. | ☐ | ☐ | Collapsed lung/pneumothorax |
| 14. | ☐ | ☐ | Irregular heart beat |
| 15. | ☐ | ☐ | Heart murmur or valve replacement |
| 16. | ☐ | ☐ | Chest pain or angina |
| 17. | ☐ | ☐ | Heart attack/ myocardial infarction |
| 18. | ☐ | ☐ | Congestive heart failure |
| 19. | ☐ | ☐ | Heart surgery/stent/angioplasty |
| 20. | ☐ | ☐ | Pacemaker or defibrillator |
| 21. | ☐ | ☐ | Any other heart condition |
| 22. | ☐ | ☐ | High blood pressure/hypertension |
| 23. | ☐ | ☐ | Aneurysm or blockages |
| 24. | ☐ | ☐ | Pulmonary embolus or blood clots |
| 25. | ☐ | ☐ | Gastrointestinal bleeding or ulcers |
| 26. | ☐ | ☐ | Crohn's disease or ulcerative colitis |
| 27. | ☐ | ☐ | Hepatitis or jaundice |
| 28. | ☐ | ☐ | Gallbladder problems or stones |
| 29. | ☐ | ☐ | Intestinal surgery |
| 30. | ☐ | ☐ | Any form of cancer |
| 31. | ☐ | ☐ | Anemia |
| 32. | ☐ | ☐ | Hemophilia or polycythemia |
| 33. | ☐ | ☐ | Any other blood disorders |
| 34. | ☐ | ☐ | Thyroid disease |
| 35. | ☐ | ☐ | Diabetes |
| 36. | ☐ | ☐ | HIV or AIDS |
| 37. | ☐ | ☐ | Lymphoma or leukemia |
| 38. | ☐ | ☐ | Tuberculosis |
| 39. | ☐ | ☐ | Neurofibromatosis |
| 40. | ☐ | ☐ | Skin tumors or cancer |
| 41. | ☐ | ☐ | Scleroderma |
| 42. | ☐ | ☐ | Lupus |
| 43. | ☐ | ☐ | Kidney transplant or dialysis |
| 44. | ☐ | ☐ | Kidney disease or cancer |
| 45. | ☐ | ☐ | Kidney stones |
| 46. | ☐ | ☐ | Protein/sugar/blood in urine |

|  | YES | NO |  |
|---|---|---|---|
| 47. | ☐ | ☐ | Back surgery or injury |
| 48. | ☐ | ☐ | Ruptured/herniated disc |
| 49. | ☐ | ☐ | Fractures requiring surgery |
| 50. | ☐ | ☐ | Limitation of any major joint |
| 51. | ☐ | ☐ | Bone or joint surgery |
| 52. | ☐ | ☐ | Dislocated joint |
| 53. | ☐ | ☐ | Recurrent neck or back pain |
| 54. | ☐ | ☐ | Swollen or painful joint |
| 55. | ☐ | ☐ | Arthritis or bursitis |
| 56. | ☐ | ☐ | Trick or locked knee |
| 57. | ☐ | ☐ | Amputation or prosthesis |
| 58. | ☐ | ☐ | Carpal tunnel |
| 59. | ☐ | ☐ | Difficulty walking or climbing |
| 60. | ☐ | ☐ | Sciatica or nerve pain |
| 61. | ☐ | ☐ | Other bone/joint disorder |
| 62. | ☐ | ☐ | Motion/sea sickness |
| 63. | ☐ | ☐ | Impaired balance, or balance disorder or difficulty |
| 64. | ☐ | ☐ | Vertigo or dizziness |
| 65. | ☐ | ☐ | Numbness or paralysis |
| 66. | ☐ | ☐ | Head injury or skull fracture |
| 67. | ☐ | ☐ | Seizures or epilepsy |
| 68. | ☐ | ☐ | Recurrent headaches |
| 69. | ☐ | ☐ | Narcolepsy |
| 70. | ☐ | ☐ | Sleep apnea |
| 71. | ☐ | ☐ | Restless leg |
| 72. | ☐ | ☐ | Fainting spells or loss of consciousness |
| 73. | ☐ | ☐ | Stroke or TIA |
| 74. | ☐ | ☐ | Brain tumor |
| 75. | ☐ | ☐ | Other brain or nerve disease |
| 76. | ☐ | ☐ | ADD, ADHD, or bipolar |
| 77. | ☐ | ☐ | Depression |
| 78. | ☐ | ☐ | History of suicide attempt |
| 79. | ☐ | ☐ | Schizophrenia |
| 80. | ☐ | ☐ | Anxiety |
| 81. | ☐ | ☐ | Alcohol or substance abuse |
| 82. | ☐ | ☐ | Loss of memory or amnesia |
| 83. | ☐ | ☐ | Other psychiatric disease or counseling |
| 84. | ☐ | ☐ | Sleepwalking |
| 85. | ☐ | ☐ | Bedwetting since age 12 |
| 86. | ☐ | ☐ | Sex change |
| 87. | ☐ | ☐ | Allergic reactions |
| 88. | ☐ | ☐ | Any other disease, surgery or hospitalization |

Comment [G9]: Can we legally ask this (see ADA)?

