Jeffrey L. Bornstein (State Bar No. 99358)
Luke G. Anderson (State Bar No. 210699)
K&L Gates LLP
55 Second Street, 17th Floor
San Francisco, CA 94105
Telephone: (415) 882-8200
Facsimile:  (415) 882-8220

Barry M. Hartman, *Admitted Pro Hac Vice* (DC Bar No. 291617)
Christopher R. Tate, *Admitted Pro Hac Vice* (PA Bar No. 205510)
K&L Gates LLP
1601 K Street, N.W.
Washington, D.C. 20006
Telephone:  (202) 778-9000
Facsimile:   (202) 778-9100

Attorneys for Defendant
JOHN J. COTA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>  v.<br><br>JOHN J. COTA,<br><br>                Defendant. | Case No.  CR 08-0160 SI<br><br>**DEFENDANT JOHN J. COTA'S REPLY TO OPPOSITION TO MOTION TO DISMISS CLEAN WATER ACT COUNT** |

1

**DEFENDANT JOHN J. COTA'S REPLY TO OPPOSITION TO MOTION TO DISMISS CLEAN WATER ACT COUNT—CR 08-0160 SI**

**Table of Contents**

**Page**

I. INTRODUCTION ................................................................................................................ 2

II. ARGUMENT ....................................................................................................................... 4

    A. The Government's Opposition Is Improperly Premised On Unsupported Factual Assertions Not Present Or Even Remotely Asserted In The Indictment ................................................................................................................... 4

    B. The Government Misapplies The Notice Requirement As It Relates To The Public Welfare Doctrine ............................................................................................... 5

    C. The Proposed Penalties Are Too Severe To Warrant Elimination Of *Mens Rea* ................................................................................................................................. 7

    D. The Government Misinterprets *Safeco Ins. Co. v. Burr* ....................................... 8

    E. The Government's Argument Regarding The Parameters Of Ordinary Negligence Demonstrates The Need To Apply The Rule Of Lenity In This Context ........................................................................................................................... 9

III. CONCLUSION ................................................................................................................. 11

i

**DEFENDANT JOHN J. COTA'S REPLY TO OPPOSITION TO MOTION TO DISMISS CLEAN WATER ACT COUNT—CR 08-0160 SI**

# TABLE OF AUTHORITIES

## CASES

Ex parte Collett, 337 U.S. 55 (1949) ........................................................................................ 9

Complaint of Nautilus Motor Tanker Co., Ltd., 85 F.3d 105 (3d Cir. 1996) .......................... 10

Consumer Prod. Safety Comm. v. GTE Sylvania, Inc., 447 U.S. 102 (1980) .......................... 9

Knight v. C.I.R., 128 S. Ct. 782 (2008) ..................................................................................... 9

Li v. Yellow Cab Co., 532 P.2d 1226 (Cal. 1975) ................................................................... 10

Liparota v. United States, 471 U.S. 419 (1985) ........................................................................ 6

Lumber Jack Bldg. Centers v. Alexander, 536 F. Supp. 2d 804 (E.D. Mich. 2008) ................. 8

Palzgraf v. Long Island R.R., 162 N.E. 99 (N.Y. 1928) ......................................................... 10

Russello v. United States, 464 U.S. 16 (1962) .......................................................................... 8

Safeco Ins. Co. of Am. v. Burr, 127 S. Ct. 2201 (2007) .................................................... passim

Staples v. United States, 511 U.S. 600 (1994) .................................................................. passim

United States v. Atlantic States Cast Iron Pipe Co., 2007 WL 2282514 (D.N.J. 2007) ........... 9

United States v. Awadallah, 349 F.3d 42 (2d Cir. 2003) .......................................................... 9

United States v. Freed, 401 U.S. 601 (1971) ............................................................................ 5

United States v. Hanousek, 176 F.3d 1116 (9th Cir. 1999) ................................................... 3, 9

United States v. Int'l Minerals & Chemicals Corp., 402 U.S. 558 (1971) ................................ 5

