Pages 1 - 62

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JOSEPH C. SPERO, MAGISTRATE

```
UNITED STATES OF AMERICA,      )
                               )
               Plaintiff,      )
                               )
      v.                       )   NO. CR 08-0160 SI (JCS)
                               )
JOHN JOSEPH COTA,              )
                               )
               Defendant.      )
_____)
                                   San Francisco, California
                                   Thursday, August 7, 2008
```

TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

```
For Plaintiff:          JOSEPH P. RUSSONIELLO
                        United States Attorney
                        450 Golden Gate Avenue
                        San Francisco, California  94102
                   BY:  JONATHAN SCHMIDT
                        Assistant United States Attorney



For Defendant:          K&L Gates
                        55 Second Street
                        Suite 1700
                        San Francisco, California  94105-3493
                   BY:  JEFFREY L. BORNSTEIN, ESQ.



For Fleet Management, Ltd. and Fleet Management Europe, Ltd.:
                        Keesal, Young & Logan
                        450 Pacific
                        San Francisco, California  94133
                   BY:  JOHN COX, ESQ.
```

(Appearances continued, next page)

```
APPEARANCES, CONTINUED:


For Mao Cai Sun:          Schwartz & Cera
                          44 Montgomery Street
                          Suite 3850
                          San Francisco, California  94104
                    BY:   PETRA M. REINECKE, ATTORNEY


For Kong Xiang Hu, Shun Biao Zhao, Liang Xian Zheng
and Zong Bin Li:
                          Thelen Reid Brown Raysman & Steiner
                          101 Second Street
                          Suite 1800
                          San Francisco, California  94105
                    BY:   JONATHAN HOWDEN, ESQ.


For Hong Zhi Wang:        Law Office of Brian Berson
                          235 Montgomery Street
                          Suite 625
                          San Francisco, California 94104
                    BY:   BRIAN BERSON, ESQ.
                          (Appearing Specially for
                            Brian Getz, Esq.)

Reported By:              BELLE BALL, CSR, RMR, CRR
                          Official Reporter
```

```
1    THURSDAY, AUGUST 7, 2008

2                                              2:10  P.M.

3                    P R O C E E D I N G S

4         THE CLERK:  Calling Case CR 08-0160, USA versus John

5    Joseph Cota.  Counsel, please state your appearances.

6         MR. SCHMIDT:  Good afternoon, Your Honor.  Jonathan

7    Schmidt for the United States.

8         THE COURT:  Mr. Schmidt.

9         MR. BORNSTEIN:  Good afternoon, Your Honor.  Jeff

10   Bornstein on behalf of Captain Cota.

11        MS. REINECKE:  Good afternoon.  Petra Reinecke on

12   behalf of Captain Sun.

13        MR. COX:  Good afternoon.  John Cox on behalf of

14   Fleet Management Europe, Limited, and Fleet Management,

15   Limited.

16        MR. HOWDEN:  Jonathan Howden on behalf of Material

17   Witnesses Zheng, Zhao, Hu and Li.

18        THE COURT:  Okay.  So, I saw that she's set a

19   November trial date?

20        MR. BORNSTEIN:  Still tentative, I'm told.  We are

21   supposed to go back on a week from Friday, but that was her

22   initial --

23        THE COURT:  Date?

24        MR. BORNSTEIN:  -- setting.  Yes.

25        THE COURT:  To what extent is it tentative?
```

1              **MR. BORNSTEIN:**  Well, there are two issues.  The

2    first is a Fleet Management issue of whether they'll be ready

3    by then, because she indicated she wasn't inclined to sever the

4    Defendants before we had actually raised that issue, except

5    in -- obtusely.

6              Second, the second issue is really one that we

7    raised, which is whether the -- the prejudice of that

8    particular date, given what we think will be a flurry of more

9    negative news coverage around the 7th of November, and how

10   that's going play in terms of the jury.

11             But, I don't know how receptive she's going to be to

12   that argument.

13             **THE COURT:**  Right.  Okay.  Good.  So, whose

14   deposition shall be taken, when?

15             **MS. REINECKE:**  We'll go.

16             **THE COURT:**  I have a volunteer.  That's fabulous.

17             **MR. COX:**  And, Your Honor, Fleet does anticipate

18   trying -- or moving the Court to push the trial date back into

19   early 2009.

20             **THE COURT:**  I wouldn't be surprised.  I wouldn't be

21   surprised.  So, which witnesses will Fleet be prepared to take,

22   and when?

23             **MR. COX:**  Well, we have no statements, no expert

24   discovery.  And until we have some of that information or we've

25   worked it out one way or the other with the Government, it's

1    almost impossible to just guess.

2              **THE COURT:**  Have you gotten no discovery from the

3    Government?

4              **MR. COX:**  We've received documents that were seized

5    off of the ship or that we produced to the Government.

6              **THE COURT:**  Uh-huh.

7              **MR. COX:**  But we have not received documents that

8    would be directly relevant to the charges.

9              **THE COURT:**  What does that mean?  I have no idea what

10   he's talking about.

11             **MR. SCHMIDT:**  I'm not sure that's completely

12   accurate.  And if it's not, it's -- that's not Mr. Cox's fault.

13   It's just our description of the documents to him.

14             We've given him --

15             **THE COURT:**  Does he have everything Captain Cota has?

16             **MR. SCHMIDT:**  He does, except for things relating to

17   Captain Cota's physical condition.

18             **THE COURT:**  False statement charges?

19             **MR. SCHMIDT:**  Except for a series of disks involving

20   -- there's -- the command control tower at the time.  All of

21   that should be given to them, tomorrow.

22             We have given over 20 disks' worth of discovery,

23   which includes statements made by a variety of these witnesses.

24   Just not the very most recent statements, which have to do with

25   the passage planning incident, but don't have to do with

1    negligence.

2              We've met with Fleet, we've discussed the discovery

3    that we have with them, we've gone over the discovery at some

4    length, and we're more than aware of that.  What they don't

5    have, in terms of statements, what he's talking about is about

6    30 pages at most.

7              **THE COURT:**  When do they get those?

8              **MR. SCHMIDT:**  Tomorrow.  There -- they've -- they,

9    that is, Fleet, initially, pursuant to a subpoena, gave us

10   about 10,000 pages of discovery.  But the other discovery is

11   the NTSB docket, the NTSB non-public docket which we have given

12   to Fleet, a variety of electronic images, the radar charts, the

13   voice recording device, and things of that sort.

14             **MR. COX:**  Maybe there is a misunderstanding, then.

15   Last week when I was given the 20 CDs, I was told that there

16   was no statements included in that production.

17             But it sounds like we don't have some of the

18   statements.  And there perhaps is --

19             **THE COURT:**  But you will have, tomorrow.

20             **MR. COX:**  Right.

21             **THE COURT:**  Okay.  Well, that's good.

22             **MR. SCHMIDT:**  I don't think that's a limiting factor.

23   I do think that Fleet has mentioned to us that they would like

24   to get an extra report about the standards -- the standard of

25   care.

```
1          We're working on getting that.  I don't have an

2   estimated time.  I hope, by the end of August, early September.

3          THE COURT:  You wanted to say something?

4          MR. BORNSTEIN:  Well, I know I directed the question

5   to Fleet, but we're still waiting for more discovery, too.

6   That is -- is our -- we believe, pertinent to this.

7          And I think the Government is of the view that the

8   false statements by the four officers somehow are limited to

9   this passage plan.  But we think it changes the entire

10  character of the case.  Especially given their new indictment

11  which alleges that the crew --

12         THE COURT:  Well, but they're going to give those

13  statements, right?

14         MR. SCHMIDT:  Actually, we have given those

15  statements --

16         MR. BORNSTEIN:  No, I have those -- I have most of

17  those, I think.  I hope I have them all.  I don't know.

18         There was some discussion that the Government and I

19  are having ongoing about whether there is -- there are

20  additional things that may or may not have been said, and other

21  -- that may not be reflected in some of the documents we have.

22         But, putting that aside, the charges in the case, as

23  they now exist, allege that the -- the crew was improperly

24  trained, and incompetent to do their duties, which is a very

25  serious allegation that the Government has made, which
```

1    requires -- and we believe the false statements by the crew

2    therefore are more germane than simply "Oh, well, we falsified

3    a passage plan."

4          There are other false statements that flow from that.

5    There are other issues that flow from that.  These -- those

6    four of the six, in particular, that we think we've got the

7    Government now saying that they made false statements of one

8    form or another, those people are absolutely germane, and need

9    to be at trial.

10          And, I would argue, the other two, as well.  Because

11   one of the key issues is going to be, for instance, on the

12   bosun, who was the lookout, what training did he have, or

13   what's he going to say he had, and how does that pertain to --

14   to what the records show are the training he had, since we now

15   believe that many of those records are also false.

16          So, there's a lot that needs to be done.  And I agree

17   with Fleet, that -- that, you know, the Government claimed in

18   its opposition to some of our motions to dismiss, that it had

19   experts that were prepared to testify on certain subjects.

20          And I would like to know what those experts are going

21   to say, too, especially because when you do fact witnesses, you

22   need to know sort of the context.  And, I don't know, did the

23   Government not have the experts?  Or did they just make a sort

24   of a misstatement in their opposition papers?  I'm just not

25   clear on sort of where we are.