Should this be deleted b/c it would already be covered elsewhere?

08 April 08 – MERPAC recommends deleting this block.

Deleted: 88.

Deleted: Medical disability

Deleted: 9

| Dept. of Homeland Security United States Coast Guard CG-719K (Draft) | Coast Guard Maritime Credential Medical Evaluation Report | OMB-0000-0000 Page 5 |
|---|---|---|

The verifying medical practitioner shall make comments on all answers marked "yes" above for which no evaluation data has been submitted. If known to the VMP, the VMP may comment that a condition has been previously reported on a prior CG-719K, but only for those CG-719K's submitted after December 31, 2008, and only for those conditions which have not changed since the condition was previously reported on a prior CG-719K.

| 1. | Identify the Condition | 3. | Is Condition Controlled? | 5. | Prognosis |
|---|---|---|---|---|---|
| 2. | List Any Limitations | 4. | Approximate Date of Diagnosis | 6. | Additional Information |

Deleted: T
Deleted:
Deleted: 8 a
Deleted: nothing has
Deleted: .
Deleted: :

| Condition # | Comment |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

Comment [t10]: MERPAC recommends listing condition # and corresponding comment in this block.

Formatted Table

| Section III(a) – Visual Acuity | | | |
|---|---|---|---|
| This section must be completed by the verifying medical practitioner, or any other healthcare provider to the satisfaction of the verifying medical practitioner. Additional information must be reported in Section VII. If corrective lenses are required to meet the standard, both corrected and uncorrected vision must be tested. | | | |
| Distant Uncorrected | Distant Corrected To | Field of Vision | |
| Right:  20  / | Right:  20  / | This applicant must have a 100 degree horizontal field of vision. | ☐ Normal |
| Left:  20  / | Left:  20  / | | ☐ Abnormal |

| Section III(b) – Color Vision | |
|---|---|
| The following color sense testing methodologies are acceptable: | ☐ Titmus Vision Tester / OPTEC 2000 – (No errors on six plates) |
| ☐ AOC (1965) – (6 or fewer errors on plates 1-15) | ☐ Farnsworth Lantern (colored lights) Test per instruction booklet. |
| ☐ AOC-HRR (2nd Edition) – (No errors in test plates 7-11) | ☐ Optec 900 (colored lights) Test per instruction booklet. |
| ☐ Richmond (1983) – (6 or fewer errors) | ☐ An alternative test approved by the Coast Guard (indicate test) _____ |
| ☐ Ishihara pseudoisochromatic plates test, 14 plate (5 or less errors), 24 plate (6 or less errors) 38 plate (8 or less errors) | |
| The verifying medical practitioner must indicate test used and results (number of errors). Additional information must be reported in Section VII. Color sensing lenses (e.g. X-Chrome) are prohibited. | |

| Dept. of Homeland Security<br>United States Coast Guard<br>CG-719K (Draft) | **Coast Guard Maritime Credential Medical Evaluation Report** | OMB-0000-0000<br><br>Page 6 |
|---|---|---|

| Color Vision: | Normal Color Vision ☐ | Abnormal Color Vision ☐ |
|---|---|---|

### Section IV – Hearing

☐ Normal Hearing ☐ Abnormal Hearing ☐ Hearing Aid Required
☐ If abnormal hearing or hearing aid required, perform audiogram or functional speech discrimination test.

An applicant with normal hearing does not need to complete either the audiometer test or the functional speech discrimination test. The verifying medical practitioner, in consultation with any other healthcare provider he/she deems appropriate, determines whether the audiometer and/or functional speech discrimination test are necessary. If hearing is abnormal or hearing aid is required, refer to enclosure (5) of NVIC XX-08 for guidance.

If audiometric testing is required, the audiometer test should include testing at the following thresholds, 500Hz, 1,000Hz, 2,000Hz and 3,000 Hz. The frequency responses for each ear are averaged to determine the measure of an applicant's hearing ability. Applicant should demonstrate an unaided threshold of 30db or less in each ear.