United States v. Jensen, 93 F.3d 667 (9th Cir. 2002) ................................................................ 4

United States v. Marra, 481 F.2d 1196 (6th Cir. 1973) ............................................................ 4

United States v. Rivera, No. 95-CR-00084 (Docket #240) (D.P.R. filed Sept. 25, 1996) ........ 7

United States v. Santos, 128 S. Ct. 2020 (2008) ..................................................................... 11

United States v. Weitzenhoff, 35 F.3d 1275 (9th Cir. 1993) ..................................................... 5

## FEDERAL STATUTES

33 U.S.C. § 1319(c)(1)(A) .................................................................................................. passim

18 U.S.C. § 3571(d) .................................................................................................................. 7

**DEFENDANT JOHN J. COTA'S REPLY TO OPPOSITION TO MOTION TO DISMISS CLEAN WATER ACT COUNT—CR 08-0160 SI**

**STATE STATUTES**

Cal. Code Regs., tit. 7, § 214 (2008) ............................................................................................... 7

Cal. Veh. Code §§ 2450-2454 ......................................................................................................... 7

Cal. Veh. Code § 12804.9(a)(1)(A) ................................................................................................. 7

**MISCELLANEOUS**

American Law Institute, Model Penal Code § 2.01(1) .................................................................. 6

Defendant John J. Cota ("Captain Cota"), by and through his undersigned counsel, hereby files this reply to the United States' Opposition ("Opposition") to Defendant's Motion to Dismiss Clean Water Act Count ("Motion").

## I. **INTRODUCTION.**

As a threshold matter, the Opposition is improperly premised on unsupported and incorrect factual assertions that are nowhere to be found in the Indictment, and under controlling law must be disregarded at this stage.

The government does not dispute that the Due Process Clause only permits the imposition of criminal liability without criminal intent if there is clear evidence that (a) Congress has enacted a "public welfare" statute directed at the specific object of the business or transaction that is the basis for the criminal charge; (b) the scope and extent of the sanctions imposed in the absence of criminal intent are not unreasonably severe; and (c) Congress has expressly indicated that no criminal intent is necessary. Motion (Docket #46) at 3. In its response to the Motion, the government not only misconstrues or fails to address each of Captain Cota's arguments, but also fundamentally misapprehends the nature of the public welfare doctrine, as well as Supreme Court and Ninth Circuit precedent.

First, the government argues that Captain Cota's presumed knowledge that vessels are heavily regulated, combined with the unsupported assertion that all vessels are inherently dangerous devices, creates the kind of responsible relationship to the vessel's fuel tank that justifies eliminating the intent requirement in the criminal negligence provision of the Clean Water Act, 33 U.S.C. § 1319 (c)(1)(A). This argument ignores an essential plank of the public welfare doctrine: that "regulation in itself is not sufficient" to constitute constructive notice for purposes of the public welfare doctrine. *Staples v. United States*, 511 U.S. 600, 613 (1994). Moreover, no court has held that vessels are inherently dangerous devices. The government fails to address the fact that in virtually every public welfare doctrine case, the notice requirement was premised on the fact that the conduct at issue was itself the direct subject of the regulation, not a

2

**DEFENDANT JOHN J. COTA'S REPLY TO OPPOSITION TO MOTION TO DISMISS CLEAN WATER ACT COUNT—CR 08-0160 SI**

collateral and unintended consequence of conduct not regulated by the public welfare legislation or a generalized belief that the defendant had some knowledge of regulations.

Second, the government now argues that eliminating scienter is constitutionally permissible because the penalties for a misdemeanor conviction of the Clean Water Act are "only" $25,000 per day of violation (Opposition at 8), yet in the penalty sheet filed with the Indictment, it asserted the fines could reach $100,000, and in the past has sought multimillion dollar sanctions under the Alternative Fines Act for violations of 33 U.S.C. § 1319(c)(1)(A).