1          So, as you asked the question when are we going to be

2   ready to take depositions, we have to go back to the Government

3   and say, "When are we going to know what it is that you are

4   intending to put in at -- at issue in this trial, and what the

5   evidence is," so that we can then take trial depositions if

6   that's what you order us to do, even though I will argue that

7   you shouldn't order any depositions, at all.

8          **THE COURT:**  I understand that.  But if the trial is

9   going to go on a -- I'll tell you, this morning, I was

10  reviewing the file in this case.  This trial -- maybe it takes

11  place in November.  Maybe it takes place in mid-2009.

12          In the meantime, Captain Cota gets permission to go

13  to Thailand if he wants.  These people, who live in China, and

14  are not charged with any crime, have to stay here.

15          **MR. BORNSTEIN:**  But that's not my decision.

16          **THE COURT:**  It's my decision.

17          **MR. BORNSTEIN:**  I agree with you.  But --

18          **THE COURT:**  And that's why I have to make a decision

19  about that.  So I have to balance all of these things.  And if

20  -- I want to get you in a position where you can reasonably

21  take a trial deposition.

22          I don't think it has to be every single scrap of

23  paper, every position the Government might end up taking at

24  trial, for you to have to do that.  I don't think that's what

25  the law says.

1           **MR. BORNSTEIN:**  I think it has to be meaningful

2    cross-examination and confrontation --

3           **THE COURT:**  Yep.

4           **MR. BORNSTEIN:**  And based on what it is that the

5    Government seeks to elicit at trial, and -- and proof.

6           And all I'll say is this, that Captain Cota --

7    Captain Cota is going to come back from Thailand.  I have

8    absolutely no objection to you allowing any witness to -- to

9    leave, and especially -- as long as it's clear that if the

10   Government doesn't do something to guarantee them coming back,

11   that it's at their peril, in terms of the indictment that they

12   chose to bring against Captain Cota.

13          They didn't charge any of these other people with any

14   crime, even though they could have.

15          **THE COURT:**  Well, I don't know -- that's -- that's

16   totally up to them.  But the question in my mind is, what

17   exactly do you need, reasonably, to do the kind of

18   cross-examination to which you are entitled?

19          That's the question that the Court has to address.

20   And so far, we have been going on the premise that -- you've

21   got the indictment, their case is confined to the indictment.

22   You may need certain evidence.  You want to know all the

23   evidence the Government has.  You may even want to know what

24   expert witnesses they are going to call, and what they're going

25   to say.  Okay, I understand that.

1          So, that's expert witnesses, the evidence they've

2     already given you.  What else is it, specifically, that you

3     need in order to do the cross-examination to which you are

4     entitled?

5          Besides the evidence they've already produced, the

6     evidence that they say they are going to produce today to Fleet

7     or tomorrow to Fleet, and the expert witness statements, what

8     else do you need to do your examination?

9          **MR. BORNSTEIN:**  I gave the Government a very detailed

10    letter a month ago, requesting specific things.  And asking

11    them to verify, if they have given it to me already, fine.

12    Give it to me -- tell me that I've already got it.  Because it

13    was confusing to figure out what we had and what we didn't

14    have.

15         I have been told that there is additional material

16    that I'm supposed to be getting.  I was told that I was

17    supposed to be getting that within -- last week.  Then it was

18    going to be earlier this week.  I haven't gotten it.

19         So, I mean, I can go and -- and provide you with the

20    specifics.  But there are ongoing conversations that I have

21    been having with them about "I need this, I need this, I need

22    this" --

23         **THE COURT:**  Here's the thing.  That's going to happen

24    all the way up until trial.  It --

25         **MR. BORNSTEIN:**  But it shouldn't.  You ordered that

```
1    things were supposed to have been --

2              THE COURT:  Would you just let me finish?

3              MR. BORNSTEIN:  I'm sorry.

4              THE COURT:  I will not -- try not to interrupt you.

5    Please try not interrupt.

6              Of course, it shouldn't happen, that -- there will be

7    discussions about "Have you produced this," and "Oh, we just

8    found that," all the way through, up to trial.  It should not

9    happen.  It should be done tomorrow, or next month, or whatever

10   it is.  But it's going to.

11             Nonetheless, I have to find a point at which I think

12   there has been sufficient compliance, at which you can do an

13   adequate job of cross-examining these witnesses.  So, I have to

14   do it.

15             So, you asked the Government for very specific things

16   you think you don't have, or you think you -- not sure whether

17   you have.

18             And, what's the Government's response on that?

19             MR. SCHMIDT:  Your Honor, we've reviewed the letter.

20   The letter is extremely detailed, and asks for some stuff that

21   we believe is way far afield.  Nonetheless, we are trying our

22   hardest to get it.  We have been able to accumulate most of

23   that stuff.

24             An example is, some of the things that has been

25   requested is how the fendering system worked on tower.  I think
```

1    it's tangentally relevant; happy to get that, to the extent I

2    can.  I don't know if it's that relevant to the depositions,

3    but we have gotten it, and we will supply it to defense

4    counsel.

5              As of tomorrow, we should have handed over

6    approximately 60 disks' -- some DVDs, some CDs -- worth of

7    material to Defense Counsel.  Approximately 10,000 pages.  Much

8    of this stuff is kind of repeating itself.

9              So, we give over the Coast Guard report which has

10   some records, and then we give over an NTSB report which has

11   the very same records.  So, it's voluminous, but it's not

12   necessarily as dense as the volume suggests.

13             You're right.  The requests are endless, and the

14   depth of discovery in this case seems to be bottomless.

15   Hundreds of agencies wrote reports.  Hundreds of -- well, tens

16   of agencies were out there, and they wrote reports.  Those

17   reports all seem to overlap.  I cannot tell what's particularly

18   relevant to Mr. Bornstein or Mister -- or Fleet Management.

19             We are doing our best to get it all into an organized

20   fashion.  We have met with both Counsel, and reviewed

21   discovery, we've given them a lot of what's in that discovery.

22   A large part of those disks are images, pictures of what

23   happened on that day.  And there might be one image that has

24   extreme significance.  I don't know.  I can't say.

25             Another large part of that stuff is electronic

1    things.  The radars, the charts, and things of that sort.  So

2    where we are is, I believe, as of tomorrow, we will have given

3    over 90 to 95 percent of the discovery that's relevant,

4    factually relevant.

5          The expert discovery was something that Fleet brought

6    up when they got into the case.  I think they're right.  I

7    think they need to know what we are going to argue as the

8    standard of care.  And that's important, in particular for the

9    charges leveled against Fleet, but I can see how it's important

10   for the charges against Captain Cota.

11         We're working on that.  It's taking a little bit more

12   time than we anticipated.  There's difficulties in getting an

13   expert, because of the nature of this field.  And the nature of

14   the Defendants.  So, we are working on that.  I anticipate

15   having that by the end of this month, or the very beginning of

16   next month.

17         So, I think that's essentially where we stand on

18   discovery.

19         **THE COURT:**  I guess I'm -- you know, we are talking

20   about it in macro terms, and I don't think we can talk about it

21   in macro terms.

22         We've got six witnesses.  Okay.  And, with respect to

23   each of those witnesses, you may have a position that "We need

24   X before we can take that witness's deposition, and here's

25   why."

1          And my guess is that that will vary from witness to

2    witness.  They all had different jobs.  Some more

3    responsibility, some less responsibility.  And some, some at

4    one location, some in other locations.  I don't think we can

5    address this on a macro level.

6          I think what we need to do, or one of my thoughts on

7    what to do is you go witness by witness, and you say -- and I

8    say to you, "What do you need that you don't have, that you

9    think is necessary for your cross-examination?"  We have a

10   discussion about it.  I agree with you; I disagree with you.

11   And I make a ruling.

12         I don't see any other way to do it than witness by

13   witness, and request by request.  "What is it specifically you

14   need that you don't yet have, that you have asked for with

15   respect to this witness?"

16         Isn't that the way we ought to do this?

17         **MR. COX:**  Your Honor?

18         **THE COURT:**  Yes.

19         **MR. COX:**  I absolutely agree that that's the right

20   way to look at the problem.  But from Fleet's perspective, we

21   have just been brought in to the case.  We have just received

22   20 CDs.  I understand there's at least 40 others out there that

23   Captain Cota has.

24         Mr. Schmidt, I understand, is saying that most of it

25   seems to overlap, and he doesn't think much of it is relevant.

1    But certainly that doesn't mean that we don't need to review it

2    to find out what it is --

3              THE COURT:  Well, most of it came from you.  I mean,

4    the vast majority of those CDs are information that came from

5    you to the Government.

6              MR. COX:  Right.  And to determine what --

7              THE COURT:  Now you need to look at it and decide.

8              MR. COX:  We need to review the discovery, we need to

9    see what else we still need.

10             THE COURT:  Yeah.

11             MR. COX:  And without having reviewed it from Fleet's

12   perspective, to do such an analysis, it's too early to do

13   today.