Additional information must be reported in Section VII.

| Audiometer Threshold Value | 500Hz | 1,000Hz | 2,000Hz | 3,000Hz | | | |
|---|---|---|---|---|---|---|---|
| Right Ear (Unaided) | | | | | | | |
| Left Ear (Unaided) | | | | | | | |
| Right Ear (Aided) | | | | | | | |
| Left Ear (Aided) | | | | | | | |
| | | | | | | | |
| **Functional Speech Discrimination Test @ 55dB** | Right Ear (Unaided): | | % | Right Ear (Aided): | | % | |
| | Left Ear (Unaided): | | % | Left Ear (Aided): | | % | |

### Section V(a), - Physical Information

This section to be completed by the verifying medical practitioner, or other medical staff to the satisfaction of the verifying medical practitioner. Additional information must be reported in Section VII.

| Height (inches only): | Weight (lbs): | Body Mass Index (BMI): | Sex: | Male ☐<br>Female ☐ |
|---|---|---|---|---|
| Pulse Resting: | Initial Blood Pressure: | | Repeat Blood Pressure (if needed): | |

### Section V(b) – Physical Exam (must be completed by verifying medical practitioner)

| # | Normal | Abnormal | System / Organ | # | Normal | Abnormal | System / Organ |
|---|---|---|---|---|---|---|---|
| 1. | | | Head, Face, Neck, Scalp | 10. | | | Skin |
| 2. | | | Eyes / Pupils / EOM | 11. | | | Lymphatics |
| 3. | | | Mouth And Throat | 12. | | | Neurologic |
| 4. | | | Ears / Drums | 13. | | | Vascular System |
| 5. | | | Lungs And Chest | 14. | | | Genital-Urinary System |
| 6. | | | Heart | 15. | | | Hernia |

| Dept. of Homeland Security United States Coast Guard CG-719K (Draft) | Coast Guard Maritime Credential Medical Evaluation Report | OMB-0000-0000 Page 7 |
|---|---|---|

| 7. | | | Abdomen | 16. | | | Missing extremities / Digits |
|---|---|---|---|---|---|---|---|
| 8. | | | Upper / Lower Extremities | 17. | | | General / Systemic |
| 9. | | | Spine / Musculoskeletal | | | | |

Please make numbered comments on positive answers above:

_____

_____

_____

_____

_____

_____

_____

_____

_____

| Section VI - Demonstration of Physical Ability (to be completed by the verifying medical practitioner) |
|---|

► If the applicant has a Body Mass Index (BMI) of 40.0 or higher, or if the verifying medical practitioner doubts the applicant's ability to successfully perform any of the following functions, a suitable practical demonstration is required for those functions. The verifying medical practitioner, in consultation with any other qualified practitioners he/she deems appropriate, determines whether a practical demonstration is necessary, and whether the applicant is physically competent or not physically competent.

► All practical demonstrations, if required, should be performed by the applicant without assistance. Any prosthesis normally worn by the applicant, and other aid devices, may be used by the applicant in all practical demonstrations except when the use of such items would prevent the proper wearing of mandated personal protection equipment (PPE).

► If the verifying medical practitioner is unable to conduct the practical demonstration, the applicant should be referred to a competent evaluator of physical ability. The Coast Guard recgognizes that all medical practitioners may not have the equipment necessary to test all of the tasks as listed. Equivalent alternate testing methodologies may be used. For further information, see enclosure (2) of NVIC XX-08.

► If the applicant is unable to perform any of the following functions, the examining practitioner should provide information on the degree or the severity of the applicant's inability to meet the standards. The results of any practical demonstration or attendant physical evaluation should be recorded in the Section VII.

List of tasks considered necessary for performing ordinary and emergency response shipboard functions:

1. Is able to maintain a sense of balance without disturbance while walking and standing
2. Is able to climb up and down vertical ladders and stairways
3. Is able to step over a door sill or coaming up to 24 inches in height
4. Is able to move through a restricted opening of 24 inches by 24 inches
5. Is able to open and close watertight doors that weigh up to 55 pounds. Must be able to move hands/arms in vertical and horizontal directions, rotate wrists and reach above shoulder height to turn handles
6. Is able to lift at least a 40 pound load off the ground, and to carry, push, or pull the same load
7. Is able to grasp and manipulate common tools such as wrenches, hammers, screwdrivers and pliers
8. Is able to crouch, kneel and crawl

**Comment [DAD11]:** WG recommends having separate instruction pages (i.e. the list of physical abilities) that are detachable from the form itself, so that fewer pages need to be turned into the CG.