Third, the government incorrectly argues that the premise for the Ninth Circuit's decision in *United States v. Hanousek*, 176 F.3d 1116 (9th Cir. 1999), that Congress clearly and plainly stated its intent that negligence meant ordinary negligence, was not overruled in *Safeco Ins. Co. v. Burr*, 127 S. Ct. 2201 (2007). *Safeco* unquestionably held that as a matter of statutory construction, determining Congress' intent regarding the meaning of a term specified in a criminal statute may not be determined by comparing that term to the same term used in a civil statute. That is exactly what the *Hanousek* court did to justify concluding that negligence as used in section 1319(c)(1)(A) means simple negligence. The distinction suggested by the government – that a different term was at issue in *Safeco* ("willful," used in civil and criminal statutes, rather than "negligent") - does not change the rule of statutory construction set forth by the Supreme Court.

Fourth, even assuming that an ordinary negligence standard is appropriate, the government argues that allowing the use of defenses in criminal negligence cases that are universally recognized in civil negligence cases would be "absurd and potentially adverse…for this defendant" because under admiralty law there is a presumption of negligence under certain circumstances, while under criminal law there is a presumption of innocence. Presumptions are not rules of negligence, they are evidentiary rules. Principles of ordinary negligence necessarily include certain defenses and to eliminate them would effectively turn this ordinary negligence standard into a strict liability offense – something that the plain language of the statute unquestionably precludes. For all these reasons, the Motion should be granted.

3

**DEFENDANT JOHN J. COTA'S REPLY TO OPPOSITION TO MOTION TO DISMISS CLEAN WATER ACT COUNT—CR 08-0160 SI**

**II.   ARGUMENT.**

   **A.   The Government's Opposition Is Improperly Premised On Unsupported Factual Assertions Not Present Or Even Remotely Asserted In The Indictment.**

In examining an indictment on a pre-trial motion to dismiss, the trial court "must presume the truth of the allegations *in the charging instruments*." *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 2002) (emphasis added). "'A motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence . . . . The Court should not consider evidence not appearing on the face of the indictment.'" *Id.* (quoting *United States v. Marra*, 481 F.2d 1196, 1199-1200 (6th Cir. 1973)).

The government's entire argument is premised on assertions of facts that are nowhere to be found in the Indictment, and that are completely unsupported. For example, the Opposition asserts, with no support, that the use of a laptop is common practice for pilots. Opposition at 6. It incorrectly describes the buoys on either side of the Delta Tower as markers indicating that ships should only pass on the right. Opposition at 4-5. It alleges that the COSCO BUSAN was at "full ahead" speed when the allision occurred. Opposition at 13. It refers to duties allegedly imposed on Captain Cota in documents such as Seafarer's Training, Certification and Watchkeeping Code, ("STCW"), which among other things, impose no such duties on pilots at all. Opposition at 14 (citing STCW, available at http://www.uscg.mil/NMC/stew_code_intro.asp, last visited July 10, 2008). It alleges that Captain Cota piloted other vessels that carried hazardous cargo. Opposition at 13. It even alleges hypothetical facts that have nothing to do with this case, such as alleging that if Captain Cota was piloting a vessel containing hazardous cargo – which he was not – or had the vessel allided with the Bay Bridge head-on – which it did not – it could have exploded. Opposition at 13.[1]

---

[1] It should be noted that the government has not provided any discovery regarding the vast majority of these assertions. Further, to the extent that the government has provided discovery regarding these matters, that discovery has shown at least some of its assertions to be untrue. For example, the government asserts in its Opposition that the COSCO BUSAN was bound for China, when in fact it was bound for Korea. Opposition at 2. It also alleges that the ship allided with the Delta Tower itself, when in fact the vessel only allied with the fendering system around the tower. Opposition at 7. Captain Cota disputes each and every factual allegation made by the government in its Opposition, and waives no right to challenge these allegations at trial.

4

**DEFENDANT JOHN J. COTA'S REPLY TO OPPOSITION TO MOTION TO DISMISS CLEAN WATER ACT COUNT—CR 08-0160 SI**

None of these facts are even remotely asserted or mentioned in the Information or the Superseding Indictment, and none may be considered in the context of this Motion.