14             THE COURT:  Your co-counsel or partner stood up here,

15   whenever we were last here, two weeks ago, and said "I'm going

16   to work hard the next two weeks, and I'm going to go through

17   this material" -- because they had already gotten a great deal

18   of it -- "and I'm going to look at, it and I'm going to figure

19   out for you, Judge, to the best extent I can, when I think we

20   are going to be ready."

21             MR. COX:  We were promised that discovery.  I

22   received it at the time of the hearing in Judge Illston's court

23   last week.  We still haven't received any of the expert

24   discovery.

25             And I don't need to repeat myself on that, but -- the

1    problem from Fleet's perspective -- obviously this case has

2    been going on for eight months.

3              **THE COURT:**  I appreciate the problem.  I appreciate

4    the problem.

5              Got any brilliant ideas, Mr. Howden?

6              **MR. HOWDEN:**  Yes, Your Honor.

7              **THE COURT:**  Excellent.

8              **MR. HOWDEN:**  Well, they're not brilliant.

9              **THE COURT:**  I thought you jumped pretty quickly at

10   that.

11             **MR. HOWDEN:**  I think the Court can establish key

12   discovery cutoff dates, and incorporate those into a framework

13   for dates for depositions.  I think the Court already has some

14   idea of the order of depositions that would be reasonable.

15             And, let me add this one further observation, to the

16   extent that the Government fails to make discovery of evidence

17   that is material to the cross-examination of any of these key

18   witnesses, and to the extent that Defense Counsel can identify

19   that, and -- it will rebound to the Government's peril, down

20   the road.  And so, the Government has to be aware that they

21   need to abide by the discovery cutoff, at the risk of injecting

22   error into the case.

23             And I think, with those safeguards for the

24   Defendants, we should proceed to set dates -- including

25   discovery cutoff dates -- for this case, as soon as possible.

```
1    To the extent it is -- it appears impossible to order

2    depositions even under those circumstances, because the

3    Defendants can make the case that they -- they simply aren't

4    ready, then I think the Court should again consider our

5    application, which has not been filed yet, to release the

6    Defendant -- the material witnesses, pending trial.

7              THE COURT:  Uh-huh.

8              MR. HOWDEN:  And it is one --

9              THE COURT:  Allow them to travel.

10             MR. HOWDEN:  Yes.

11             THE COURT:  Yeah.

12             MR. HOWDEN:  And, I understand the Court's concerns.

13   I plan on addressing those concerns in a very meaningful way.

14   We haven't come anywhere close to preparing the kind of showing

15   that we feel would be impressive to the Court.

16             But, that is the direction we will go in, if

17   depositions can't be set in what we regard as a meaningfully

18   short period of time.

19             THE COURT:  Right.

20             MR. SCHMIDT:  Your Honor, may I make a suggestion?

21             THE COURT:  Uh-huh.

22             MR. SCHMIDT:  As much as I don't like it, I think

23   both our feet and the defense's feet need to be put to the

24   fire.  I also think the Court's right, that it's not working on

25   the macro level.
```

1          It's my assessment, and speaking to Mr. Howden, his

2     assessment as well, I think, that the two witnesses -- I also

3     agree with Mr. Bornstein that some of these witnesses need to

4     be at trial.  I think the two witnesses that can be taken out

5     are possibly the boatswain and possibly the helmsman.  The

6     helmsman I'm a little hesitant about, now that Fleet's in the

7     case.

8          What I recommend is that we give over our discovery

9     tomorrow.  We come back here at some point.  Defense either

10    says they need more discovery or -- and identify what discovery

11    they need, just for those two witnesses.  Because those,

12    realistically, are the only two witnesses we're going to be

13    able to move forward expeditiously on.

14         At the same time, we try to keep the trial date we

15    have, and you find out what Fleet and what Defense Counsel

16    needs to get to that trial date.  The Government will be

17    prepared on that trial date.  And, I think that trial date is

18    realistic.

19         I do recognize that Fleet just came into this case,

20    but they didn't just come into this issue.  They have been --

21    they are involved in a tremendous amount of civil suits that

22    all relate to exactly this issue.  So, it's not like this is

23    coming out of nowhere for them.

24         So, I -- and that's why I'm not saying they need to

25    be ready for depositions tomorrow, but I do think by November,

1    to do a trial on the negligence and Migratory Bird Act, is a

2    doable date.  And I'm happy for the Court to keep us to the

3    fire in terms of discovery.  And I think actually by tomorrow,

4    we will be done, except for the expert disclosures.

5            But then at the same time, focusing just on those two

6    witnesses, because really, as long as we are focusing on six

7    witnesses, we're never going to get there.  And again, I do

8    agree with Defense Counsel that those four witnesses, it would

9    be almost impossible to do depositions and not have live

10   testimony at trial.

11           **MR. HOWDEN:**  Well, I clearly disagree.  And I'm sure

12   the other counsel for the material witnesses disagree as well.

13           In particular, one of my clients, the chief, was not

14   on the bridge, was eating breakfast at the time of the

15   accident, had no role in the navigation.  And I would add him

16   to that list of the first three witnesses who could be deposed

17   tomorrow, and be sent on their way.

18           **MR. SCHMIDT:**  The other one thing I wanted to mention

19   is I spoke to Mr. Howden about this.  I don't know how feasible

20   it is, but to the extent it's feasible, I'm happy to pursue it

21   -- is to make the conditions for the witnesses a little more

22   palatable, and to the extent they can't travel to see their

23   family, if it's possible that the Government can pay for some

24   of their family members or close relatives to come here and

25   visit them, we are happy to look at that.

1         **THE COURT:**  Okay.  Well, I think you should look at

2    that, regardless of what we do here.

3         **MS. REINECKE:**  I just wanted to note for the Record,

4    obviously we are coming up on a year of the material witnesses

5    being here, which I believe is unprecedented.

6         And, my client doesn't care if he testifies at

7    deposition or trial, but given the likely scenario for a trial

8    date, we would obviously like to put him on the depo list.

9         **THE COURT:**  Well, let me take this a step at a time.

10        Do you think we can set a discovery cutoff for the

11    Government today?  And what does that mean?

12        I mean, he's offering -- the Government's offering to

13    stipulate to a -- to finish their discovery by -- that they are

14    going to produce, by tomorrow.

15         **MR. HOWDEN:**  Except for the expert.

16         **THE COURT:**  Except for the experts.  Is that what you

17    said?

18         **MR. SCHMIDT:**  I want to clarify.  I mean, that

19    doesn't mean that if we don't find something else, or the

20    defense doesn't ask for things, that we're precluded from using

21    that at trial.  But, all that we have in our possession now

22    that we intend to give over, we'll give over by tomorrow.

23        Defense turns around and says, "Hey, we need

24    information on so-and-so," or some agency issues a report --

25         **THE COURT:**  Well, the only thing that concerns me in

1    that statement, actually, is the question, things the

2    Government -- the defense has already asked for.  You're not

3    saying that by tomorrow you are going to finish producing

4    everything you've got that they've requested.

5           **MR. SCHMIDT:**  I don't think we will ever have

6    everything they've requested.  All we can do is provide

7    everything we can obtain, that's in our possession, that's

8    relevant to their request.

9           **THE COURT:**  Well, whatever you think you -- whatever

10   it is you think you are obliged to and could produce in

11   response to Mr. Bornstein's detailed letter, that will be done

12   by tomorrow?

13          **MR. SCHMIDT:**  I'm hoping.  It all was done, and then

14   just today, about an hour ago, I was given more discovery which

15   needs to be Bates-stamped and arranged.

16          But that should -- tomorrow, or Monday at the latest,

17   yes.

18          **THE COURT:**  I think that's a great idea.  Why don't

19   we have -- the Government will stipulate that they have to

20   produce all the discovery that they're going to produce in

21   response to their obligations and in response to the existing

22   requests by the defense, by a date certain.  And we'll will set

23   that very soon.

24          Why not do that?  Is there any reason not to do that?

25   From the defense's point of view, or witnesses' point of view?

1    I can't think of any --

2              MR. COX:  Well, we will almost definitely be asking

3    for additional items that we haven't asked for at this point.

4              THE COURT:  That's why I said it the way I am.  I

5    expect Mr. Bornstein, as he goes along, will also be asking for

6    additional items.

7              MR. SCHMIDT:  Mind you that the flip side of this is

8    when the defense gets it, then the argument will be "Now we

9    have it; we need time to review it."

10             THE COURT:  No, and I -- he's already made the

11   argument, that -- I'm fine.  But I -- I -- okay.

12             MR. SCHMIDT:  Yeah, the caveat -- what I'm suggesting

13   is there needs to be some sort of cutoff from the defense

14   that -- how long they can have to review it.  It's almost

15   bottomless, the discovery in this case.

16             THE COURT:  Well, I understand that.  So, discovery

17   is produced, then we have got to have meaningful discussions

18   about the witnesses.

19             So, you were deprived of about a week of the two

20   weeks by the time you -- discovery, during which we were going

21   to review it for -- in order to have a meaningful discussion,

22   witness by witness.