| Dept. of Homeland Security<br>United States Coast Guard<br>CG-719K (Draft) | **Coast Guard Maritime Credential Medical Evaluation Report** | OMB-0000-0000<br><br>Page 8 |
|---|---|---|

9.   Is able to distinguish differences in texture and temperature by feel
10.  Is able to intermittently stand on feet for up to four hours with minimal rest periods
11.  Is able to react to visual alarms and instructions
12.  Is able to react to audible alarms and instructions
13.  Is capable of normal conversation
14.  Is able to pull an uncharged 1.5-inch diameter, 50' fire hose with nozzle to full extension , and to lift a charged 1.5-inch diameter fire hose to firefighting position
15.  Is physically able to put on a Personal Flotation Device (PFD) without assistance from another individual
16.  Has no physical limitations that would hinder or prevent the performance of duties

| **Section VII(a) – Verifying Medical Practitioner Recommendation** | | |
|---|---|---|
| **Competent**<br><br>☐ | **Not Competent (explain in comments)**<br><br>☐ | **Needing Further Review (explain in comments)**<br><br>☐ |
| **Comments:** | | |

> **Comment [DAD12]:** Both MERPAC & TSAC want to review this block further at their respective Spring 2008 meetings.

| **Section VII(b)- Certification (to be signed by verifying medical practitioner)** |
|---|
| I hereby certify that the general medical history, physical examination and vision test, as well as the hearing and physical demonstration of competence as appropriate, have been performed, witnessed or reviewed to my satisfaction.<br>To the extent that there are any physical or medical conditions that may preclude the applicant from performing his/her duties, all relevant information has been reported on this form (and any attached sheets) to the best of my knowledge.<br>My signature below attests, subject to criminal prosecution under 18 USC 1001, that all information reported by me is true and correct to the best of my knowledge, and that I have not knowingly omitted to report any material information relevant to the form. |

| Signature: | Date: | National Provider Identifier: |
|---|---|---|
| Name: | Phone: | Fax: |
| Street: | City: | State: |
| Zip: | Email: | |

> **Comment [DAD13]:** Leave room for a stamp b/c most doctors stamp this information now.

| **Section VIII - Applicant Certification (to be signed by applicant)** | | |
|---|---|---|
| My signature below attests, subject to prosecution under 18 USC 1001, that all information that I have reported is true and correct to the best of my knowledge, and that I have not knowingly omitted to report any material information relevant to this form. | | |
| Name (Printed): | Signature: | Date: |

> **Comment [t14]:** 08 April 08 – MERPAC recommends adding a block for the mariner to tell the CG how he/she wants to be contacted (consistent w/ HIPPA requirements), e.g. e-mail, letter, fax, phone or any combination. If release is executed, mariner can direct NMC to contact doctor directly.

| **Section IX - Release (to be signed by applicant and verifying medical practitioner)** |
|---|
| I hereby authorize the verifying medical practitioner provider, who has signed the certification on page X of this form, to release to, or discuss with authorized Coast Guard personnel, any pertinent information in |

| Dept. of Homeland Security United States Coast Guard CG-719K (Draft) | **Coast Guard Maritime Credential Medical Evaluation Report** | OMB-0000-0000 Page 9 |
|---|---|---|

his/her possession regarding any physical or medical condition that may require review by the Coast Guard prior to determining whether the Coast Guard should issue a credential(s) for maritime service. I understand that this authorization is voluntary. I also understand that failure to provide authorization could affect the Coast Guard's ability to make a timely determination as to whether the Coast Guard should issue me a credential(s) for maritime service. This authorization will remain in effect until the Coast Guard determines whether to issue me the requested credential(s) for maritime service, but no longer than one year.

I have read and understand the following statement about my rights:

- I may revoke this authorization at any time prior to its expiration date by notifying the verifying medical practitioner in writing, but the revocation will not have any effect on any actions taken before they received the notification.
- Upon request, I may see or copy the information described in this release.
- I am not required to sign this release to receive my medical evaluation.

**Applicant:**

| Name (Printed): | Signature: | Date: |
|---|---|---|

**Verifying Medical Practitioner:**

| Name (Printed): | Signature: | Date: |
|---|---|---|

**Comment [DAD15]:** WG recommends that CG compare this text w/ the Kirby release provided by Roy Murphy (which has been vetted by Kirby legal). WG primary concern is that they want the mariner's doctor to be able to speak directly w/ CG.

**Comment [DAD16]:** Legal needs to review this. Is it the VMP, or just a witness, or do we need it at all?