**B.    The Government Misapplies The Notice Requirement As It Relates To The Public Welfare Doctrine.**

The public welfare doctrine permits elimination of the scienter requirement based on the premise that a defendant's *direct, contemporaneous and obvious* handling of traditionally noxious substances or dangerous devices that are at the heart of the business conduct being regulated, and this special relationship puts him on notice that he is subject to heightened obligations. For example, the defendant in *United States v. Freed*, 401 U.S. 601 (1971) was not found guilty of possessing illegal hand grenades because he was an explosives expert; he was found guilty because of the nature of the grenades he knew he possessed. The defendant in *United States v. Int'l Minerals & Chemicals Corp.*, 402 U.S. 558 (1971) was not subject to a relaxed standard of intent because he was an expert chemist, but because of the inherently dangerous nature of the acid he was transporting. The defendant in *Weitzenhoff* was held to a higher standard because he was in the business of operating a wastewater treatment plant designed to discharge pollutants, and had a specific understanding of the permitting system, and its direct relation to his conduct. *United States v. Weitzenhoff*, 35 F.3d 1275, 1289 (9th Cir. 1993).[2] In contrast, the government is not asserting that Captain Cota was in the business of handling a deleterious device – he was a pilot of a vessel. The government asserts in a single phrase that vessels are traditionally dangerous devices akin to grenades, a proposition that has

---

[2] The fact that the Ninth Circuit rejected a request for rehearing *en banc* following the *Staples* decision (Opposition at 9) is irrelevant. *Staples* held that a certain kind of gun is not an inherently dangerous device, given the tradition of legitimate gun possession in this country, for purposes of the public welfare doctrine. *Weitzenhoff* held that a pollutant is inherently dangerous when handled by someone in the wastewater treatment and discharge business. Captain Cota was in the business of assisting the crew of vessels (which also have a tradition of legitimate use in this country) in traversing the Bay. It is worth noting that, apparently, the crew he was assisting falsified the many documents that the government now says Captain Cota was negligent in failing to rely on. *Compare* Indictment, ¶ 18 ("failing to adequately review with Captain and crew the official navigational charts of the proposed course…") *with* Motion to Vacate or Continue Depositions (Docket # 65) at 2-3.

5

**DEFENDANT JOHN J. COTA'S REPLY TO OPPOSITION TO MOTION TO DISMISS CLEAN WATER ACT COUNT—CR 08-0160 SI**

understandably never been accepted by a court, and that is fundamentally at odds with the Supreme Court's holding in *Staples v. United States*. He had no more special relationship with the fuel tank on the vessel than he did with the fuel used to power the oven in the vessel's galley.[3]

Rather than address this fundamental flaw in its argument, the government argues that Count Three of the Indictment permissibly eliminates traditional scienter[4] because extant state and federal regulations give Captain Cota some generalized expertise and training that includes knowledge of environmental regulations and the potential that oil could leak from the vessel in the event of an accident. Opposition at 13-14.[5] This contention is inconsistent with the public welfare doctrine because "regulation in itself is not sufficient" to lower the standard of intent. *Staples*, 511 U.S. at 613.[6] Many items and substances are subject to extensive regulation; this does not automatically remove the *mens rea* requirement for any crime related to these items and substances. *See, e.g., Liparota v. United States*, 471 U.S. 419 (1985) (requiring *mens rea* for offense of misuse of food stamps); *see also Staples*, 511 U.S. at 614 ("[i]f we were to accept as a

---

[3] The government also makes the curious observation that the Clean Water Act Count of the Superseding Indictment satisfies the public welfare doctrine because it complies with precedent defining sufficient notice for vagueness purposes. Opposition at 15. Captain Cota did not contend the Clean Water Act is void for vagueness, and the standard for "fair notice" provided by a statute itself for vagueness purposes is irrelevant to, and entirely different from, the notice required to lower the standard of intent under the public welfare doctrine.