23             If the Government, pursuant to its agreement,

24   produces everything by the end of the day tomorrow --

25             MR. SCHMIDT:  Well, that's --

1          **MR. COX:**  Well --

2          **THE COURT:**  Or by Monday --

3          **MR. SCHMIDT:**  Given the --

4          **THE COURT:**  What?  What?

5          **MR. SCHMIDT:**  We will produce this volume that I

6      described by the end of the day tomorrow, or Monday.  I wonder

7      if the Court can give us, then, a week from Monday to clarify

8      if there's anything else from any of these other agencies.

9          **THE COURT:**  So that they do what he says, that the

10     discovery cutoff on their obligations to produce discovery, you

11     know, as they are set forth in the rules and the law, and in

12     response to the requests from the defense, to the extent

13     they're obliged to comply with them, will be by a week from

14     Monday.

15          Then, when can we have -- because you also have some

16     other discovery to look at, other than that, and this is just a

17     little additional, when are we having our meaningful discussion

18     on witness by witness, starting with the least important

19     people, going to the most important people?

20          **MR. COX:**  We can do that as soon as we have all the

21     expert disclosures.  The nature of all of the allegations,

22     whether it's negligence or false statements, they involve

23     issues that will be absolutely dependent upon expert testimony.

24          **THE COURT:**  On every single crew member.

25          **MR. COX:**  If the allegation is that the crew members

```
1   were not properly trained or familiarized -- the

2   familiarization with the equipment or the vessel was

3   inappropriate, then absolutely.

4          THE COURT:  What about the bosun?

5          MR. COX:  The bosun, it still comes up.  But it will

6   -- he will be the one that could go first.

7          THE COURT:  I mean, comes up in what way?  He wasn't

8   on the bridge, he was -- well, he was a lookout.  He saw it.

9   He called the warning.

10         MR. COX:  What is the standard of care?  If he was

11  not trained properly, what is the standard of care?

12         THE COURT:  "Not trained properly."  I'm not sure how

13  that works out properly in this factual -- alleged factual

14  scenario.  What do you mean?

15         MR. COX:  If the allegations are that there was

16  negligence on behalf of Fleet because the training was

17  inadequate, or the crew members did not have enough sleep, what

18  is the standard of care?

19         THE COURT:  Well, I guess I just don't understand how

20  that applies to the bosun.  Given what his role is, here.  His

21  role is, here, is he saw, he called out a warning over his

22  radio.  That's his role.  Right?

23         MR. COX:  That is his role.

24         THE COURT:  What is -- what is -- how are you going

25  to -- I mean, I guess I don't understand.  He wasn't -- he
```

1    should have seen it sooner?  I mean, it's -- his eyes weren't

2    sharp enough?

3              **MR. COX:**  Well, we'll certainly -- we will be filing

4    a bill of particulars.  We will get some additional information

5    from the Government, hopefully.

6              If the Government is alleging negligence relating to

7    training, to sleep, to performance on the vessel, if those

8    allegations pertain to the bosun, then the expert testimony is

9    going to be central to any kind of cross-examination of the

10   bosun.

11             But, again, the bosun will be the easiest to depose.

12             **THE COURT:**  Good.

13             **MR. COX:**  So he could be the first who could go home,

14   if we are going to do Rule 15 depos.

15             **THE COURT:**  So the Government is essentially finished

16   with its discovery, but it adds some more, and finishes up by

17   Monday --

18             **MR. SCHMIDT:**  You are --

19             **THE COURT:**  But cleans up by a week from Monday --

20             **MR. SCHMIDT:**  Your Honor, can I say something?  Not

21   to derail you, just to throw it out, just so everybody knows.

22             **THE COURT:**  Yep.

23             **MR. SCHMIDT:**  One issue is Captain Cota's physical

24   condition.  I do not think it's an issue relevant to the

25   depositions.  I'm not objecting to giving over that discovery

1    to Fleet.

2          Before giving that over, there needs to be -- there

3    are certain issues about giving over health care records.  I am

4    willing to work those through, both with Captain Cota's counsel

5    and Fleet's counsel.

6          So that particular discovery has to -- it's not an

7    issue of whether or not we have it and can give -- or are ready

8    to give it over.  The question is whether, legally, we are

9    allowed to.  And work it out.  And it involves protective

10   orders, probably permission from Captain Cota, I'm not quite

11   sure.

12         So that -- I just want to air that one more caveat.

13   Because I'm not in control of that.  I need the cooperation of

14   other Counsel as well.

15         **THE COURT:**  I guess I don't understand that issue.

16         **MR. SCHMIDT:**  The issue is one allegation that Fleet

17   might make is because of Captain Cota's medical condition, he's

18   more responsible --

19         **THE COURT:**  Right.

20         **MR. SCHMIDT:**  -- than Fleet, and that somehow

21   exonerates Fleet.

22         **THE COURT:**  No, I understand that.  But what the --

23   the record protections, I mean, state privacy laws you are

24   concerned about?

25         **MR. SCHMIDT:**  There's a variety of privacy issues, I

1     guess.  Which I'm not on top of, so I couldn't really --

2              **MR. BORNSTEIN:**  I don't see how it's relevant to take

3     these depositions.  And -- if that's what we are going to have

4     to do.

5              **THE COURT:**  Right.

6              **MR. BORNSTEIN:**  But in any event, my -- I guess I

7     agree, to the extent you are going to carve out people to take

8     depositions, and not require everyone to be present at trial,

9     and I understand the problem if in fact the trial date gets

10    moved again.

11             We were trying to keep it on October 6th.  And we

12    agreed to move it with the idea that, because the Court

13    indicated that she wouldn't sever the other Defendants, so that

14    we could -- because we feel it is important to have these

15    witnesses there.  They're the principal people that really are

16    essential to this -- to the trial.

17             But, but if you take the bosun and probably the

18    helmsman, and you were to at least tentatively set depositions

19    for them, based on the Government's schedule, and even giving

20    Fleet the time that they need and the time that we need, my

21    suggestion would be to set those depositions to commence either

22    the last week of September or the first week of October.

23             **THE COURT:**  Uh-huh.

24             **MR. SCHMIDT:**  I agree with that timetable.

25             **MR. BORNSTEIN:**  I just want to note that there is --

1    except for the 29th of September, which I can't do, but -- some

2    time in that time frame, it would probably work for those two.

3            We can fight about the chief officer and the other

4    people, as to why it is inappropriate -- assuming the trial is

5    going to be some time in November, why it is inappropriate to

6    have depositions.  And, I'm happy to do that at the appropriate

7    time.

8            And even though the chief officer was not on the

9    bridge, he's a central player, in terms of training; in terms

10   of his own statements, false and otherwise; in terms of just

11   the whole way in which the crew did or did not do what it was

12   supposed to do.

13           **THE COURT:**  Okay.

14           **MR. HOWDEN:**  I disagree, both with the

15   characterization of the chief's role, and I'm frankly dismayed

16   that the parties feel they can't commence the depositions any

17   earlier than the end of September.  I would offer the middle of

18   September, at the latest.

19           I would also ask, because the Court is going to have

20   to evaluate the roles that these witnesses played in all of

21   this, that the Government produce to me their write-ups of the

22   statements of my witnesses, since I don't have them, and

23   actually don't really have a right to them, but -- because I

24   would like to present them to the Court in support of my

25   contention that these three individuals should be permitted to

```
1    be deposed first, and let go.

2              THE COURT:  Okay.  Let's -- maybe we will get there;

3    maybe we won't.  Okay.  So, let's just -- let's set some sort

4    of a process.

5              The Government has agreed to complete its production

6    of the discovery that it's obliged to produce, where you have

7    requested it, and it's obliged to produce because you have

8    requested it, and complete that discovery by the 18th.

9              All right?  That's the agreement of the United

10   States.

11             MR. SCHMIDT:  With all the appropriate caveats.

12             THE COURT:  With all the appropriate -- there's an

13   issue regarding privacy of medical records.

14             MR. SCHMIDT:  And there's just the issue of the

15   dynamic nature of discovery, and in particular, in this case.

16             THE COURT:  Yeah, no, that's not very satisfying.

17             MR. SCHMIDT:  I know, but I can only do what I can

18   do.  I can only appeal to all of these agencies, I can only

19   assemble it.  And then if somebody says, "Hey, what about such

20   and such," if we didn't know about it, then --

21             THE COURT:  I understand that.  But that's a

22   different question.  He hasn't asked you for such and such.

23             MR. SCHMIDT:  There is nothing that I know about that

24   will not be disclosed on the 18th.  That's all I can really do.

25             THE COURT:  Okay.  I guess I can't ask more than
```

1    that.  Anything you know about, or has been requested and that

2    you know about because it's been requested.

3            What else is there?  That's why you wrote that

4    letter.

5            **MR. BORNSTEIN:**  Yeah, but that -- look.  I don't mean

6    to quarrel, but the Government has discovery obligations.  It

7    extends to their agencies.  They can't just say, "Well, I

8    didn't know about it."

9            **THE COURT:**  Okay.

10           **MR. BORNSTEIN:**  I mean, that's certainly -- I'm not

11   trying to -- I know that -- that the office is trying in good

12   faith to get us this information.

13           **THE COURT:**  Right.