[4] The government argues incorrectly that applying an ordinary negligence standard would not be tantamount to eliminating *mens rea*, because negligent acts are "volitional, conscious decisions." Opposition at 18. The government confuses *mens rea* (a culpable mind) for *actus reus* (a voluntary act). *Cf.* American Law Institute, Model Penal Code § 2.01(1) ("A person is not guilty of an offense unless his liability is based on conduct that includes a voluntary act…"); *Id.* § 2.02 ("a person is not guilty of an offense unless he acted purposely, knowingly, recklessly or negligently…[negligence] involves a *gross* deviation from the standard of care…") (emphasis added). Thus, the criminal law requires that the voluntary act be accompanied by a culpable state of mind. Once the culpable mind is eliminated, *mens rea* is eliminated, and that is exactly what the government advocates.

[5] As noted above, these allegations are in substantial dispute. For example, the government has provided no support for its assertion that Captain Cota is trained or tested on Clean Water Act requirements by the Coast Guard. Opposition at 14.

[6] The government's argument is also illogical because it rests on circular reasoning: it presumes Captain Cota knows he is handling a heavily regulated device or substance because it is heavily regulated.

6

**DEFENDANT JOHN J. COTA'S REPLY TO OPPOSITION TO MOTION TO DISMISS CLEAN WATER ACT COUNT—CR 08-0160 SI**

general rule the Government's suggestion that dangerous and regulated items place their owners under an obligation to inquire at their peril into compliance with regulations, we would undoubtedly reach some untoward results.").

The government also argues that Captain Cota's status as a licensed pilot required that he be aware of the laws and regulations governing his industry. Opposition at 13 (citing Cal. Code Regs., tit. 7, § 214 (2008), requiring pilots to demonstrate "familiarity with all relevant international, national, state, and local laws and regulations"). The presence or general awareness of these regulations here does not render otherwise "normal industrial activities" inherently dangerous or deleterious. *Staples* rejects the proposition that knowledge that a device or substance is pervasively regulated can be the basis for concluding that a person has the kind of responsible relationship to a dangerous device that warrants eliminating the *mens rea* requirement.[7]

### C. The Proposed Penalties Are Too Severe To Warrant Elimination Of *Mens Rea*.

The government admits that the penalties that could result from a conviction under Count Three are "not insignificant," but it nevertheless opposes the Motion on the ground that other misdemeanor penalties have been upheld by other courts. Opposition at 17. In so doing, the government says that the fine in this case is up to $25,000, but ignores its own assertion in the penalty sheet filed with the original Information that it was seeking up to $100,000 in fines, and its position taken in other cases that there can be potential for multimillion dollar fines under the Alternative Fines Act. 18 U.S.C. § 3571(d); Motion at 3 n.1 (citing *United States v. Exxon*

---

[7] In fact, similar prerequisites exist in state law for the issuance of various forms of licenses used in everyday life, and none create such a presumption. For example, Cal. Veh. Code § 12804.9(a)(1)(A) requires all applicants for driver's licenses to demonstrate "knowledge and understanding of the provisions of this code governing the operation of vehicles upon the highways." Another section of the Vehicle Code regulates the abatement of spills of "hazardous materials" on the highway. Cal. Veh. Code §§ 2450-2454. The government would not seriously contend that any person who rides in a car and has a driver's license has a responsible relationship to the gasoline in the car because the Vehicle Code regulates the abatement of spills of hazardous materials. The same can be said of the requirements for a pilot's license: a general familiarity with the "rules of the road" does not equate to the sort of notice required by the public welfare doctrine.

7

**DEFENDANT JOHN J. COTA'S REPLY TO OPPOSITION TO MOTION TO DISMISS CLEAN WATER ACT COUNT—CR 08-0160 SI**

*Corp.*, No. A90-015 CR (D. Ak., filed April 16, 1991) (Gov't Sentencing Memo at 16)).  The government does not address how an offense with unlimited financial consequences could be considered a "relatively small" penalty, or without "grave damage" to a defendant's reputation.