14           **MR. BORNSTEIN:**  But you have put us in a box in terms

15   of being the bad guys here on keeping the --

16           **THE COURT:**  Oh, no, everyone's bad guys.  Don't

17   worry.  Except the witnesses.

18           **MR. BORNSTEIN:**  All I'm saying is that I understand

19   the problem with the witnesses, but I also need to make sure

20   that -- my guy is the one who the Government wants to send to

21   jail -- that I have the opportunity that I'm entitled to, to

22   defend him.

23           So, I don't know what all -- you know, what he's

24   saying.

25           **THE COURT:**  You know, it's a fair point.  Regardless

1    of -- it's a caveat that's too broad.  Right?  It's not just

2    what you personally know.  You may have an obligation to

3    produce something, and you may be criticized for it later.

4            The question is setting a deadline by which you live

5    up to your obligations to produce discovery.  That's the

6    question.  Not just "This is what I know about; this is what

7    I'm giving you."

8            MR. SCHMIDT:  And that's what we are doing.  We are

9    reaching out to the agencies.  We're trying to figure out what

10   the Government, in the large sense, knows and has to give over.

11           THE COURT:  So, that's not by the 18th.

12           MR. SCHMIDT:  No, that is by the 18th.  And we're

13   doing that in good faith.  What I'm worried about is, something

14   pops up, because as the Court mentioned, it inevitably does.

15           THE COURT:  Well, there's a standard for that, then,

16   right?  Then you figure out whether or not you reasonably

17   should have known or whatever -- I don't know the standard,

18   actually.  But it's going to be a test --

19           MR. SCHMIDT:  That's --

20           THE COURT:  But it's going to be a test --

21                   (Court and Counsel speaking simultaneously)

22           MR. SCHMIDT:  -- post-trial if we hadn't given it

23   over or something of that sort, we're now talking -- we're

24   talking about an arbitrary date, set for --

25           THE COURT:  It's not arbitrary.  Actually, you picked

1    it.

2              **MR. SCHMIDT:**  You are saying a date that is not --

3    it's not the cutoff date of anything other than for defense,

4    then, to review and prepare.

5              If on the 19th some agency says "Hey, what about

6    this," I want to be able to give it over to Defense Counsel

7    without being penalized.  That's all I'm saying.

8              **THE COURT:**  Well, you will give it over.  And the

9    question of whether you will be penalized will be up to someone

10   else.  Right?  I mean, I don't know.

11             I mean, you know, Mr. Howden makes an important

12   point.  That at some point, if you turn something over, and it

13   should have been -- the Judge, District Judge decides you

14   should have turned it over before these depositions, and they

15   didn't get therefore to take an adequate deposition, it will

16   have consequences.

17             **MR. SCHMIDT:**  If the 18th is the day when

18   consequences start to inure, then I would ask for a different

19   date.  I would ask -- then I spoke too quickly, and I was

20   trying too hard to help move the process along.

21             The 18th is a day which, in good faith, I -- the

22   volume that will have been given over by the 18th is immense.

23             **THE COURT:**  I know it's huge, but --

24             **MR. SCHMIDT:**  And it's enough for Defense Counsel to

25   start doing what they need to do, and to move this process

1    along.  I don't see why --

2              **THE COURT:**  I agree with that.  I agree with that.

3              **MR. SCHMIDT:**  Unless there's a suggestion of lack of

4    good faith, or unless there's a huge dump of information post

5    that date, I don't see why the Government has to be penalized

6    that way.

7              **THE COURT:**  It is only meaningful in that sense,

8    then.  It is meaningful in the sense that the Government is

9    agreeing to produce all the information, all of the discovery

10   about which it knows, about which the Office knows, by the

11   18th.  Including things you have requested.  By the 18th.

12             And, so the question is, in order -- and then we will

13   see what happens.  We will just have to see what happens after

14   that.  It's -- it is incumbent upon the United States.

15             So, I want a commitment from you and you to review

16   what you have got.  And we will go through on a date, witness

17   by witness, and figure out whether they should be deposed.

18             Now, between now and then, things may happen.  You

19   are going to see Judge Illston again, when?

20             **MR. BORNSTEIN:**  Friday the 15th.

21             **MR. COX:**  The 15th.

22             **THE COURT:**  On the 15th.  That's between now and

23   then.  There may be any number of things happening.

24             **MR. SCHMIDT:**  Your Honor, can I make a comment?  I

25   know the Court was joking about we're all bad guys, and the

1    Government definitely shares responsibility for where we are.

2    And I'm not talking about me being bad.  That's fine.

3              But what I'm mentioning is that the witnesses do

4    share --

5              **THE COURT:**  I'll refrain from commenting.

6              **MR. SCHMIDT:**  That's fine.  I just want to let the

7    Court know, at least it is the opinion of the Government that

8    the witnesses share some responsibility.

9              A disclosure of this information related to Fleet's

10   involvement came very late in the game.  Possibly the

11   Government could have pursued it more vigorously and gotten it

12   out earlier.

13             But the witnesses, themselves, had this information,

14   not particularly forthcoming with this information.  It's hard

15   to say they didn't know this information was relevant to this

16   investigation and relevant to their being here in this country.

17             So, yes, I agree with the Court, and with what

18   everybody said, that we need to move this along, and we need to

19   get them out of here.

20             **THE COURT:**  I find it hard to blame the witnesses,

21   since you haven't indicted them.

22             **MR. SCHMIDT:**  That is a discretionary choice.

23             **THE COURT:**  I understand that.  That's totally up to

24   you.  But since you have decided that you are not going to

25   accuse them of any crime, formally, I find it very difficult to

1     blame them.  And it isn't -- I find it very difficult to blame

2     them.

3            But be that as it may, you know, even if there is

4     some measure to blame, this is -- we are talking about a much

5     longer period of time than whatever fraction of that might be

6     attributable to what they did in the United States, when they

7     don't speak the language.  So, I don't think it's a

8     particularly good moment, but, sure.

9            And "bad guys" is -- is a term of art, right?  It

10    doesn't mean "evil."  It just means we're trying to figure

11    out -- in the sense that you talked about, which is, who was

12    responsible for the delay.  And who has to pay for it.

13           So, they get that done by the 18th.  They get their

14    expert reports by the end of the month.

15           You sound like you're in pain.

16           **MR. SCHMIDT:**  Yeah, I -- how about after Labor Day?

17           **THE COURT:**  September -- that's -- okay.  So

18    that's --

19           **MR. COX:**  September 2nd?

20           **THE COURT:**  September 2nd.  So, by 9-2.  Okay.  But

21    you are going to be really ready by the 2nd, because you will

22    have facts in mind, and you will apply that standard of care.

23           **MR. COX:**  No.

24           **THE COURT:**  And then you will come in and talk to me.

25           **MR. COX:**  What I've said from the start is that -- I

1    mean, the Government has had nine months, as of today, to

2    review this information which they say is not a big deal.

3             We are being brought in -- we were told initially we

4    were not a target.  That's how this case proceeded for many

5    months.  We have recently been brought in.  We have been given

6    20 CDs.  I expect we will get another 40 some time next week.

7    Maybe by tomorrow.

8             We will obviously be putting as many resources as we

9    can on the case, and we will get ready as quickly as we can.

10   But, I feel like the Court is putting pressure on Fleet, as the

11   bad guy, because we are coming into this late.

12           **THE COURT:**  No, no, no.  It is -- no.  Not as the bad

13   guy.  I mean, I -- I think that we all have a responsibility to

14   deal with this in an efficient manner, so that -- because there

15   are consequences for people who are not charged with crimes.  I

16   understand that there are also consequences for people who are

17   charged with crimes.  And you have an obligation, as Defense

18   Counsel, to -- to protect those interests.  And I don't

19   begrudge you that at all.

20           But, but, I -- I don't -- it is -- I intend to put

21   pressure on people to work efficiently, and to do what is

22   necessary in order to prepare for what the Court wants them to

23   do, and not to work on other things.

24           I mean, you have to work efficiently, and not to do

25   unnecessary tasks that -- that the Court might think you don't

1   have to, in order to accomplish what is meeting on a particular

2   day, and going witness by witness, and saying, "Given what we

3   know about the discovery, we can't take that deposition until

4   X."   That, that's what that next meeting is about.  It is not

5   about you have to be ready for the deposition.  Right?  So, the

6   depositions will be thereafter.

7            So, the question is when, given you got the discovery

8   last week -- point in favor of some period of time, significant

9   period of time after last week to review it, when we can have

10  that discussion.

11           And maybe we can have it in parts.  You know, maybe

12  we have it as -- as respects the first two or three witnesses,

13  and then a week later as to the next two or three witnesses.  I

14  don't -- fine with me.

15           **MR. BORNSTEIN:**  Can I make a suggestion?

16           **THE COURT:**  Yes.

17           **MR. BORNSTEIN:**  Can you set the depositions of the

18  bosun on October 1st, and the helmsman on October the 3rd, and

19  you set the other -- you -- you order the other four to be

20  present at trial, if the trial is going to go on or before its

21  current tentative schedule of November 17th.

22           And if not, then you set the depositions of those

23  four for that time frame, unless we get an order from Judge

24  Illston contradicting you, as far as -- or overruling you, I

25  guess is the correct phrase?