### D. The Government Misinterprets *Safeco Ins. Co. v. Burr*.

In *Safeco Ins. Co. of Am. v. Burr*, 127 S. Ct. 2201 (2007), the Supreme Court held that a court may not use the rule of statutory construction, *in pari materia*, to justify inferring something about Congress' intent regarding the meaning of a word used in a criminal statute based upon the use of an identical word in a civil statute.  Specifically, the Court examined the use of the word "willfully" under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* (2006) ("FCRA") and determined that since historically the term has meant different things in civil and criminal law, it would be wrong to use the criminal definition to construe the civil definition.  The government, however, incorrectly characterizes the holding of *Safeco* as limited only to the term "willfully" under FCRA.[8]  In fact, *Safeco* held that a reviewing court cannot conclude that the use of a particular term in a civil statute forms the basis for constructing that same term as used in a criminal statute, because of the vast difference in drafting conventions between civil and criminal law.

Furthermore, *Safeco* does not serve to overrule the doctrine of *in pari materia,* as the government suggests we said.  Opposition at 21.  Rather, it clarifies the proper application of this rule of statutory construction to determine Congressional intent from otherwise unclear terms.  It may well be appropriate, for example, to use this doctrine to interpret two identical terms in different but parallel sections of a criminal statute to determine Congressional intent.  For example, *Safeco* did not overrule *Russello v. United States*, 464 U.S. 16, 23 (1962), and other cases comparing one criminal statute to another.  *Id.* (examining the meaning of "interest" in

---

[8]  In *Lumber Jack Bldg. Centers v. Alexander*, 536 F. Supp. 2d 804, 808 (E.D. Mich. 2008), cited by the government, the court refused only to substitute the same definition of "willfully" under FCRA used in *Safeco* for the definition of the same term under a completely unrelated statute, the Gun Control Act.  The court never questioned *Safeco*'s rationale that it is inappropriate to use terms within criminal statutes to infer meaning in parallel civil statutes.

8

**DEFENDANT JOHN J. COTA'S REPLY TO OPPOSITION TO MOTION TO DISMISS CLEAN WATER ACT COUNT—CR 08-0160 SI**

§ 1963(a)(2) of the Racketeer Influenced and Corrupt Organization ("RICO") statute to determine the meaning of "interest" in § 1963(a)(1); both subsections were within the criminal penalties section). By contrast, in *Safeco*, the Court was addressing the use of identical terms in civil and criminal provisions.

*Safeco* does, therefore, call into question the rationale behind the Ninth Circuit's ruling in *Hanousek*,[9] where the court attempted to define the term negligence in a criminal statute on the basis of the use of the same term in a civil statute. *See United States v. Atlantic States Cast Iron Pipe Co.*, 2007 WL 2282514 at *14 n.17 (D.N.J. 2007) ("We believe there is good reason to scrutinize carefully that aspect of *Hanousek*, rather than accepting it as controlling."). Following *Safeco*, therefore, the analytical framework used by the *Hanousek* court to conclude that Congress intended ordinary negligence to apply in 33 U.S.C. § 1319(c)(1)(A) is no longer valid and it is appropriate to reconsider anew the meaning of negligence in that provision.[10]

### E. The Government's Argument Regarding The Parameters Of Ordinary Negligence Demonstrates The Need To Apply The Rule Of Lenity In This Context.