1          THE COURT:  Yes.  Deciding I was incorrect.

2          MR. BORNSTEIN:  On the propriety of having

3  depositions on those four.

4          THE COURT:  Why do you want me to do that now?

5          MR. BORNSTEIN:  Because I need to prepare, I need to

6  plan, I need to get people available.  And my only concern is

7  if you want to have -- I'm looking at the calendar in terms of

8  when things are going to happen.

9          THE COURT:  Yeah.

10          MR. BORNSTEIN:  So, it means we are going to have to

11  have our discussion probably some time after September 2nd,

12  which means we need to start blocking some time out and getting

13  people ready.

14          THE COURT:  Uh-huh.

15          MR. BORNSTEIN:  I just need -- and I know it's no

16  excuse to have other cases and other matters, but I do.

17          THE COURT:  It's a fact of life.

18          MR. BORNSTEIN:  So, I want to make sure that if we

19  are going -- you know, to me, that's the earliest possible time

20  frame that we could be theoretically ready to go.  And, it

21  seems like those two witnesses are the most likely to be -- to

22  present less of a problem.

23          THE COURT:  No, I actually was asking about the other

24  piece.

25          MR. BORNSTEIN:  The other piece, because I really

1   want them to be at trial.  But I also understand the reason why

2   the Court may hesitate.  Especially if Fleet prevails on the

3   Court, and the Court moves the trial until some time in 2009,

4   that may present a different question.  But my view is --

5           **THE COURT:**  Let me do a modification of what you have

6   got, what you suggest.

7           **MR. BORNSTEIN:**  Okay.

8           **THE COURT:**  And throw it out there, and then decide

9   if this is the right way to do it.  But -- that we have a

10  meeting to discuss, witness by witness, when their depositions

11  should be taken, the week of the 15th of September.

12          That we tentatively set the bosun and helmsman for

13  October 1 and October 3.  And at that -- but at the meeting, we

14  discuss, you know -- but not just those two witnesses, but the

15  other four.  And discuss when their depositions can be taken,

16  and whether their depositions ought to be taken.

17          I just don't know, until we get into a discussion in

18  some detail, witness by witness, you know, what -- you say

19  they're very important.  You know, I'm sure that's your

20  judgment.  I don't understand the judgment yet, because I don't

21  know enough facts.

22          So you need to educate me a little bit as we go

23  through this process, so that I can know that you can't

24  reasonably take their depositions, or that they're so important

25  that you -- "Really, Judge, you should make them -- wait the

1     extra month" or two months or four months or whatever it is.

2            I mean, I'm willing to listen to that, but -- listen

3     to it in the sort of abstract way, where I don't know exactly

4     what the facts are underlying your point of view, I can't

5     really react to it in a meaningful way.

6            **MR. BORNSTEIN:**  But I would like to do that in

7     camera.

8            **MR. SCHMIDT:**  Could I add to that, Your Honor?

9            **THE COURT:**  Yeah.

10           **MR. SCHMIDT:**  I think we all would benefit, whether

11    in camera, under seal, or whether for everybody to look at,

12    from some written filing by Defense Counsel.  Maybe they're not

13    prepared now, but after the expert disclosure, of why it is, at

14    least for these two witnesses, that they can't go forward.

15           So, for example, on the standard of care issue, on

16    some level I understand it.  The Defendants are what they are.

17           **THE COURT:**  I don't know that they disagree with you.

18    I don't know that they won't be willing.

19           I mean, the idea that appeals to me in what he said

20    is that you give me some thing that the Government can't see

21    which explains when these depositions be taken, or why they

22    have to wait, what the significance of these witnesses are, and

23    why you can or can't take their depositions.

24           And maybe in that kind of a filing -- I mean, it's

25    better than -- I mean, we can sit down in person and do it in

1    camera, I suppose, as well, but that might be a more persuasive

2    way of doing it.

3           **MR. BORNSTEIN:**  Well, I don't understand -- could --

4    I thought I just suggested setting dates for two depositions.

5           **THE COURT:**  Yes.

6           **MR. BORNSTEIN:**  So, I don't understand --

7           **THE COURT:**  No, no, no.  It's really with respect to

8    the other four.

9           **MR. BORNSTEIN:**  I thought it was the Government who

10   also said they should be available for trial.

11          **THE COURT:**  The other four?

12          **MR. BORNSTEIN:**  Yeah.  Maybe I misunderstood what the

13   Government said.

14          **MR. SCHMIDT:**  I think it has more to do with Fleet as

15   Defendant, whose main issue is, as I understand, the standard

16   of care, and I understand --

17          **THE COURT:**  Well, anyway, you may take differing

18   positions with respect to these two witnesses.  I don't care.

19   That's up to you.

20          But nonetheless, I still -- even if the Government

21   agrees with some portion of what you might say to me, I still

22   have to make a judgment about it, because there's someone in

23   the room who doesn't.

24          **MR. BORNSTEIN:**  But, is he objecting to the dates?

25   Is that what --

1            THE COURT:  No.  The witnesses.

2            MR. BORNSTEIN:  I mean, are the witnesses -- these

3   two witnesses?

4            THE COURT:  Well, they're not going to be in a very

5   good position to object to those dates.  Fleet may object to

6   one of those dates, it sounds like, or both.

7            MR. COX:  Yeah.  I mean, at this point, to set even

8   tentative dates is premature, from Fleet's perspective, so --

9            THE COURT:  In any event, if push comes to shove,

10  they may or may not decide that it's okay to proceed with these

11  depositions, in their view.  They have to have the ability to

12  make that point of view known to the Court.

13           MR. SCHMIDT:  The other reason for something written

14  is, ultimately, all this might be appealed.  If there is a

15  conviction, and if part of the testimony at trial on Rule 15

16  depositions -- my guess is one of the avenues of appeal were

17  "We were forced to take Rule 15 depositions before we were

18  ready, and here's the variety of reasons."

19           It would be much better, I think, if this Court knew

20  what all those reasons were, and can make an informed decision.

21  And I think it's much easier to do that on paper than it is to

22  do in this setting.

23           THE COURT:  Well, I like it on paper just because

24  it's easier for me to understand.  Because I can sit and noodle

25  over it, and take time.  Whereas I feel compelled by the press

1    of business, if we are sitting here, to do things more rapidly.

2              You wanted to say something?

3         **MR. HOWDEN:**  Yes.  In that regard, Your Honor, I

4    think it's a great idea to -- to get these things in writing,

5    get the opinions and views of Defense Counsel in writing,

6    whether it be under seal, ex parte.

7              However, I would like that same opportunity.  I don't

8    care if it's ex parte or under seal.  I would like to be able

9    to produce to the Court the statements that the Government

10   believes my clients made, and to be able to offer brief

11   commentary on them, because I feel I know their statements

12   better than anyone else in this country, at least.  And

13   correct, in my view, any misstatements there, and to lay out

14   before you what evidence my clients have to offer.

15             And then, it can be subject to the argument of both

16   sides as to how significant those statements really are, and

17   what evidence they have to offer.  But at least Your Honor has

18   a factual basis from which to determine for yourself how

19   significant their testimony is.

20        **THE COURT:**  What do you think about that?

21        **MR. SCHMIDT:**  The more paper the better, Your Honor.

22        **THE COURT:**  Well, no.  Implicit in that is you giving

23   them the witness statements.

24        **MR. SCHMIDT:**  I have no problem with that.

25        **THE COURT:**  Okay.

1              **MR. HOWDEN:**  And I would like to produce those to you

2    by September 2nd, so that you have a chance to look at the

3    witness statements as soon as possible.

4              **THE COURT:**  You can file your thing whenever you

5    want.

6              **MR. SCHMIDT:**  To go one step further, I have no

7    problem with giving all the discovery, but for grand jury

8    material and medical material, to Defense Counsel.

9              **MR. HOWDEN:**  I don't need the medical material,

10   certainly.

11             **THE COURT:**  Well, I -- you guys work that out.

12             **MR. HOWDEN:**  Very good.

13             **THE COURT:**  But I don't think there's any -- and

14   fine, if you file that on September 2nd, then whatever you

15   file, you can respond to that as well.

16             **MR. BORNSTEIN:**  Okay.  Could I ask a question,

17   though?  Counsel made a reference to correcting any statements.

18             **THE COURT:**  I don't know what he meant.

19             **MR. BORNSTEIN:**  Okay, because I wasn't clear on that,

20   either.

21             **THE COURT:**  I don't know what he meant.  But he's got

22   the standard in mind, so hopefully -- so I'm sure he will speak

23   to what the Court has to decide.

24             **MR. SCHMIDT:**  Your Honor, maybe I should -- I can

25   tell you what I think he meant, because I think it will be an

1     issue when we get closer to doing these depositions.

2            There are multiple interviews with these witnesses.

3            **THE COURT:**  Right.

4            **MR. SCHMIDT:**  Agents wrote reports as the interviews

5     progressed.  Some time -- the -- the interviews were all done

6     with interpreters, not always the same interpreter.  The

7     agents' reports highlighted what they thought was significant

8     at the time.