---

[9] The government refers to the *Hanousek* court as concluding that the "plain meaning" of the negligence provision of the CWA is simple negligence. But the plain meaning of a statute is by definition determined by the terms of that statute. Use of other principles of statutory construction such as reference to other sections of the law, other statutes, and legislative history is only appropriate where the terms at issue are not plain on their face. *See, e.g., Knight v. C.I.R.*, 128 S.Ct. 782, 787 (2008) ("We start, as always, with the language of the statute") (citations omitted); *Ex parte Collett*, 337 U.S. 55, 61 (1949) ("there is no need to refer to the legislative history where the statutory language is clear"); *United States v. Awadallah*, 349 F.3d 42, 51 (2d Cir. 2003) ("When the language of the statute is clear, its plain meaning ordinarily controls its construction. However, where statutory language is ambiguous a court may resort to the canons of statutory interpretation and to the statute's legislative history to resolve the ambiguity.") (citations omitted). If the government believes the term "negligently," which is neither preceded by "ordinary" or "gross," plainly means ordinary, then there is no reason to refer to the legislative history. Moreover, even if reference to legislative history is appropriate, the government's reliance on the statement by a single legislator dating back to 1972 is not. *Consumer Prod. Safety Comm. v. GTE Sylvania, Inc.*, 447 U.S. 102, 118 (1980) ("even the contemporaneous remarks of a single legislator who sponsors a bill are not controlling in analyzing legislative history").

[10] The government's argument that Congress intended to criminalize negligence (Opposition at 19-21) is beside the point. We do not dispute that Congress has created a criminal negligence provision. The issue here relates to what kind of negligence is required both by the statute and by the Due Process Clause's limitation on the suspension or relaxation of a *mens rea* requirement.

9

**DEFENDANT JOHN J. COTA'S REPLY TO OPPOSITION TO MOTION TO DISMISS CLEAN WATER ACT COUNT—CR 08-0160 SI**

The government argues that not only should the Court use an "ordinary negligence" standard in this criminal case, it should not permit the use of well-accepted defenses to ordinary negligence because it would result in "absurd and potentially adverse" consequences. The government states, without support, that the adoption of traditional admiralty and common law defenses to "ordinary negligence" must necessarily be accompanied by the adoption of certain evidentiary doctrines, such as the *Pennsylvania* Rule, which shifts the burden of going forward to the defendant where the plaintiff has provided evidence that defendant violated a statute or ordinance. This is an absurd contention. To begin with, because this is a criminal case, the rules of evidence must necessarily account for Captain Cota's rights under the Fifth and Sixth Amendments, including the presumption of innocence, which render such evidentiary presumptions inappropriate. In addition, eliminating these defenses would be tantamount to interpreting the Clear Water Act to require strict liability.

Moreover, burden-shifting provisions of law, such as the *Pennsylvania* and *Oregon* Rules, are rules of evidence that determine the showing a party must make before moving forward. *See, e.g., Complaint of Nautilus Motor Tanker Co., Ltd.*, 85 F.3d 105, 114 (3d Cir. 1996) (explaining that defendant can rebut the presumption of the *Pennsylvania* Rule by making a showing, *inter alia*, that the accident would have occurred despite the violation). As simple evidentiary conveniences, they have nothing to do with the principles of negligence. By contrast, comparative fault rules and other doctrines of tort law incorporate and apply the elements of negligence itself, and as such are an integral part of the definition of the term. *See, e.g., Li v. Yellow Cab Co.*, 532 P.2d 1226, 1231 (Cal. 1975) ("in a system in which liability is based on fault, the extent of fault should govern the extent of liability").

Nevertheless, the government's argument does raise serious ambiguities regarding exactly how "ordinary negligence" principles will apply in this case. Does the use of this standard require only the five basic elements of negligence as defined in *Palzgraf v. Long Island R.R.*, 162 N.E. 99 (N.Y. 1928), for liability, or are there defenses available? Are those defenses criminal, maritime, or civil in nature, or a combination thereof? At a minimum, this Court

10

**DEFENDANT JOHN J. COTA'S REPLY TO OPPOSITION TO MOTION TO DISMISS CLEAN WATER ACT COUNT—CR 08-0160 SI**

should apply the rule of lenity and use the definition of "negligently" that is most favorable to Captain Cota. *See, e.g., United States v. Santos,* 128 S. Ct. 2020, 2025 (2008) ("Under a long line of our decisions, the tie must go to the defendant. The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them."). Captain Cota respectfully submits that such a definition would require that the government prove gross negligence. If, however, this Court finds that only an "ordinary negligence" standard is reasonable, the rule of lenity requires that "ordinary negligence" include all defenses available in such an action at admiralty and/or common law.