9            As time went on, different issues became significant.

10    Sometimes on a particular issue, there would be a 10- to

11    15-minute conversation about that particular issue, whether

12    this happened in the morning or the afternoon, or whether --

13    two pieces of paper or three pieces of paper.

14           Ultimately, the agent would write down, "The witness

15    said there were three pieces of paper," or "This happened in

16    the afternoon."  It's possible, due to poor translation, due to

17    different people feeling different things were important at

18    different times, that these witnesses said different things

19    about things  throughout the interview process.

20           We, that is, the Government -- and I don't think

21    anybody, because these interviews weren't recorded, have

22    complete control over everything that was said at every single

23    time in every statement that possibly contradict each other.

24    All we can really do is just give them the reports we have of

25    those interviews.

1          And I cannot tell the Court or Defense Counsel

2     whether that particular witness contradicted him, himself, at

3     some earlier time.  Both because we weren't focused on

4     everything at the time, and because it went through

5     translations.

6          **THE COURT:**  And this has to do with whether or not

7     they ought to submit for depositions now?

8          **MR. SCHMIDT:**  This has to do with whether Defense

9     Counsel will say, three weeks from now, "We don't have all the

10    statements," or "We're not on top of every false statement or

11    contradiction made by the particular witness."

12         Material Witness Counsel might have a different

13    memory of what exactly happened in the interview, and that's

14    perfectly acceptable, I think.  And to the extent he can

15    contribute to that, our position is whatever happened happened,

16    and it should be disclosed.  It's something that's almost

17    impossible to get control of.  And that, I think, is possibly

18    what Material Witness Counsel was hinting at, and is something

19    that will come up.

20         There is -- I don't know of any great way to deal

21    with that, because for example, if we talked to the navigation

22    officer about passage plans in December, it wasn't first on our

23    minds, and we didn't realize the significance of it.  And we

24    might not have written down exactly what he said.

25         On the other hand, Material Witness Counsel maybe

1    didn't know the significance, either, but in his notes he might

2    have wrote something.  On the other hand, Material Witness

3    Counsel would have talked to his client, and through a

4    different interpreter.  And so, there's no great record.

5         Some of these witnesses have been interviewed four or

6    five times.  Many of these interviews lasted hours.  The

7    reports, three or four pages.  Everything we have, every

8    recording, we're giving over.  It does not necessarily account

9    for exactly what was said.

10        **THE COURT:**  We will see.  I just -- I don't know how

11   to address that, because I can't -- I'm having trouble seeing

12   the context.  I'm having trouble seeing how it's going to

13   ultimately relate to whether or not the witnesses are deposed.

14        If I'm confident that the Government has produced

15   everything it's supposed to produce, and Defense Counsel have

16   had an adequate time to review it, then they'll be doing their

17   examination as they would at trial.

18        **MR. BORNSTEIN:**  Yes, but I think what the Government

19   has just said, if I heard him correctly, is that the witness

20   statements that were being given are likely incomplete, and not

21   accurate.  Which makes it very difficult, whether it's at trial

22   or at a deposition, to know what -- what their prior statements

23   were.

24        **THE COURT:**  Well, that's a problem that you have,

25   whether you're at trial or -- I don't think that's a -- when is

1    a deposition trial?  That may be good, we have a good defense

2    point, but --

3              **MR. BORNSTEIN:**  Right.

4              **THE COURT:**  But it may be well -- as well stated at

5    the deposition as it is at trial.

6              **MR. COX:**  However, Your Honor, in a false statement

7    prosecution, when the Government is saying their interview

8    notes are not complete, and the witnesses may have said totally

9    different things or additional things that are not included, if

10   we are going to be taking Rule 15 depositions that will be used

11   against us at trial, we don't know which statements the

12   Government is contending are false statements, that's certainly

13   a problem.

14             **THE COURT:**  Well, the indictment charges specific

15   false statements, though, doesn't it?

16             **MR. SCHMIDT:**  I think we are pretty specific about

17   that.

18             **THE COURT:**  Yeah.  This is not about that.  This is

19   about flaws in the interview, which may call into question the

20   Government -- the agents' recollections or recorded

21   recollections of what was done.

22             And maybe they will use that in defense, but I don't

23   know how that affects the deposition process.  But, you know,

24   if it does, you'll tell me, I'm sure.

25             Okay.  So --

1          **MR. SCHMIDT:**  Can the Court review all the dates?

2          **THE COURT:**  Yeah.  I haven't set them all yet.  So,

3    the -- the Government is going to -- has agreed to produce all

4    of the discovery that it knows about -- that has been requested

5    and that it knows about or that it's obliged to produce that it

6    knows about by the -- no later than the 18th.  Right?

7          By the 2nd of September, the Government is going to

8    produce its expert reports.

9          By the 2nd of September, Material Witness Counsel is

10   going to make whatever submission he wants -- they want, with

11   respect to the questions of whether these witnesses should be

12   deposed, and when they should be deposed.  Obviously,

13   particularly focused on, witness by witness, who they are, and

14   why -- what their role is, what the facts are, what the

15   testimony will be, and why they should be deposed, in your

16   view.  That will be on the 2nd.

17         How about on the -- some of the problem is I don't

18   know my calendar.  Well, so, some time the week of the 8th I

19   want the submissions from Defense Counsel and from the United

20   States.

21         I guess I would like a week to review those.  But,

22   maybe I don't need an entire week.  I'm thinking of having our

23   further hearing on the 18th of September, at -- whatever's

24   convenient to all Counsel.

25         When can you put in your -- whatever you want to put

```
1    in?  On -- in camera, under seal?

2              MR. COX:  And is that an option, we can -- if we want

3    to meet with the Court, to discuss it, --

4              THE COURT:  No, I want a written piece in advance.

5    You can also meet with me, when we have this hearing.  I'll

6    take --

7              MR. COX:  Okay.

8              THE COURT:  I'm willing to discuss with you, but I

9    would like to see it in advance.

10             MR. COX:  All right.  So we're talking sometime the

11   week of the 8th?

12             THE COURT:  Yeah.

13             MR. BORNSTEIN:  If we are going to have the hearing

14   on the 18th, then how about the 11th, since you said -- or --

15             MR. COX:  The 12th?

16             MR. BORNSTEIN:  Or even the 12th, if you don't mind.

17             THE COURT:  Okay.  Noon on the 12th.

18             MR. BORNSTEIN:  And if we agree to go forward with

19   these two witnesses, I assume we don't have to file anything

20   with respect to them.

21             THE COURT:  Yeah.  If you just agree, then you agree.

22   That's right.

23             MR. BORNSTEIN:  Okay.

24             MR. SCHMIDT:  If they agree --

25             THE COURT:  Well, no, that's -- yes, you don't have
```

1    to.  Because I'm going to set that for October 1 and October 3.

2    And if there's no opposition, those will just go ahead.

3              **MR. BORNSTEIN:**  Okay.

4              **MR. SCHMIDT:**  Your Honor, I would ask, if there's no

5    opposition, they file something stating as much.

6              **THE COURT:**  The Government's going to want to know --

7    they're not going to see your in-camera submission, that's what

8    he's saying.  So if you do take that position, file something

9    that says it.

10             **MR. BORNSTEIN:**  Sure.  That's fine.

11             **THE COURT:**  Okay.  If you want to file something,

12   would you file it by noon on the 12th, too?

13             **MS. REINECKE:**  Just so we're clear, the submission is

14   going to include the other four witnesses, Your Honor?

15             **THE COURT:**  The submission includes all six

16   witnesses.

17             **MS. REINECKE:**  All right.

18             **THE COURT:**  So the Witness Counsels will present

19   their materials on the 2nd.

20             **MR. SCHMIDT:**  Your Honor, so the Court knows, I don't

21   anticipate filing anything, because we're -- we need to rely on

22   the discretion of the Court, based on Defense Counsel's

23   submissions.

24             **THE COURT:**  You file something, you don't file

25   something, it's up to you.  Then I'll just have Defense

1       Counsel's submissions to go on.  That's what I'll go on.  And

2       the Witnesses' Counsel.

3               Okay.  So, shall I go through that one more time?

4       August 18th, a completion of production.  September 2nd, expert

5       witness reports.

6               September 2nd, Witness Counsel submits materials.

7       You are going to file those -- you want to file those regular,

8       in the regular fashion?  Do you want them in camera?  What's

9       your view?

10              Maybe you don't care.

11          **MR. HOWDEN:**  I personally don't care.  Defense

12      Counsel might care.

13          **MS. REINECKE:**  Yeah.  I don't anticipate filing them

14      under seal, but obviously, if something comes up, we will

15      endeavor to do so.  Is that acceptable?

16          **THE COURT:**  Yeah.  You can ask for permission to file

17      them under seal.

18          **MS. REINECKE:**  That's fine.

19          **MR. BORNSTEIN:**  Yeah, I mean --

20          **THE COURT:**  You don't care, do you?

21          **MR. BORNSTEIN:**  As far as what they file?

22          **THE COURT:**  Right.

23          **MR. BORNSTEIN:**  No, I don't.  I mean, obviously, if I

24      can see it, I want to see it.

25          **THE COURT:**  Okay.  It's not under seal unless further

1    ordered by the Court.  So, that's the 2nd.