## III. CONCLUSION.

For the reasons set forth above, Count Three of the Superseding Indictment should be dismissed.

Respectfully submitted,

K&L GATES LLP

Dated:  July 11, 2008                    By:   /s/ Jeffrey L. Bornstein
                                                Jeffrey L. Bornstein, Esq.
                                                Luke G. Anderson, Esq.
                                                Barry M. Hartman, Esq., *Admitted Pro Hac Vice*
                                                Christopher R. Tate, Esq., *Admitted Pro Hac Vice*

                                                Attorneys for Defendant
                                                JOHN J. COTA

11

**DEFENDANT JOHN J. COTA'S REPLY TO OPPOSITION TO MOTION TO DISMISS CLEAN WATER ACT COUNT—CR 08-0160 SI**

**PROOF OF SERVICE**

I am employed in the County of San Francisco, State of California by a member of the Bar of this Court, at whose direction this service was made. I am over the age of 18 and not a party to the within action. My business address is 55 Second Street, Suite 1700, San Francisco, CA 94105. On July 11, 2008, I served the document(s) described as:

**DEFENDANT JOHN J. COTA'S REPLY TO OPPOSITION TO MOTION TO DISMISS CLEAN WATER ACT COUNT**

on the parties to this action named on the attached service list by the method described below.

(BY PERSONAL SERVICE) I caused a true and correct copy of said document(s) to be served by hand to the addressee(s) listed above, with the name and address of the person served shown on the envelope.

(BY OVERNIGHT DELIVERY) I enclosed a true and correct copy of said document(s) in an envelope/package provided by an overnight delivery carrier addressed to the addressee(s) listed above, sealed it, and placed it for collection and overnight delivery following the ordinary business practices of Kirkpatrick & Lockhart Preston Gates Ellis LLP. I am readily familiar with the firm's practice of collecting and processing correspondence for overnight delivery. On the same day that correspondence is placed for collection and overnight delivery, it is collected by an overnight delivery carrier. Delivery fees are pre-paid or provided for in accordance with the ordinary business practices of Kirkpatrick & Lockhart Preston Gates Ellis LLP.

(BY ELECTRONIC TRANSMISSION) I transmitted a true and correct copy of said document(s) by electronic mail to the offices of the addressee(s). I did not receive, within a reasonable time after the transmission, any message or other indication that the transmission was unsuccessful.

**X** (BY FACSIMILE) I transmitted a true and correct copy of said document(s) by facsimile to the offices of the addressee(s). Upon completion of the facsimile transmission, a transmission report was issued showing the transmission was complete and without error.

(BY U.S. MAIL) I enclosed a true and correct copy of said document(s) in an envelope addressed to the addressee(s) listed above and placed it for collection and mailing following the ordinary business practices of Kirkpatrick & Lockhart Preston Gates Ellis LLP. I am readily familiar with the firm's practice of collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the U.S. Postal Service with postage fully prepaid at San Francisco, California.

Executed on July 11, 2008 at San Francisco, California.

I declare under penalty of perjury that the foregoing is true and correct.

                                          /s/ Mae A. Chu
                                          Mae A. Chu

**DEFENDANT JOHN J. COTA'S REPLY TO OPPOSITION TO MOTION TO DISMISS CLEAN WATER ACT COUNT—CR 08-0160 SI**

# SERVICE LIST

| **Stacey Geis, Esq.**<br>**Jonathan Schmidt, Esq.**<br>Assistant United States Attorneys<br>U.S. Attorney's Office<br>450 Golden Gate, 11th Floor<br>San Francisco, CA 94102<br><br>Fax: (415) 436-7234 | **Richard Udell**<br>US Department of Justice, Environment Crimes Section<br>PO Box 23985<br>Washington, DC 20026<br><br>Fax: (202) 305-0396 |
|---|---|

**DEFENDANT JOHN J. COTA'S REPLY TO OPPOSITION TO MOTION TO DISMISS CLEAN WATER ACT COUNT—CR 08-0160 SI**