2            Then, by noon on the 12th, submissions -- in-camera

3    submissions by Defense Counsel, under seal.  And any filing the

4    Government would like to make, they can also make.

5            Tentative date for the bosun, who is Liang Xian

6    Zheng, to be deposed on October 1.

7            And tentative date for the helmsman -- whose name I

8    don't remember?

9            **MR. HOWDEN:**  Li, Your Honor.  Zong Bin Li.

10           **THE COURT:**  -- will be the 3rd of October, although

11   we will discuss that at our hearing, which will be

12   September 18th, at what time?  For Counsels' calendar.

13           **MR. SCHMIDT:**  What day of the week is that?

14           **MS. REINECKE:**  Thursday.

15           **THE COURT:**  It's a Thursday.

16           **MR. COX:**  If we could have a 2:00 hearing, I would

17   appreciate that.

18           **MR. SCHMIDT:**  That's fine, Your Honor.

19           **MS. REINECKE:**  That's fine.

20           **MR. HOWDEN:**  That's fine, Your Honor.

21           **THE COURT:**  2:00 p.m.  Okay.

22           **MR. SCHMIDT:**  Your Honor, I wonder also, finally, in

23   the matter of United States versus Cota and United States

24   versus Fleet, if the Court would exclude time, at least,

25   between now and August 15th.  But if not, from now until

1   August 18th.

2          **THE COURT:**  Until August --

3          **MR. SCHMIDT:**  August 15th is our appearance in front

4   of Judge Illston.  Our last appearance, time was not excluded.

5   So, I would want at least until our next appearance before

6   Judge Illston, but if the Court feels comfortable, until our

7   appearance before you.

8          **THE COURT:**  What is the view of Defense Counsel on

9   this?

10          **MR. BORNSTEIN:**  Well, I have no objection to

11   August 15th.  And if -- I mean, if there's pending motions, and

12   you are going to make an exclusion on that --

13          **THE COURT:**  Well, there are pending motions, and

14   pending preparation of counsel, I would say, as well.

15          **MR. COX:**  I have no objection.

16          **THE COURT:**  Okay, fine.  Based on those

17   representations, for effective preparation of defense counsel

18   and pending motions, I'll find interests of justice outweigh

19   the interest of the Defendant -- Defendants and the public in a

20   speedy trial, exclude time from now until the 18th of August.

21          And ask Counsel for the United States to appear --

22          **MR. SCHMIDT:**  Until the 18th?  15th.  The 18th is

23   fine.

24          **THE COURT:**  18th of August.

25          **MR. SCHMIDT:**  Your Honor, just -- up until now, we

1    have been doing it for complexity, as well, if the Court will

2    entertain that.

3             THE COURT:  Sure.  I think I'm satisfied that it's

4    complex.  I'll make that finding.

5             THE CLERK:  Judge, you are excluding time from

6    August 18th?  Until August 18th?  Or September?

7             THE COURT:  When is our hearing?  Our hearing is in

8    September.  I'm sorry.  Until September 18th.

9             THE CLERK:  Okay.

10            MR. SCHMIDT:  Thank you, Your Honor.

11            THE CLERK:  Did you want to address your issue,

12   Mr. Berson?

13            THE COURT:  Mr. Berson is here.

14            MR. BERSON:  Was I supposed to be up there the whole

15   time?

16            THE COURT:  I thought you were present the whole

17   time.

18            MR. BERSON:  Well, actually I was.  I was hanging

19   back because I thought -- I'm making a special appearance for

20   Brian Getz on his motion --

21            THE COURT:  Yes.

22            MR. BERSON:  -- to release his client, material

23   witness, who I'm not even sure was talked about in the context

24   here.

25            He's not one of the first two people, because he's

1  not the bosun or the helmsman.  I don't know if he's one of the

2  other four material witnesses you were referring to.

3          **THE COURT:**  He is.

4          **MS. REINECKE:**  Yes.

5          **THE COURT:**  So, Witness Wang --

6          **MR. BERSON:**  He's here, by the way, in the courtroom,

7  if you want him to come forward.

8          **THE COURT:**  No, you can stay there, that's fine --

9  has filed a motion to return to China pending trial testimony.

10          **MR. BERSON:**  Right, which I think is even more

11  compelling, in light of what I heard.  I didn't hear

12  everything, but what I heard seems to indicate that his

13  deposition, which was scheduled for this Monday, obviously

14  isn't going to happen.

15          **THE COURT:**  That is true.

16          **MR. BERSON:**  And there's no date that it might ever

17  happen, based on everything I've heard.

18          **THE COURT:**  Well, there's no date yet.  That's true.

19  And it's possible that the Court might decide not to have a

20  date.  That's also true.  I have not decided whether or not we

21  are going to do that.

22          **MR. BERSON:**  So, I mean, the report -- I've got a

23  Pretrial Services report.  He's not a danger.  They say he's

24  not a flight risk, provided there's some type of corporate

25  security bond.

1              I don't think that that --

2         **THE COURT:**  No, no, that's not quite what they say.

3         **MR. BERSON:**  Okay.  Well, let me read it again.

4         **THE COURT:**  They say, specifically (As read), "Based

5    on these factors, Pretrial Services is unsure if the Material

6    Witness has any incentive to appear for all future court

7    obligations if he's allowed to return to China.  If the Court

8    is inclined to grant" -- They're not making a recommendation.

9         **MR. BERSON:**  Yeah, and the -- you know, the corporate

10   surety bond is not really feasible, since that would be by one

11   of the Defendants in the case.  Obviously, can't do that.  A

12   little bit of a conflict there.

13             But, I mean, he's been here --

14        **THE COURT:**  I'm not sure that's right, but it may

15   work the other way around, actually.

16        **MR. BERSON:**  No, I've spoken to Counsel for the

17   Government and the defense, and that's sort of been the

18   indication from each of them.  And I can't --

19        **THE COURT:**  Well, in any event, just -- just to cut

20   to the chase, I mean, I've read the materials.  This is not the

21   kind of showing I had in mind.  I don't think what is

22   essentially for him a bond which the liability goes someplace

23   else -- I'm not sure even a bond with liability that goes to

24   him would be sufficient.

25             But, this certainly isn't what I had in mind, in

1    terms of security.  I'm not sure I had anything in mind in

2    terms of security, but this strikes me as not significantly

3    different than an unsecured bond.  And so, I'm not prepared to

4    let him go on that.

5           On the other hand, I take seriously, as you know, the

6    question of all these witnesses' continued presence in the

7    United States, and I'm going to address it as rapidly as I can.

8           If at some point you or Mr. Howden or the other

9    witnesses' counsel think it's appropriate to do the kind of

10   showing that Mr. Howden was referencing earlier, you are

11   welcome to do that.  But, it's not this.

12         **MR. BERSON:**  Can I ask that the witness statements

13   that Mr. Howden requested on behalf of his clients also be

14   turned over, as to Mr. Wang, to Mr. Getz --

15         **THE COURT:**  I think each of the witnesses' counsel

16   should get their client statements.

17         **MR. SCHMIDT:**  That's perfectly fine.

18         **THE COURT:**  Great.  Go ahead and do that forthwith.

19   Okay.  All right.

20         **MR. BERSON:**  So then, just, I was a little bit on the

21   verge of being out of earshot.  It sounds like September 18th

22   is when --

23         **THE COURT:**  Right.

24         **MR. BERSON:**  -- we'll maybe discuss some definitive

25   dates about deposition for Mr. Wang.

1        **THE COURT:**  That is possible.  If you want to file

2   something with respect to when or why he should be deposed --

3   obviously, some people are going to take the position that he

4   should not be; he should appear at trial.

5        **MR. BERSON:**  I'm not sure of that, because wasn't it

6   already agreed to that he was going to be deposed Monday?  Or

7   not?

8        **THE COURT:**  No.

9        **MR. BERSON:**  Okay.

10        **THE COURT:**  There's two people that may have -- at

11   least one of the Defendants may agree.  So, as respects to your

12   client, someone is going to say, "At least don't depose him

13   right now, depose him later, and maybe don't depose him at all,

14   make him come to trial."

15        If you want to file anything with respect to that

16   question, and why, because of his role, he should be deposed,

17   et cetera, you can do that on September 2nd.

18        **MR. BERSON:**  Okay.

19        **THE COURT:**  Okay?  Anything else with regard to the

20   order?

21        **MR. HOWDEN:**  No, Your Honor.

22        **THE COURT:**  Okay, thank you all.

23        **MS. REINECKE:**  Thank you.

24        **THE COURT:**  Can I ask Counsel of the United States to

25   prepare an order which reflects my order today, and have it

1    approved as to form by Defense Counsel and the Witnesses'

2    Counsel?

3              **MR. SCHMIDT:**  Sure.

4              **THE COURT:**  Thank you.

5                        (Conclusion of proceedings)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

### CERTIFICATE OF REPORTER

I, BELLE BALL, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings in CR 08-0160 SI (JCS), United States of America v. John Joseph Cota, were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing.

The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.

_____/S/ Belle Ball_____

Belle Ball, CSR 8785, CRR, RMR

Wednesday, August 20, 2008